UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THOMAS E. WHATLEY III, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. 4:11-cv-00493-RAS-DDB |
| | § | |
| CREDITWATCH SERVICES, LTD., | § | |
| DEFENDANT. | § | |

## DEFENDANT CREDITWATCH SERVICES, LTD.'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES COURT:

COMES NOW, Defendant Creditwatch Services, Ltd. ("Creditwatch"), and files this Motion for Summary Judgment and would respectfully show unto the Court as follows:

### I.

### BACKGROUND FACTS

1.     On March 19, 2010, Plaintiff incurred a debt for medical treatment at Gerald Champion Regional Medical Center after being bucked off a horse. *See* Defendant's Appendix ("Def. App.") at 13-14.   While at Gerald Champion, a Patient Information sheet was filled out, which included Plaintiff's contact information. *See id.* While Plaintiff denies that the handwriting is his own, he does believe that he dictated the information to hospital personnel and he confirms that the information is correct. *See id.*; Def. App. at 28-28 (33:21-34:21). In the blank provided after the phrase "Cell Phone #," Plaintiff provided the number "940-210-0311," which he confirms is his cellular telephone number. Def. App. at 26 (24:5-8). Plaintiff does verify that it is his signature on the Hospital Consent form date March 19, 2010. Def. App. at 13.

2.     As indicated on the Patient Information sheet, Plaintiff did not have medical insurance. Def. App. at 14. He was known as what is called "Self-Pay." *See* Def. App. at 17. Accordingly, Plaintiff made small payments on March 19th, May 25th and June 17th of 2010. *See id.* However, Plaintiff fell into arrears. As a result, Plaintiff's account was referred to Creditwatch for collection on September 3, 2010. *See id.*

3.     From March 16 to April 13, 2011, Creditwatch attempted to contact Plaintiff by telephone. Creditwatch did so by calling the only telephone number Plaintiff provided to Gerald Champion – his "Cell Phone # 940-210-0311." Thereafter, Plaintiff filed this lawsuit.

4.     Plaintiff originally filed suit against Creditwatch in this case August 8, 2011. Creditwatch answered the Original Complaint on August 19, 2011.  On September 9, 2011, Plaintiff filed his Amended Complaint without seeking leave from the Court or Creditwatch's written consent.  In his Original Complaint, Plaintiff alleges Creditwatch violated the FDCPA, TDCA, and DTPA.  *See* Docket Entry ("Doc.") 1 at 1.  In his Amended Complaint he adds a claim under the TCPA.  *See* Doc. 8 at 1; Def. App. at 1.  He seeks statutory and actual damages against Creditwatch.

## II.

## <u>SUMMARY JUDGMENT STANDARD</u>

5.     The purpose of summary judgment is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). Additionally, a motion for summary judgment serves to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553 (1986). A finding for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, Celotex*, 477 U.S. at 372. When a defendant moves for summary judgment, it may either (a) submit summary judgment evidence negating the existence of a material element of the plaintiff's claim, or (b) show there is no evidence to support an essential element of the plaintiff's claim. *Celotex*, 477 U.S. at 322-25. Thus, the movant may identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *See Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). This can be done by pointing out "the absence of evidence supporting the nonmoving party's case." *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

6.      If the movant meets this initial burden, the non-movant then must introduce evidence establishing that there is a genuine issue of material fact. *Matsushita*, 475 U.S. at 585-86. In making the decision whether a fact issue exists, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

### III.

### ARGUMENT AND AUTHORITIES

**A.      Plaintiff's Fails to Prove his Telephone Consumer Protection Act Claims.**

7.      Plaintiff's alleged cause of action under the TCPA states the following:

> It shall be unlawful...to make any call (other than a call...made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice...to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

*See* 47 U.S.C. § 227(b)(1)(A)(iii).

1.    Plaintiff Has Not Properly Pled a Cause of Action Under the TCPA.

8.    Federal courts have only the power authorized them by Congress pursuant to Article III of the Constitution. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). "Inferior federal courts' 'federal question' jurisdiction ultimately depends on Congress's intent as manifested by the federal statute creating the cause of action." *Sheldon v. Sill*, 49 U.S. 441, 448 (1850). The TCPA, the federal statute creating Plaintiff's alleged cause of action, "presents an unusual constellation of statutory features." *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 512 (5th Cir. 1997). The Fifth Circuit Court explained that "[a]fter reviewing the TCPA's text, purpose, and history, we conclude Congress intended the state courts to have exclusive jurisdiction over private actions filed under the TCPA." *Id.* at 514. However, nothing in the TCPA expressly divests federal courts of diversity jurisdiction, *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 338 (2d Cir. 2006), or supplemental jurisdiction. *Watson v. NCO Group, Inc.*, 462 F. Supp. 2d 641, 646 (E.D. Pa. 2006).

9.    In Texas, the Supreme Court decided that "the TCPA alone does not create an immediately enforceable right." *Chair King v. GTE Mobilnet of Houston,* 184 S.W.3d 707, 716 (Tex. 2006). Instead, the statute "suggests the necessity of affirmative state action to activate the TCPA's private cause of action." *Id.* This affirmative action appears in the Texas Business & Commerce Code § 305.053 which enables the TCPA cause of action in state.

10.    "[T]he party who brings a suit is master to decide what law he will rely upon." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 22 (1983) (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)). In the case at bar, the TCPA does not create a private right of action in federal court. Thus, pleading it as such

is futile. Instead, Plaintiff must plead Texas's enabling statute – Tex. Bus. & Com. Code § 305.053 – as a cause of action over which the Court may exercise supplemental jurisdiction. Because Plaintiff has failed to plead this state-law cause of action, his claim under the TCPA must be dismissed at summary judgment. *See* <u>Def. App.</u> at 2-8.

      2.    <u>Plaintiff Consented to the Calls from Creditwatch</u>.

11.    Plaintiff alleges that Creditwatch violated § 227(b)(1)(A)(iii) of the TCPA. This provision prohibits any person from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] or an artificial or prerecorded voice" to a cellular telephone for which the called party is charged. *See* 47 U.S.C. § 227(b)(1)(A)(iii). In the Fifth Circuit, whether consent is an element of a TCPA claim or an affirmative defense is an open question. *See Gene & Gene, L.L.C. v. Biopay, L.L.C.*, 541 F.3d 318, 327 (5th Cir. 2008).

12.    The District Court for the Northern District of Texas explained that when a defendant has provided enough evidence for a prima facie showing of consent and the plaintiff has not shown competent evidence against a finding of consent (and thereby did not establish a genuine issue of material fact), summary judgment in favor of consent was permissible. *See Cunningham v. Credit Management, L.P.*, No. 3:09-cv-1497-G (BF) (N.D. Tex. Aug. 30, 2010). The Court also recognized the Federal Communication Commission's statement that "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 564 (2007). Furthermore, calls "placed by a third party collector on behalf of [the] creditor are treated as if the creditor itself placed the call." *Id.* at 565.

13.     In *Cunningham*, the evidence presented showed that the plaintiff had an account with the creditor, Time Warner, for internet services. The evidence also showed that the plaintiff did not have a residential line or landline phone, and the plaintiff refused to disclaim that he provided his cell phone number in connection with the account. Based on this circumstantial evidence, the Court found that the defendant sufficiently established that plaintiff provided his number in connection with his account and thereby consented to calls he may receive relating to it.

14.     In the present case, Plaintiff incurred a debt with the Gerald Champion Regional Medical Center due to care provided after being "bucked off [a] horse." *See* Def. App. at 13-14. While at the medical center, Plaintiff filled out a "Hospital Consent Form." *Id.* at 13. As a part of this form, Plaintiff was asked to provide an assortment of personal information ranging from his name and address to his employment and insurance information. *Id* at 14. Included in this information, Plaintiff reported his cellular telephone number as "940-210-0311." *Id.*

15.     As explained above, the provision of a cell phone number to a creditor evidences the consumer's prior express consent to be contacted at that number regarding the debt and calls from a third party debt collector on behalf of a creditor are treated as if the creditor placed the call. Accordingly, Plaintiff's provision of his cell phone number, the only phone number he provided, to the Gerald Champion Regional Medical Center, the creditor, constitutes prior express consent to be called at that number. Therefore, Plaintiff consented to calls from Creditwatch, the third party debt collector of the medical center, to his cell phone. As a result, Plaintiff's claim under the TCPA must be resolved in favor of Creditwatch at summary judgment.

4.      Verbal Request to Cease Calls v. Written Request.

16.      Plaintiff's next cause of action comes from his creation of a legal fiction. Plaintiff claims that, during the March 23rd call from Plaintiff to "Maria" at Creditwatch, he verbally demanded that Creditwatch "cease and desist all telephone calls to Plaintiff's cellular telephone." *See* <u>Def.</u> <u>App.</u> at 4. In response, "Maria" allegedly *"falsely represented* to Plaintiff that a verbal request to cease and desist all calls made to Plaintiff's cellular telephone was insufficient and that the cease and desist request must be submitted in writing," thereby violating the FDCPA. *Id.* [emphasis added]. "However," according to Plaintiff, "a demand to cease and desist telephone calls to a person's cellular telephone may be made orally." *Id.*

17.      The foundation of this invention is a recent decision out of California which concluded that prior express consent under the Telephone Consumer Protection Act may be orally revoked. *See Gutierrez v. Barclays Group*, No. 3:10-cv-01012-DMS-(BGS), 2011 WL 579238 (S.D. Cal. Feb. 9, 2011). The California court based this conclusion on the fact that the TCPA does not expressly state one way or the other whether prior express consent must be in writing or how it may be revoked. Because consent can presumably be given orally or in writing, such as by applying for a credit card on-line (in writing) or over the telephone (orally), then so too can it be revoked in writing or orally. *See Cunningham v. Credit Management, L.P.*, No. 3:09-cv-1497-G (BF) (N.D. Tex. Aug. 30, 2010) (citing *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 564-65 (2007)) ("the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt" and that calls "placed by a third party collector on behalf of [the] creditor are treated as if the creditor itself placed the call."). But regardless of whether this reasoning is correct, it does not translate to a violation of the FDCPA.

18.    Plaintiff takes the *Guitierrez* conclusion and argues that "Maria's" statement that Plaintiff's cease and desist request must be in writing was a false representation in violation of § 1692e(10) of the FDCPA and § 392.304(a)(19) of the TDCA. *See* 15 U.S.C. § 1692e(10); Tex. Fin. Code § 392.304(a)(19). But Plaintiff ignores § 1692c(c) of the FDCPA which states that "[i]f a consumer notifies a debt collector in writing…that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt…" 15 U.S.C. § 1692c(c); *see O'Connor v. Check Rite, Ltd.*, 973 F. Supp. 1010, 1017 (D. Colo. 1997) (denying the plaintiff's § 1692c(c) summary judgment motion regarding his request that the debt collector cease communications because he "offer[ed] no letter or affidavit to show he made the request in writing, as required by the statute").

19.    In *Starkey v. Firstsource Advantage, LLC*, the United States District Court for the Western District of New York addressed this very issue. Case No. 07-cv-662A(Sr), 2010 WL 2541756, 2010 U.S. Dist. LEXIS 60955 (W.D.N.Y. March 11, 2010)[1], opinion adopted by 2010 WL 2541731 (W.D.N.Y. June 21, 2010). At the time Elizabeth Starkey activated her cable television services, she provided her cellular telephone to the cable provider in connection with her account. *Id.* at *2.   Starkey also did not dispute that because she provided her cellular number, she "gave [the cable provider] consent to call her cellular telephone when she signed up for [sic] with Adelphia for cable services." *Id.* After the account went into default and Time Warner was not able to internally collect the debt, the account was turned over to defendant Firstsource for collection. *Id.*   In turning over the account, Time Warner provided Firstsource Starkey's contact information, including the cellular telephone number provided by Starkey. *Id.*

---

[1] Courtesy Copy attached at Def. App. at 58-62.

Thereafter calls made by Firstsource were made via live operator and two different automated

dialing systems. *Id.* at *3. Due to this, Starkey brought suit alleging violations of the FDCPA

and TCPA. *Id.*

20.    The court looked to Starkey's TCPA claims and stated the following:

> With respect to plaintiff's claim that defendant's calls to her cellular telephone
> violated the TCPA, plaintiff once again relies on her assertion that on March 26,
> 2007, she made a verbal request for the calls to cease. There is nothing in either
> the TCPA or the FCC's December 28, 2007 Declaratory Ruling to support
> plaintiff's claim that a verbal request is sufficient to cease legitimate debt
> collection efforts. As discussed above, the TCPA was enacted by Congress to
> address telemarketing calls and telemarketing practices and the FDCPA was
> enacted to address debt collection practices. However, as noted above the
> FDCPA requires written notice to cease debt collection efforts which plaintiff
> readily admits she did not provide to defendant. Although the TCPA has some
> application to the instant case insofar as defendant was placing prerecorded
> automated calls to plaintiff's cellular telephone, Congress has clearly stated that
> debt collection efforts are governed by the FDCPA. Thus, plaintiff's attempt to
> infer that a verbal request to cease debt collection calls is sufficient under the
> TCPA and that any subsequent calls are in violation of the TCPA misses the
> mark. *To cease debt collection calls, written notice is required.*

*Id.* at *16-*17; *See* Def. App. at 61 (emphasis added).

21.    *Starkey* is nearly identical to the case at hand. Plaintiff here relies on the same legal

theory Starkey did in her case, that since the TCPA is silent to whether consent may be revoked

verbally, it should therefore be valid. However this argument was denied in *Starkey* as should be

here on grounds that the FDCPA governs debt collection efforts whereas the TCPA was truly

created for telemarketers. Under the FDCPA, consent may only be revoked in writing. *See* 15

U.S.C. 1692c(c). Following *Starkey* and the FDCPA, Plaintiff's verbal request for Creditwatch

to cease its calls to his cellular telephone number to which he provided consent to call is

insufficient. Creditwatch must be granted summary judgment on Plaintiff's TCPA claims.

        b.    *Plaintiff has Failed to Demonstrate that He was "Charged" for Each Call*
           *that He Claims Violated the TCPA.*

22.    Plaintiff has also failed to provide evidence showing that he was charged for any violative call. The TCPA, under 47 U.S.C. § 227(b), states that "[i]t shall be prohibited for any person...to make any call...using any automatic telephone dialing system or an artificial or prerecorded voice – to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or *any service for which the called party is charged for the call*." 47 U.S.C. § 227(b)(1)(A)(iii) [emphasis added]. The Federal Communications Commission ("FCC") is the agency in charge of interpreting the TCPA. In 1992, just after the law's passage, the FCC said that "[b]ased on the plain language of § 227(b)(1)(iii), we conclude that the TCPA did not intend to prohibit autodialer or prerecorded message calls to cellular customers for which the called party is not charged." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order Docket No. 92-90, ¶ 45 (Oct. 16, 1992).

23.    Just over a decade later, the FCC issued another report regarding wireless calls. While considering the National Do-Not-Call registry established by the Federal Trade Commission ("FTC"), the FCC explained that the "FTC clarified that because wireless subscribers are often charged for the calls they receive, they will be allowed to register their wireless telephone numbers on the...database." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order Docket No. 02-278, ¶ 23 (July 3, 2003). The FCC concluded that "Congress has indicated its intent to provide significant protections under the TCPA to wireless users" and that "[a]llowing wireless subscribers to register on a national do-not-call list furthers the objectives of the TCPA, including protection for wireless subscribers from unwanted telephone solicitations *for which they are charged*." *Id.* at ¶ 33 [emphasis added].

24.    Later, the FCC said that "[t]he TCPA does not ban the use of technologies to dial

telephone numbers. It merely prohibits such technologies from dialing...telephone numbers assigned to wireless services, and any other numbers for which the consumer is charged for the call." *Id.* at ¶ 133. These practices were determined to "threaten public safety and inappropriately shift marketing costs from sellers to consumers." *Id.*

25.     Congress was evidently concerned with the shifting of costs from advertisers to consumers, and thus imposed the TCPA as a remedy. This purpose is evidenced by subsequent TCPA litigation. *See Stefano & Assoc., Inc. v. Global Lending Group, Inc.*, 2008-Ohio-177 (9th Dist. Ct. of Appeals of Ohio 2008); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003).

26.     In *Missouri ex rel. Nixon v. American Blast Fax, Inc.*, Blast Fax complained that the differential treatment between unsolicited fax advertisements and live telemarketing calls created a gap in coverage that did not materially advance the government's interest and thus rendered the TCPA unconstitutional. *See* 323 F.3d at 656.

27.     The Court recognized that unsolicited live telemarketing calls are not restricted by the TCPA, but unsolicited fax advertisements are prohibited. *See id.* at 656-57. The Court states that the reason why the difference is acceptable is because the "TCPA treats live telemarketing solicitations differently if they impose costs on the recipient." *Id.*

28.     Although the text of the opinion leaves a gap, the Court's logic does not. The Court began with the correct premise that Congress's goal for the TCPA is to protect members of the public from bearing the costs of unwarranted advertising. Therefore, the TCPA restricts advertising or telemarketing methods that shift the costs to consumers. The natural and correct inverse of that premise is that advertising that does not cost the consumer is not restricted. Based on this reasoning, Congress recognized that all unsolicited facsimile advertising costs the

recipient in ink and paper. But Congress also recognized that not all telephonic advertising imposes costs on the recipient. Thus, Congress only prohibited telephone calls to "any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

29.     In the present case, Plaintiff alleges that Creditwatch called him using an automatic telephone dialing system or an artificial or prerecorded voice to a telephone number assigned to a cellular telephone service and that such calls violate the TCPA. *See* Def. App. at 4-5.  But, according to Congress and the FCC, as explained above, Plaintiff has failed to meet his burden. He has presented no evidence any telephone calls were made with an automatic telephone dialing system or an artificial or prerecorded voice.

30.     Further in order for the alleged calls to violate the TCPA, Plaintiff must prove that he was charged for the calls made to his phone. This he has failed to do. Plaintiff in fact fails to even allege he was charged for any phone calls from Creditwatch. *See* Def. App. at 1-10.  Plaintiff's Amended Complaint is lacking any allegation or factual basis to support this element of the TCPA claim. *Id.*

31.     In order for his claims to survive summary judgment, Plaintiff bears the burden of pointing to the specific calls that he received for which he was charged. It is only for these calls, if any, that Plaintiff can make a claim under the TCPA. But, based on Plaintiff's failure to do this and provide any evidence to show he was charged for any calls, his claims under the TCPA should be dismissed at summary judgment.

**B.     Plaintiff's FDCPA and TDCA Claims Fail as a Matter of Law.**

1.     Summary Judgment is Proper for Plaintiff's FDCPA § 1692d(6) and TDCA § 392.304(a)(4) Claims.

32.     Plaintiff alleges that in a voicemail left on March 21, 2011, at 4:07 P.M., Creditwatch failed to disclose its true corporate or business name in violation of § 1692d(6) of the FDCPA and § 392.304(a)(4) of the TDCA.[2] *See* <u>Def. App.</u> at 3.  In support of this allegation, Plaintiff offers an alleged recording of the voice message and his "Collection Communication Log." *See* <u>Def. App.</u> at 52-57 (Transcript of recording #1 and Call log). For the alleged call at 4:07 P.M. on March 21st, Plaintiff's call log states "Rec'd call from UNK caller.    Caller L/M in V/M...Recorded Message said call is NOT a marketing or sales call, but a very important message for Thomas Whatley requiring IMMEDIATE ATTENTION. Said to provide the Caller's phone number to ID my Account." *Id*. at 52.  However, the content of this message is all the FDCPA requires in a voicemail.

   a.   *Plaintiff's FDCPA § 1692(d) Claims Fail as a Matter of Law.*

33.     The purpose of the FDCPA is "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices *without imposing unnecessary restrictions* on ethical debt collectors." S. Rep. No. 382, 95th Cong. 1st Sess. 1, 2, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696 (emphasis supplied); *see also Higgins v. Capitol Credit Servs., Inc.,* 762 F. Supp. 1128, 1135 (D. Del. 1991). One major area of concern for the FDCPA is the protection of consumers' privacy. This concern is addressed in the statute by prohibiting debt collectors from communicating information about a debt to anyone other than the consumer.

34.     In connection with the collection of the debt, § 1692c(b) prohibits a debt collector from communicating with any person other than the consumer, his attorney, a consumer reporting

---

[2] *See Prophet v. Myers*, 645 F. Supp. 2d 614 (S.D. Tex. 2008) ("the conduct made unlawful by [the TDCA] is virtually identical to the conduct made unlawful by the FDCPA"). Section 392.304(a)(4) of the TDCA prohibits a debt collector from "failing to disclose clearly in any communication with the debtor the name of the person to whom the debt has been assigned or is owed when making a demand for money." *See* Tex. Fin. Code § 392.304(a)(4).

agency, the creditor, the creditor's attorney, or the attorney of the debt collector without the consent of the consumer. *See* 15 U.S.C. § 1692c(b). Further, when acquiring location information, the debt collector must not identify the name of his employer unless expressly requested, may not state that the consumer owes any debt, may not communicate by postcard, and may not use any language or symbol on any envelope that indicates that the debt collector is in the debt collection business or that the communication relates to debt collection. *See* 15 U.S.C. § 1692b. Even in communications made directly to the consumer, a debt collector may not communicate with the consumer by postcard or use any language or symbol, other than the collector's address, on any envelope that indicates that the collector is in the debt collection business, except that the collector may use his business name if it does not so indicate. *See* 15 U.S.C. § 1692f(7)-(8).

35.     Section 1692d(6), on the other hand, prohibits the placement of telephone calls without meaningful disclosure of the caller's identity. *See* 15. U.S.C. § 1692d(6). This requirement naturally conflicts with those above when it comes to anything other than direct oral communication with the consumer. E-mails can be opened by a joint user of the account. Voice-mail messages can be overheard by third parties. Faxes can be picked up by a co-worker. A roommate can check the answering machine. A family member can see the name "Joe's Debt Collections" on the caller ID. In short, a debt collector often has no control over who will see or hear their communications. Thus, a court must decide whether a debt collector's act or practice violates a "general provision of the FDCPA by balancing the extent to which the practice may deceive or harm a consumer against the burden its prohibition would place on an honest debt collector." *Johnson v. NCB Collection Servs.*, 799 F. Supp. 1298, 1303 (D. Conn. 1992) (citing

*Pressley v. Capital Credit & Collection Serv., Inc.*, 760 F.2d 922, 924-5 (9th Cir. 1985) (per curiam)).

36.     In the Official Staff Commentary on the FDCPA, § 1692d(6) is described with the following comment:

> Section [1692d(6)] prohibits, except where section [1692b] applies, "the placement of telephone calls without meaningful disclosure of the caller's identity."

> 1.     *Aliases.* [omitted]

> 2.     *Identification of caller.* An individual debt collector must disclose his employer's identity when discussing the debt on the telephone with consumers or third parties permitted by section [1692c(b)].

> 3.     *Relation to other sections.* [omitted]

*See* Federal Trade Commission Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 500097, 50105 (Dec. 13, 1998) (cmt. to § 1692d(6)). In addition, the FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." *See* 15 U.S.C. § 1692a(2). Because the disclosure requirement, according to the FTC, only applies "when discussing the debt on the telephone with consumers or third parties," a voice mail message that merely provides a telephone number and a request for a return call does not violate § 1692d(6) because it is not a "discussion" of the consumer's debt and does not convey information regarding the debt.

37.     In 1977, the FTC Staff issued an informal opinion letter under the FDCPA which addressed the question of whether a collector can place a phone call and leave word (if that debtor is not there) to have the debtor call back to an individual without leaving the name of the collection agency. *See* Atteberry, FTC Informal Staff Letter, Dec. 30, 1977. The Staff answered the question in the affirmative, adding only the restriction that "when the consumer calls back the individual clearly discloses that he is a debt collector attempting to collect a debt as required by §

[1692e(11)]." *Id.* The Staff explained that the meaningful disclosure requirement of section "[1692d(6)] is, in our opinion, intended to cover only actual phone conversations."[3] *Id.*; *see Udell v. Kansas Counselors, Inc.*, 313 F. Supp. 2d 1135, 1142 (D. Kansas 2004) (finding the Atteberry letter to be a persuasive advisory opinion of the FTC, the agency charged with administering the FDCPA).

38.     In the present case, Plaintiff's claims under § 1692d(6) and  § 392.304(a)(4) are based on his alleged receipt of a voice message that did not state the name of the debt collector; instead it explained that it was not a sales or marketing call, but a matter requiring Plaintiff's immediate attention and simply provided a call-back telephone number. Plaintiff does not claim that he answered the call or that he had any sort of live conversation with a collection representative. According to the rationale above, this is exactly what should have happened. In order to protect Plaintiff's privacy, the caller did not disclose the nature of call because anyone could have heard it resulting in a violation of § 1692c(b), communication with third parties. Upon on a returned call and proper verification of Plaintiff's identity, however, the required disclosures could then have been properly made. Either way, § 1692d(6) contemplates disclosures during actual conversations with the debtor. Since there was never an actual conversation resulting from one of Creditwatch's outbound phone calls, § 1692d(6) could not have been violated and summary judgment should be entered as a matter of law.

        b.  *Plaintiff's TDCA § 392.304(a)(4) Claims Fail as a Matter of Law.*

39.     Section 392.304(a)(4) of the TDCA is much clearer on this issue. This provision requires disclosure of the "name of the person to whom the debt has been assigned or is owed *when making a demand for money.*" *See* Tex. Fin. Code § 392.304(a)(4) [emphasis added]. Because the voice

---

[3] Written more than 27 years ago, the Atteberry opinion more than likely did not contemplate the use of voice message technology. Instead, "leaving word" at the debtor's phone number probably meant to leave a message with a third party who answered the phone in the debtor's absence. However, if this conversation with a third party was not considered by the FTC to be an "actual phone conversation" because it was not a conversation with the actual debtor, then a reasonable parallel is that a message left on a machine or voice mail is also not an "actual phone conversation" or discussion requiring disclosure under § 1692d(6).

message allegedly left in this case never makes a "demand for money," it cannot fairly be considered to be violative of the TDCA. Further, the voicemail makes no mention of a debt, money, or demand for either.  As a result, Plaintiff has failed to demonstrate a violation of either the FDCPA or TDCA and summary judgment should be granted in Creditwatch's favor on both claims.

2.   <u>Summary Judgment is Proper for Plaintiff's FDCPA § 1692e(11) and TDCA § 392.304(a)(5)(B) Claims.</u>

40.    Similar to his claims addressed above, Plaintiff also argues that Creditwatch's alleged voice message left on March 21st and another on March 31st violated the FDCPA and TDCA by failing to notify Plaintiff that the communication was from a debt collector. He alleges that both messages violated § 1692e(11) of the FDCPA and that only the March 21st message violated § 392.304(a)(5)(B) of the TDCA. While not specifically separated in the statute, § 1692e(11) recognizes two distinct categories of communications. The first category is the initial communication, whether written or oral, between the debt collector and consumer, and it prohibits "[t]he failure to disclose...that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose..." 15 U.S.C. § 1692e(11). The second category applies to all communications after the initial communication, prohibiting "the failure to disclose in subsequent communications that the communication is from a debt collector..." *Id.*

41.    Unlike § 1692e(11), the TDCA does specifically divide these two provisions with subsection (A) of § 392.304(a)(5) dealing with initial communications and subpart (B) prohibiting a debt collector from failing to disclose "that the communication is from a debt collector, if the communication is a subsequent written or oral communication between the third-party debt collector and the debtor." *See* Tex. Fin. Code § 392.304(a)(5)(B).

42.    Plaintiff never alleges that any of the voice messages he allegedly received from Creditwatch constituted an "initial" communication. In fact, Creditwatch's records indicate that

its initial communication with Plaintiff was written and occurred in a letter sent Plaintiff on September 3, 2010, prior to these voice messages. *See* Def. App. at 17. As a result, Plaintiff's complaint only pertains to the latter part of § 1692e(11) and subsection (B) of § 392.304(a)(5) addressing subsequent communications.

43.     In *Biggs v. Credit Collections, Inc.*, the United States District Court for the Western District of Oklahoma considered a situation similar to that before this Court. No. CIV-07-0053-F, 2007 WL 4034997 (W.D. Okla. Nov. 15, 2007). In *Biggs*, the court considered voice messages the plaintiff received from the debt collector in which the debt collector admittedly did not disclose that it was a debt collector. After acknowledging that a variety of courts have concluded that voice messages are "communications" under the FDCPA, the Oklahoma Court explained "that is not the end of the matter, as to voice-mail messages in question here. Words matter – in this instance, the words of the voice mails and the words of the statutory definition of a 'communication.'" The Court found that the transcript of the voice message demonstrated that the message "convey[ed]" no "information regarding a debt." *See* 15 U.S.C. § 1692a(2) (FDCPA's definition of "communication"). Thus, they did not amount to "communications" under the FDCPA and did not violate § 1692e(11).[4]

44.     The same analysis used by the court in *Biggs* can be used in regards to Plaintiff's TDCA § 392.304(a)(5) claim. As the voicemails in this case do not convey any information regarding a debt, there is no communication to fit in the statutory language of Tex. Fin. Code § 392.304(a)(5). The voicemails left by Creditwatch do not violate the TDCA.

---

[4] FDCPA 15 U.S.C. § 1692a(2) defines "communication as "the conveying of *information regarding a debt* directly or indirectly to any person through any medium." (emphasis added). In this case, the voice messages left convey no information "regarding a debt".

45.     For the reasons stated, Plaintiff's claims under § 1692e(11) and § 392.304(a)(5)(B) should be resolved in Creditwatch's favor. The simple voice messages asking for a return call do not constitute "communications" under the FDCPA nor the TDCA because they do not convey any information regarding a debt. Instead, these provisions seem to only apply to letters addressed directly to, or live conversations with, the consumer. Therefore, Creditwatch requests that this motion for summary judgment on these claims be granted.

3.     <u>Plaintiff Fails to Prove His FDCPA § 1692e(3) & (10) Claims and His TDCA § 392.304(a)(17) & (19) Claims.</u>

46.     Plaintiff alleges that Creditwatch violated § 1692e(3) of the FDCPA which prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). Similarly, § 392.304(a)(17) of the TDCA prohibits a debt collector from "representing that a consumer debt is being collected by an attorney if it is not." Tex. Fin. Code § 392.304(a)(17). In support of these allegations, Plaintiff claims that on March 23, 2011, Creditwatch, "via its agent and/or employee 'Maria,' communicated with Plaintiff via telephone call"[5] where Creditwatch "falsely represented that its attorneys were hired to collect on Plaintiff's alleged balance." *See* <u>Def. App.</u> at 3. However, Plaintiff then contradicts himself by stating that he was told "that the matter had not been sent to [Creditwatch's] legal department, and therefore, no attorneys were involved in the debt collection process." *Id.* at 3-4. As can easily be seen, Plaintiff has pled himself out of a claim under these two statutory provisions. Plaintiff did not allege that "Maria" falsely represented or implied that she was herself an attorney, Plaintiff did not allege that "Maria" falsely represented

---

[5] Plaintiff's language clearly and mysteriously hides the fact that this alleged conversation was the result of Plaintiff calling Creditwatch. *See* <u>Def. App.</u> at 17("Wed Mar 23, 2011 13:10:05   Morales Ma   Inbound Call Received from Debtor").

or implied that her communication came from an attorney, and Plaintiff did not allege that "Maria" falsely represented that his debt was being collected by an attorney. Instead, Plaintiff alleged the opposite – that "Maria" informed him that there was no legal representation and that no attorneys were involved. Therefore, summary judgment on these claims should be granted in Creditwatch's favor.

47.     Included with these claims, Plaintiff alleged the catch-all provisions under both statutes: § 1692e(10) of the FDCPA prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" and § 392.304(a)(19) of the TDCA prohibiting a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." However, the conduct which Plaintiff alleges violated this provision is not separate or distinct from that already raised as a claimed violation of other sections of the Act, particularly § 1692e(3). Unfortunately, "a mere reallegation of violations of other sections of the FDCPA is not sufficient to constitute a violation of § 1692e(10)." *Dutton v. Wolhar*, 809 F. Supp. 1130, 1140 (D. Del. 1992) (citing *Beattie v. DM Collections, Inc.*, 754 F. Supp. 383, 394 (D. Del. 1991). Because Plaintiff has not based his claims under these provisions on some on some new or different action, summary judgment on them should be granted in Creditwatch's favor.

**C.     Plaintiff Fails to Prove His DTPA Claims.**

48.     To maintain a cause of action for violation of the DTPA Plaintiff must prove: 1) Plaintiff is a consumer; 2) Creditwatch used or employed a false, misleading, or deceptive act or practice that is specifically enumerated in Section 17.46(b) and relied on by a consumer to the consumer's detriment; and 3) said violation was a producing cause of economic damages or

damages for mental anguish. Tex. Bus. & Com. Code §§17.41-17.63; *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).   Plaintiff did not even allege conduct specifically enumerated in Section 17.46(b); therefore, Creditwatch is entitled to summary judgment on Plaintiff's DTPA claim. Tex. Bus. &Com. Code § 17.50(a)(1); *Perez v. Hung Kien Luu*, 244 S.W.3d 444, 446 (Tex. App.—Eastland 2007, no pet.).

**D.     Plaintiff Fails to Proffer Adequate Evidence Supporting Causation and Damages.**

49.     Under the FDCPA a debt collector who violates the statute with respect to an individual is liable to that individual for 1) "any actual damage sustained by such persons as a result of such failure;" and 2) "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(b)(1); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, ___U.S.___, 130 S.Ct. 1605, 1609 (2010).   In his First Amended Complaint, Plaintiff claims he is entitled to recover actual damages, including emotional and/or mental anguish damages. *See* Def. App. at 6. However, Plaintiff has failed to offer evidence directly linking his alleged damages to Creditwatch's supposed violations and have not offered evidence sufficient to support his request for relief.

1.     Standard for Recovering Actual Damages Under the FDCPA.

50.     Generally, the FDCPA permits recovery of actual damages for emotional distress. *Davis v. Creditors Interchange Receivable Mgt.*, 585 F.Supp.2d 968, 971 (N.D. Ohio 2008). Section 1692k(a)(1) of the FDCPA allows an award of "any actual damages sustained by such person as a result of such failure" to comply with the statute. *See id.* at 971. The Federal Trade Commission Commentary to the FDCPA states that these "actual damages" for FDCPA violations include "damages for personal humiliation, embarrassment, mental anguish, or emotional distress" as well as "out-of-pocket expenses." *Id.* (citing Staff Commentary on the Fair

Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 3, 1988) (Section 813 – Civil Liability)). However, "an FDCPA actual damages rule must only award emotional damages for actual, serious emotional distress traceable to proscribed debt collection practices." *Davis v. Creditors Interchange Receivable Management*, 585 F.Supp.2d 968, 976 (N.D. Ohio 2008) (pointing out that "debt collection…is an inherently stressful experience for the consumer").

51.     In order to do so, a plaintiff must do more than "rel[y] solely on his own conclusory statements of emotional distress." *Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) (finding plaintiff's testimony" that he was "humiliated and embarrassed," it was "mentally and emotionally distressful when dealing with credit reporting agencies," and that it was "embarrassing to go somewhere and have them check your credit report and see all the stuff on there" was insufficient to prove actual damages). Thus, when the "plaintiff's own testimony is his only evidence of emotional damages, 'he must explain the circumstances of his injury in reasonable detail' and not rely on conclusory statements, unless the 'facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's actions." *Wantz*, 386 F.3d at 834; *see Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 609 (7th Cir. 2005) (noting that the Seventh Circuit "maintain[s] a strict standard for a finding of emotional damage because they are so easy to manufacture.").

52.     In addition, "a plaintiff must link the violation of the statute to the alleged harm." *Konter v. CSC Credit Services, Inc.*, 606 F.Supp.2d 960, 967-70 (W.D. Wis. 2009). Thus, the plaintiff must "produce[] evidence that draws a direct or causal link between defendant's actions and the emotional injury plaintiff suffered." 606 F.Supp.2d at 969 (citing *Cousin v. Trans Union Corp.*, 246 F.3d 359, 370-71 (5th Cir. 2001).

2. <u>Standard for Mental Anguish Damages Under Texas Law</u>.

53.     The Texas Debt Collection Act contained within the Texas Finance Code requires a plaintiff to prove that he has suffered "actual damages sustained as a result of a violation of this chapter." *See* Tex. Fin. Code § 392.403(a)(2); *see Elston v. Resolution Servs.*, 950 S.W.2d 180, 185 (Tex.App.–Austin 1997, no writ). In addition, "[a] consumer must, in order to prevail on a DTPA claim, also establish that each defendant violated a specific provision of the Act, and that the violation was a producing cause of the claimant's injury." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996) (citing Tex. Bus. & Com. Code § 17.50(a)). Therefore, in order for Plaintiffs to succeed under the TDCA and DTPA claims, they must prove that they suffered some *actual* injury and that the injury was caused or was "a result of" the specific violations. This they have failed to do.

54.     A typical definition of mental anguish given by trial courts is as follows:

> The term "mental anguish" implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

*Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (citing *Trevino v. Southwestern Bell Tel. Co.*, 582 S.W.2d 582, 584 (Tex. Civ. App.—Corpus Christi 1979, no writ)). "It is nevertheless clear that an award of mental anguish damages will survive a legal sufficiency challenge when the plaintiffs have introduced direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine." *Parkway Co.*, 901 S.W.2d at 444. When plaintiffs fail to produce this evidence, "we apply traditional 'no evidence' standards to determine whether the record reveals any evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation,

embarrassment, or anger' to support any award of damages." *Id.* (citing *J.B. Custom Design & Bldg. v. Clawson*, 794 S.W.2d 38, 43 (Tex. App.–Houston [1st Dist.] 1990, no writ)).

55.     "Simply because a plaintiff says he or she suffered mental anguish does not constitute evidence of the nature, duration, and severity of any mental anguish that is sufficient to show a substantial disruption of one's daily routine." *Gonzalez v. Temple-Inland Mortg. Corp.*, 28 S.W.3d 622, 626 (Tex. App – San Antonio 2000, no pet.) (citing *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W. 854, 861 (Tex. 1999)). Testimony in support of mental anguish damages must provide specific details of the nature, duration and severity of the mental anguish. *Gonzalez*, 28 S.W.3d at 626. Conclusory statements are not sufficient. *Id.*

3.   Plaintiff Fails to Offer Sufficient Evidence Supporting His Claim for Actual Damages.

56.     Plaintiff's Amended Complaint seeks recovery for actual damages suffered from Creditwatch's alleged conduct. *See* Def. App. at 6-9.  Plaintiff also alleges he suffered mental anguish as a result of Creditwatch's alleged conduct.  *See* Def. App. at 45 (Whatley Depo. 100:15-17).  In support of this, Plaintiff describes his damages throughout his deposition.

57.     Plaintiff states that he was harmed by Creditwatch's alleged phone calls in that "I would have to go back and look to see if they reported this to my credit bureau or not, if it affected my credit. At the time, I don't recall." *See* Def. App. at 34 (Whatley Depo 55:9-14).  He followed this by stating "They were harassing me.  The call - - the computerized prerecorded phone calls would come in when I was with clients on jobs making it difficult to do my job, making me nervous. Even after they were told to quit, they would still do it." *Id.* (Whatley Depo. 55:16-20). Plaintiff also says the only other harm he believes he has suffered is just stress, "having to deal with it, the constant pushing, pushing, pushing makes me detract from what I need to do in my business." *Id.* at 35-36 (Whatley Depo. 61:18-62:4). Last, Plaintiff states he did not seek any

medical care as a result of the telephone calls, but that his sugar level has risen since the phone calls. *Id*. (Whatley Depo. 56:10-14).

58.     First, in regards to Plaintiff's credit report, when asked about his credit harm again, he stated "I don't recall saying that it affected my credit. I'm saying I don't know if they reported it to my credit or not." *See* <u>Def. App.</u> at 38 (Whatley Depo. 72:16-73:10). Here Plaintiff alleges a harm he does not even know exists. By Plaintiff's own statements he is claiming his credit has possibly been harmed, and has not made an effort to determine whether it has in fact been harmed, nor has he linked any change in his credit to a result of Creditwatch's alleged conduct. Based on this, Plaintiff has failed to show any actual damages manifested through his credit.

59.     Second, in regards to Plaintiff's claim of stress and difficulty with his job and business, Plaintiff merely makes conclusory claims that do not rise to the level required by law to recover actual damages. Plaintiff provides no evidence of any changes in him performing his job, any real disruption of his job and performance, and states the calls made him nervous at his job. *See* <u>Def. App.</u> at 34 (55:15-20). In fact, Plaintiff testified that he cannot recall missing any assignment as a result of the calls. *Id*. at 41 (83:12-16). Plaintiff also stated he was never advised his work was subpar, never received negative feedback, and was not docked any pay or business. *Id*. (84:6-85:15).

60.     In Plaintiff's deposition he also complained that "the phone starts calling when they shouldn't have been[,] it detracts from my thought process[,] I have to stop and turn the phone off. *Id*. at 41 (83:21-84:6). In regards to this complaint it is conceivable that Plaintiff could receive a call while on the job from anyone such as a family member, an employer, or a client. Following Plaintiff's testimony it seems any phone calls he received would make it difficult for him to do his job and make him nervous. Plaintiff cannot show calls from any other person do

not have the same impact as any alleged calls by Creditwatch.  As a matter of law, Plaintiff cannot recover actual damages for mental anguish.

61.     Third, Plaintiff has not sought any psychologist or therapist care for his alleged mental anguish and damages.  *See* Def. App. at 35 (59:20-22).  Plaintiff has also not sought any pastoral counseling in regards to the alleged actions by Creditwatch.  *Id.* (60:18-22).  Plaintiff even did not see his doctor or report to his doctor about any of his feelings related to the underlying facts in this lawsuit.  *Id.* (61:12-17).

62.     Last, Plaintiff seems to turn his damages to ones resulting from actually bringing this lawsuit.  When Plaintiff was asked if he has any "hard damages" he replied "the only thing I can think of right now is possibly being here today and losing money." *See* Def. App. at 36 (Whatley Depo. 62:21-63:1).  Plaintiff followed this later when asked if he has suffered any mental anguish where his response was "I feel like I have … having to go through all this stress when I could be doing other things.  In these economic times, I'm having to sit here and be penetrated with insinuations and - - you know, it's just aggravating.  It creates mental stress." *Id.* at 45 (Whatley Depo. 100:15-101:2).  These statements by Plaintiff specifically link his claimed stress and mental anguish to the actual deposition and the litigation involved with the suit he filed, not Creditwatch's alleged actions.

63.     As a result of Plaintiff's deposition testimony, Plaintiff has not suffered actual damages as a matter of law.  Summary Judgment should be granted in favor of Creditwatch that Plaintiff has not suffered any actual damages.

## IV.

## CONCLUSION

64.     Plaintiff's Fails to provide any evidence creating a genuine issue of material fact that Creditwatch violated the FDCPA, TDCA, TCPA or DTPA.  However, the evidence shows

Creditwatch's attempts to collect Plaintiff's debt did not amount to any of these alleged violations. Creditwatch acted legally and within the confines of the relevant statutes. As a result, Plaintiff's claims should be resolved in Creditwatch's favor at summary judgment. For Plaintiff's TCPA claim, the evidence shows Plaintiff consented to receiving phone calls to his cellular phone and that Plaintiff has provided no evidence to show these calls were made with an automatic dialing system or artificial voice or prerecorded voice. Further, regulations and case law show that Plaintiff's verbal request to cease communication is not proper as the request must be made in writing which he failed to do. Plaintiff's FDCPA and TDCA claims also fail as a matter of law. The voice messages left for Plaintiff do not violate the statutes, Creditwatch did not misrepresent attorneys were involved with the collection, Creditwatch did not violate the initial communication statutes, and Creditwatch did not harass, oppress, or abuse Plaintiff. Summary judgment is proper on all of Plaintiff's claims.

WHEREFORE PREMISES CONSIDERED, Creditwatch Services, Ltd. respectfully requests that the Court Grant its Motion for Summary Judgment in its entirety and for such other and further relief to which it may be justly entitled.

Respectfully submitted,


**ROBBIE MALONE, PLLC**

\s\Robbie Malone
Robbie Malone
State Bar No. 12876450
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
(214) 346-2625 Phone
(214) 346-2631 Fax
Email: rmalone@rmalonelaw.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded via electronic filing on this ___ day of February, 2012 to:

Dennis R. Kurz.
Weisberg & Meyers, LLC
Two Allen Center
1200 Smith Street, 16th Floor
Houston, TX 77002

/s/Robbie Malone