**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| THOMAS E. WHATLEY III, | § | |
| Plaintiff | § | |
| | § | Case No. 4:11-cv-00493-RAS-DDB |
| vs. | § | |
| | § | |
| CREDITWATCH SERVICES, LTD., | § | |
| Defendant | § | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Thomas E. Whatley III ("Plaintiff"), by and through his counsel undersigned, hereby submits this motion for summary judgment against Defendant, CreditWatch Services, Ltd. ("Defendant").  In support thereof, Plaintiff respectfully states as follows:

## I.     INTRODUCTION.

On February 2, 2012, Defendant filed a motion for summary judgment (Doc. 18), to which Plaintiff responded on February 21, 2012 (Doc. 23).  Plaintiff filed a sur-reply to the motion on March 12, 2012.  (Doc. 36).  Plaintiff hereby incorporates into this motion by reference the facts and legal argument contained in Plaintiff's response and sur-reply briefs (Doc. 23; Doc. 36).

Plaintiff moves for summary judgment on his claims under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Texas Debt Collection Act ("TDCA"), Chapter 392, TEX. FIN. CODE, and the Texas Deceptive Trade Practices Act ("DTPA"), Chapter 17, Subchapter E, TEX. BUS. & COM. CODE, and the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  Specifically, Defendant violated 15 U.S.C. § 1692e(d)(6) by failing to provide meaningful disclosure of its identity in voicemail messages left for Plaintiff in connection with the collection of a debt.  Defendant violated 15

U.S.C. § 1692e(11) by failing to disclose in communications with Plaintiff that the Defendant is a debt collector.   Defendant violated 15 U.S.C. § 1692e(3) and 15 U.S.C. § 1692e(10) by misleading Plaintiff as to the level of attorney involvement in the collection of Plaintiff's debt. Defendant violated 15 U.S.C. § 1692c(a)(2) by contacting Plaintiff directly after receiving notice that Plaintiff was represented by an attorney.   Defendant's false and misleading representations made in connection with debt collection also violate the TDCA and DTPA.   Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by placing non-emergency telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system and/or an artificial or prerecorded voice without Plaintiff's prior express consent.   Because no genuine dispute of material fact exists, Defendant's liability on these claims is ripe for adjudication.

## II.   STATEMENT OF ISSUES.

1.   Whether Plaintiff is entitled to summary judgment on Plaintiff's claim under 15 U.S.C. § 1692d(6).

2.   Whether Plaintiff is entitled to summary judgment on Plaintiff's claim under 15 U.S.C. § 1692e(11).

3.   Whether Plaintiff is entitled to summary judgment on Plaintiff's claim under 15 U.S.C. § 1692e(3).

4.   Whether Plaintiff is entitled to summary judgment on Plaintiff's claim under 15 U.S.C. § 1692e(10).

5.   Whether Plaintiff is entitled to summary judgment on Plaintiff's claim under 15 U.S.C. § 1692c(a)(2).

6.   Whether Plaintiff is entitled to summary judgment as to Defendant's liability to Plaintiff under the TDCA.

7.      Whether Plaintiff is entitled to summary judgment as to Defendant's liability to Plaintiff under the DTPA.

8.      Whether Plaintiff is entitled to summary judgment on Plaintiff's claim under 47 U.S.C. § 227(b)(1)(A)(iii).

## III.   STATEMENT OF UNDISPUTED MATERIAL FACTS.[1]

Plaintiff incorporates by reference the facts enumerated in Plaintiff's response (Doc. 23 at 3-7, ¶¶1-26).  In addition to those facts, Plaintiff states as follows:

27.     Defendant is regularly engaged in the business of collecting debts owed or due, or asserted to be owed or due, a creditor or creditors other than Defendant.  (See Deposition Transcript of Defendant's Rule 30(b)(6) Representative Scott Brandt, attached hereto as Exhibit A, at 23:13-19).

28.     Defendant began attempting to collect from Plaintiff a debt alleged to be due Gerald Champion Regional Medical Center on or about September 3, 2010.  (Exhibit A at 82:21-22; See Defendant's Collection Notes, attached hereto as Exhibit B).

29.     Defendant uses a service known as "Global Connect" to place telephone calls. (Exhibit A at 39:22-40:4).

30.     "The Global Connect System initiates calls through its own proprietary software running on servers located in major commercial data centers. Customers can create and configure their own broadcasts by logging into a web-based management console for their account. Customers have the capability of recording messages in their own voice, building complex messages including text-to-speech, uploading and managing their call lists, and scheduling

---

[1] For ease of reference, throughout this brief, Plaintiff may refer to either the statement of facts contained in Plaintiff's response to Defendant's motion for summary judgment (Doc. 23), numbers 1-26, or the additional facts listed in the instant motion, numbers 27-55, as "SOF" followed by a number designating which specific fact Plaintiff is referencing.

broadcasts. The servers create and process the calls internally as Voice over IP (VOIP) calls, and then connect each call to the Public Switch Telephone Network ("PSTN") via phone lines connected at the data centers."  (See Global Connect System Description, attached hereto as Exhibit C, and publicly available at https://cert.webtrust.org/pdfs/soc3_global_connect.pdf).[2]

31.    Global Connect "uses Voice Over Internet Protocol to deliver prerecorded voice messages to designated phone numbers at unmatched speed and capacity."  See About Global Connect Website Screenshot, attached hereto as Exhibit D, and publicly available at http://www.gc1.com/aboutus.jsp; see also Exhibit A at 42:15-19).

32.    Instead of "calling contacts manually," Global Connect allows one "to increase the rate at which [one] make[s] those calls."  (See Global Connect Brochure, attached hereto as Exhibit E, and publicly available at http://www.gc1.com/downloads/pdf/7186geninserts.pdf).

33.    The Global Connect "system reaches more contacts . . . more quickly than a collector could ever call manually."  (See Global Connect Case Study Advertisement, attached hereto as Exhibit F, and publicly available at http://www.gc1.com/downloads/pdf/7084doc.pdf).

34.    Defendant imports phone numbers to be called into the Global Connect system, and the Global Connect software dials the phone numbers for Defendant. (Exhibit A at 41:2-18).

35.    Once Defendant imports phone numbers to be called, Global Connect dials the numbers automatically. (Exhibit A at 48:11-18).

36.    One of the benefits of using the Global Connect system, according to Defendant, is that the system "can actually dial faster than a human."  (Exhibit A at 50:9-17).

---

[2] "The public switched telephone network (PSTN) is the network of the world's public circuit-switched telephone networks. It consists of telephone lines, fiber optic cables, microwave transmission links, cellular networks, communications satellites, and undersea telephone cables, all inter-connected by switching centers, thus allowing any telephone in the world to communicate with any other. Originally a network of fixed-line analog telephone systems, the PSTN is now almost entirely digital in its core and includes mobile as well as fixed telephones."  See http://en.wikipedia.org/wiki/Public_switched_ telephone_network.

37.     When a telephone call is placed, if the Global Connect system detects that a live person has answered the phone, it either plays a prerecorded message or automatically transfers the call to an available agent and/or employee of Defendant.  (Exhibit A at 50:25-52:18; see also Global Connect Collection Agency Brochure Insert, attached hereto as Exhibit G, and available at http://www.gc1.com/downloads/pdf/GlobalConnectContactComplyCollectTrifold.pdf; Exhibit E).

38.     Defendant uses the Global Connect system as an "automated dial announcing device." (Exhibit A at 75:10-15, 76:3-77:6).

39.     Defendant's Collection Notes, attached hereto as Exhibit B, record and show every action Defendant took in connection with the collection of Plaintiff's debt.  (Exhibit A at 94:25-95:5).

40.     Each entry in Defendant's Collection Notes that states "Phoned: THOMAS WHATLEY at Home dialed: 9402100311" represents a separate telephone call that was placed to Plaintiff's cellular telephone number. (Exhibit A at 96:19-25; Exhibit B).

41.     Each entry in Defendant's Collection Notes that states "Dialer Vendor" immediately below the entry reading "Phoned: THOMAS WHATLEY at Home dialed: 9402100311" indicates that a telephone call was placed to Plaintiff's cellular telephone number using the Global Connect dialing system.  (Exhibit A at 98:12-99:6; Exhibit B).

42.     Each entry in Defendant's Collection Notes that states "Answer Machine/VM" or "Machine/VM" indicates that a voice message was left on Plaintiff's cellular telephone number. (Exhibit A at 100:7-19; Exhibit B).

43.     The voice messages left on Plaintiff's cellular telephone number used an artificial or prerecorded voice to deliver the message.  (Exhibit A at 100:20-101:12).

44.     Each prerecorded or artificial voice message left for Plaintiff stated: "Hello. We have an important message for Thomas Whatley. This is not a sales or marketing call. This is an urgent matter for Thomas Whatley that requires your immediate attention. Please contact us at 866-609-4094, then provide the phone number we called you so we can identify your account. Thank you." (Exhibit A at 101:7-12, 112:8-24).

45.     Defendant created the language used in its standardized voice messages delivered to Plaintiff.  (Exhibit A at 113:2-8).

46.     The voice message does not state it is from a debt collector.  (Exhibit A at 117:8-24).

47.     No calls placed to Plaintiff were made for emergency purposes.  (Exhibit A at 146:22-147:3).

48.     The purpose of every call placed to Plaintiff was in connection with an attempt to collect a debt.  (Exhibit A at 147:5-9).

49.     Defendant never forwarded Plaintiff's account to an attorney for review or collection.  (Exhibit A at 119:22-25).

50.     At no time were any attorneys at all involved in Defendant's collection efforts with respect to Plaintiff's account.  (Exhibit A at 120:2-12).

51.     No telephone number is listed on the "Hospital Consent Form" upon which Plaintiff's signature appears.  (Exhibit A at 143:24-144:8; Doc. 18-1 at 13).

52.     The hospital information form upon which Plaintiff's telephone number appears is not signed by Plaintiff and does not mention consent.  (Exhibit A at 144:9-20; Doc. 18-1 at 14).

53.     Defendant has no evidence or information as to whether Plaintiff completed the hospital information form (Doc. 18-1 at 14) himself.  (Exhibit A at 145:2-5, 145:11-14).

54.     Defendant has no other documents upon which its affirmative defense of consent is based.  (Exhibit A at 146:3-12).

55.     Defendant applied for and was granted a permit to make calls with its "automated dial announcing device" in Texas.   (Exhibit A at 77:9-15; see Public Utility Commission of Texas ADAD Permit for Defendant, attached hereto as Exhibit H, and publicly available at http://www.puc.state.tx.us/industry/communications/directories/adad/report_adad.aspx?ID=ADS QL01DB1245478400002).

## IV.    SUMMARY JUDGMENT STANDARD.

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "material" if its resolution could affect the outcome of the action. *Commerce & Indus. Ins. Co. v. Grinell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must review the facts in the light most favorable to the nonmoving party, to the extent supportable by the record.  *Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000).

## V.     FDCPA STANDARD.

Plaintiff discusses the standards under which the FDCPA should be interpreted in his response to Defendant's motion for summary judgment, and incorporates the same herein by reference.  (See Doc. 23 at 9-13).  "A single violation of any provision of the Act is sufficient to establish civil liability under the FDCPA."  *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997).

## VI.   PLAINTIFF IS A "CONSUMER," DEFENDANT IS A "DEBT COLLECTOR," AND THE ALLEGED OBLIGATION AT ISSUE IS A "DEBT," ALL AS DEFINED BY THE FDCPA.

Plaintiff is a natural person obligated or allegedly obligated to pay a debt.  (SOF, ¶1).

Plaintiff is therefore a "consumer" as defined by 15 U.S.C. § 1692a(3).

Defendant is regularly engaged in the business of collecting debts owed or due, or

asserted to be owed or due, a creditor or creditors other than Defendant.  (SOF, ¶27).  Defendant

is therefore a "debt collector" as defined by 15 U.S.C. § 1692a(6).

Plaintiff's incurred the alleged debt, which Defendant sought to collect, in a transaction

the subject of which was primarily for personal, family, or household purposes—specifically,

Plaintiff incurred the alleged debt for personal medical treatment.  (SOF, ¶1).  A medical bill is a

"debt" as defined by the FDCPA.  *See Anderson v. Good Shepherd Hosp., Inc.*, No. CV 2:09-

CV-112 TJW, 2011 WL 846091 (E.D. Tex. Mar. 8, 2011) (debt owed to hospital subject to

FDCPA protection).  At all times Defendant was regularly engaged in attempting to collect from

Plaintiff a "debt" as defined by 15 U.S.C. § 1692a(5).  (SOF, ¶¶1, 7, 28, 48).

## VII.  PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT UNDER 15 U.S.C. § 1692d(6).

The FDCPA provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> *      *      *
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(6).[3]

Plaintiff's response to Defendant's motion for summary judgment discusses case law interpreting 15 U.S.C. § 1692d(6), and explains how Defendant's conduct violated this section. (See Doc. 23 at 13-16).  Plaintiff incorporates the same herein by reference.

Defendant placed telephone calls to Plaintiff without disclosing the caller's identity. Defendant left a voice message for Plaintiff on Monday, March 21, 2011 at 4:07 p.m.  (SOF, ¶42; Exhibit B).  The voice message stated as follows:

> Hello. We have an important message for Thomas Whatley. This is not a sales or marketing call. This is an urgent matter for Thomas Whatley that requires your immediate attention. Please contact us at 866-609-4094, then provide the phone number we called you so we can identify your account. Thank you.

(SOF, ¶¶12, 44).

This call was placed in connection with the collection of a debt.  (SOF, ¶48).  The voice message fails to disclose Defendant's identity, fails to disclose that the purpose of the call is to collect a debt, and otherwise fails to provide sufficient information to Plaintiff so as to meaningfully disclose Defendant's identity.  Defendant left identical voice messages for Plaintiff at no less than six additional dates and times, including on March 22, 2011 at 6:49 p.m.; March 23, 2011 at 12:27 p.m.; April 5, 2011 at 7:43 p.m.; April 6, 2011 at 11:15 a.m.; and twice on April 12, 2011 at 3:01 p.m.  (SOF, ¶42; Exhibit B).  There is no genuine dispute as to these facts, which support finding Defendant liable for violations of 15 U.S.C. § 1692d(6).

---

[3] The exception provided by section 1692b, which specifies certain requirements for communications to third parties, is not relevant here because all communications were directed to Plaintiff, rather than to any third parties.  As well, the purpose of the communications was to collect a debt, and not to gather location information.  (SOF, ¶48).

## VIII.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT UNDER 15 U.S.C. § 1692e(11).

The FDCPA provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> *    *    *
> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and **the failure to disclose in subsequent communications that the communication is from a debt collector**, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11) (emphasis added).

Plaintiff's response to Defendant's motion for summary judgment discusses case law interpreting 15 U.S.C. § 1692e(11), and explains how Defendant's conduct violated this section. (See Doc. 23 at 16-23).  Plaintiff incorporates the same herein by reference.

Defendant's voice messages were placed to Plaintiff in connection with the collection of a debt.  (SOF, ¶48).  The voice messages placed to Plaintiff do not state that the communication is from a debt collector.  (SOF, ¶44).  Defendant admits that the communication does not state it is from a debt collector.   (SOF, ¶46).   Therefore, no genuine dispute exists and Plaintiff is entitled to summary judgment on this claim.

## IX.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT UNDER 15 U.S.C. §§ 1692e(3) AND 1692e(10).

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The sixteen subsections of section 1692e provide a non-exhaustive list of practices that fall within such

10

prohibited conduct.  Proscribed action includes the "false representation or implication that any individual is an attorney or that any communication is from an attorney."  Section 1692e also includes a catch-all provision, prohibiting generally "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."  15 U.S.C. § 1692e(10).

In this case, during a telephone conversation on March 23, 2011, Defendant misrepresented that attorneys were involved in the collection of Plaintiff's debt, and failed to clearly articulate that no attorneys were involved at the time.  (SOF, ¶¶14-15).  However, Defendant never forwarded Plaintiff's account to an attorney for review or collection.  (SOF, ¶49).  At no time were any attorneys at all involved in Defendant's collection efforts with respect to Plaintiff's debt.  (SOF, ¶50).  By misleading Plaintiff as to the level of attorney involvement, Defendant violated 15 U.S.C. §§ 1692e(3) and 1692e(10), and summary judgment is appropriate in favor of Plaintiff on these claims.

Plaintiff's response to Defendant's motion for summary judgment discusses case law interpreting 15 U.S.C. §§ 1692e(3) and 1692e(10), and explains how Defendant's conduct violated these sections.  (See Doc. 23 at 23-28).  Plaintiff also discusses how Defendant's conduct violated these sections in his sur-reply brief.  (Doc. 36 at 2-3).  Plaintiff incorporates the same herein by reference.

"[I]f a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file."  *Gonzalez v. Kay*, 577 F.3d 600, 604 (5th Cir. 2009).  "Debt collectors acting solely as debt collectors must not send the message that a lawyer

is involved, because this deceptively sends the message that the 'price of poker has gone up.' "

*Id.* at 607.

## X.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT UNDER 15 U.S.C. § 1692c(a)(2).

The FDCPA provides:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt –
>
> \*      \*      \*
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

15 U.S.C. § 1692c(a)(2).

On April 4, 2011, Plaintiff's counsel sent Defendant written notice that Plaintiff was represented by counsel.  (SOF, ¶17).  Evidenced by the United States Postal Service's track and confirm service, Defendant received the written notice on April 8, 2011 at 10:44 a.m.  (SOF, ¶18).  After Defendant received Plaintiff's written cease and desist notice, Plaintiff's counsel never gave Defendant permission to directly contact Plaintiff for any reason, nor did Plaintiff's counsel fail to respond to any communications from Defendant.  (SOF, ¶¶19-20).  Regardless, Defendant contacted Plaintiff directly anyway, by telephone, including, but not limited to, on the following dates and times: April 8, 2011 at 2:36 p.m.; April 11, 2011 at 4:52 p.m.; twice on April 12, 2012 at 3:01 p.m.; and April 13, 2011 at 1:11 p.m.  (SOF, ¶40; Exhibit B).  These calls were placed in connection with the collection of a debt.  (SOF, ¶48).  Because there is no genuine dispute that Defendant contacted Plaintiff directly in effort to collect a debt after having received

notice that Plaintiff was represented by counsel, Plaintiff is entitled to summary judgment on his claim under 15 U.S.C. § 1692c(a)(2).

## XI.   PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON HIS TEXAS LAW CLAIMS.

### A.   Defendant Violated The TDCA.

The TDCA provisions at issue make it unlawful for a debt collector to "represent[] that a consumer debt is being collected by an attorney if it is not," Tex. Fin. Code § 392.304(a)(17); to "us[e] any other false representation or deceptive means to collect a debt or obtain information concerning a consumer," Tex. Fin. Code § 392.304(a)(19); and "failing to disclose . . . that the communication is from a debt collector, if the communication is a subsequent written or oral communication between the third-party debt collector and the debtor," Tex. Fin. Code § 392.304(a)(5)(B).

Plaintiff incorporates by reference the discussion of Defendant's liability as to these TDCA claims contained in Plaintiff's response to Defendant's motion for summary judgment. (Doc. 23 at 29-30).  For the reasons described in sections VIII and IX, *supra*, Defendant is liable to Plaintiff under Tex. Fin. Code §§ 392.304(a)(5)(B), 392.304(a)(17), and 392.304(a)(19).

### B.   Defendant Violated The DTPA.

"A violation of [the TDCA] is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter."  Tex. Fin. Code § 392.404(a).  Plaintiff incorporates by reference the discussion of Defendant's liability as to the DTPA contained in Plaintiff's response to Defendant's motion for summary judgment.  (Doc. 23 at 30).  Because Defendant violated the TDCA, discussed *supra*, Defendant is liable to Plaintiff under the DTPA.

**C.     The Amount Of Actual Damages To Which Plaintiff Is Entitled Is A Jury Question.**

With Defendant's liability as to Plaintiff's claims under Texas law demonstrated, the Court may properly enter summary judgment as to Defendant's liability, and reserve for trial the issue actual damages.   Plaintiff's response to Defendant's motion for summary judgment discusses the legal standard for awarding actual damages under the FDCPA and TDCA, and attaches evidence of causation upon which reasonable minds could not disagree.  (Doc. 23 at 31-35).   Plaintiff hereby incorporates the same herein by reference.   Plaintiff testified in his deposition that Defendant's conduct made it "difficult to do [his] job, making [him] nervous." (SOF at ¶22).   Plaintiff testified that Defendant's conduct caused him stress that affected his daily business routine.  (SOF at ¶24).  It detracted from his thought process and may have caused Plaintiff to lose business opportunities.  (SOF at ¶25).  Plaintiff has type II diabetes, and testified that his "sugar level has risen" due to Defendant's conduct.  (SOF at ¶26).  Based on Plaintiff's testimony and other trial evidence, a reasonable jury can conclude that Defendant's conduct caused Plaintiff actual damages.   Therefore, the Court should enter summary judgment as to Defendant's liability on Plaintiff's TDCA and DTPA claims, and submit the issue of actual damages to the jury.

**XII.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT UNDER 47 U.S.C. § 227(b)(1)(A)(iii).**

The TCPA provides:

> (b) Restrictions on use of automated telephone equipment.

> (1) Prohibitions.

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> *   *   *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

Plaintiff discusses at length the applicability and standard under which the TCPA is interpreted and how Defendant's conduct violates the TCPA in his response to Defendant's motion for summary judgment (Doc. 23 at 35-45) and in his sur-reply brief (Doc. 36 at 3-10). Plaintiff incorporates the same herein by reference.

**A.     An "Automatic Telephone Dialing System" Includes Any Equipment With The Capacity To Dial Numbers Without Human Intervention.**

The TCPA prohibits a caller from using any automatic telephone dialing system to call a telephone number associated with a cellular service.  The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1) (emphasis added).   "[A] system need not actually store, produce or call randomly or sequentially generated telephone numbers, it only need to have the capacity to do it."  *Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d 946, 951 (9th Cir. 2009).

The FCC has issued rulings expanding the definition of "automatic telephone dialing system" to include "predictive dialers", which the FCC defined as "having the capacity to dial numbers without human intervention" and as " 'equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be

available to take calls .... [i]n most cases, telemarketers program the numbers to be called into the equipment ...' " FCC, In the Matter Of Rules and Regulations Implementing the Telephone Consumer Protection Act Of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07-232, ¶12, n. 23 (2007).   The FCC also stated that the "purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented" and that to exclude equipment because "it relies on a given set of numbers would lead to an unintended result." FCC, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 03-153, ¶133.

The Northern District of Illinois recently discussed the process and reasoning of the FCC's rulings at length:

> More recently, companies . . . have developed dialers that call lists of known telephone numbers—in this case, the telephone numbers of CPS's [the debt collector's] customers. (*Id.* at ¶ 16.)
>
> In 2002, the FCC solicited comments concerning the TCPA's definition of an "automatic telephone dialing system." *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd 17459, 17473–476 (September 18, 2002). The FCC acknowledged that autodialing technology had advanced. *See id.* at 17474 ("More sophisticated dialing systems, such as  predictive dialers and other electronic hardware and software containing databases of telephone numbers, are now widely used by telemarketers to increase productivity and lower costs."). In light of that fact, it sought comments concerning "whether Congress intended the definition of 'automatic telephone dialing system' to be broad enough to include any equipment that dials numbers automatically, either by producing 10–digit telephone numbers arbitrarily or generating them from a database of existing telephone numbers." *Id.* "Specifically, we ask whether a predictive dialer that dials telephone numbers using a computer database of numbers falls under the TCPA's restrictions on the use of autodialers." *Id.* at 17475. As CPS points out, **several companies argued that predictive dialers fell outside the TCPA's scope because a list or database of actual customer telephone numbers is, by definition, not randomly or sequentially generated**. *See, e.g.,* Comments of the American Teleservices Ass'n, attached as Ex.

C to Stone Decl., at 113 ("Predictive dialers do not generate 'random' or 'sequential' telephone numbers. **Instead, they rely on telephone numbers from lists provided by the equipment operator.** These lists are anything but 'random' or 'sequential.' "). The thrust of these comments was that Congress, in enacting the TCPA, intended to regulate an especially vexatious type of autodialing, not autodialing generally. (*See, e.g.,* Comments of Mastercard Int'l Inc., attached as Ex. B to Stone Decl., at 6 ("[P]redictive dialers are generally used to dial numbers the telemarketer *intends* to call, not those randomly generated which may include hospital rooms, etc.") (emphasis in original).)

**The FCC effectively rejected these comments, concluding that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress."** *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd 14014, 14093 (July 3, 2003). The technology had changed, but the basic function of such equipment—"the *capacity* to dial numbers without human intervention"— had not. *Id.* at 14092 (emphasis in original). The FCC went on to conclude that,

> [T]o exclude from [the restrictions on automated and prerecorded calls] equipment that use [sic] predictive dialing software from the definition of "automated telephone dialing equipment" simply because it relies on a given set of numbers would lead to an unintended result. Calls to emergency numbers, health care facilities, and wireless numbers would be permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists and software packages. We believe the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented.

*Id.* at 14092–93. In 2008, in response to a request for clarification, **the FCC "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."** *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd 559, 566 (Jan. 4, 2008). The petitioner requesting clarification argued that "a predictive dialer meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." *Id.* The FCC rejected this interpretation, citing the policy considerations that guided its 2003 ruling. *Id.* at 566–67.

*Griffith v. Consumer Portfolio Serv., Inc.*, No. 10 C 2697, 2011 WL 3609012, at \*2-3 (N.D. Ill. Aug. 16, 2011) (emphasis added).

This is consistent with the recent rulings of several other district courts across the country, which have followed the FCC's rulings and held that predictive dialers are covered by the TCPA.  *See Tovar v. Midland Credit Mgmt.*, No. 10CV2600 MMA MDD, 2011 WL 1431988, at \*3 (S.D. Cal. Apr. 13, 2011) ("The FCC ruled predictive dialers used by debt collectors fall within the meaning of autodialers, thereby refusing to carve out an exception for debt collectors."); *Robinson v. Midland Funding, LLC*, No. 10CV2261 MMA AJB, 2011 WL 1434919, at \*5 (S.D. Cal. Apr. 13, 2011) (same); *Vance v. Bureau of Collection Recovery LLC*, No. 10-CV-06324, 2011 WL 881550, at \*2 (N.D. Ill. Mar. 11, 2011) ("the FCC has indicated, and other courts have held, that predictive dialing systems do meet the definition of devices prohibited by the TCPA."); *Hicks v. Client Services, Inc.*, No. 07-61822-CIV-DIMITRO, 2009 WL 2365637, at \*5 (S.D. Fla. June 9, 2009) ("This type of device, which calls a set of numbers without human intervention, falls under the FCC definition of automatic telephone dialing systems.").

> ### B.   Defendant Uses An "Automatic Telephone Dialing System" To Place Telephone Calls.

Defendant uses a service known as "Global Connect" to place telephone calls.  (SOF, ¶29).  The Global Connect system initiates calls through its own proprietary software running on servers located in major commercial data centers.  (SOF, ¶30).  Based on specified phone number call lists and other information provided by a user, the servers create and process the calls and connect each call to the Public Switch Telephone Network.  (SOF, ¶30).  Instead of calling contacts manually, Global Connect allows one to increase the rate at which one makes those calls.  (SOF, ¶32).  The Global Connect system reaches more contacts more quickly than a

collector could ever call manually.  (SOF, ¶33).  One of the benefits of using the Global Connect system, according to Defendant, is that the system "can actually dial faster than a human." (SOF, ¶36).

Defendant imports phone numbers to be called into the Global Connect system, and the Global Connect software dials the phone numbers for Defendant. (SOF, ¶34)  Once Defendant imports phone numbers to be called, Global Connect dials the numbers automatically, without human intervention. (SOF, ¶¶35, 36).  When a telephone call is placed, if the Global Connect system detects that a live person has answered the phone, it either plays a prerecorded message or automatically transfers the call to an available agent and/or employee of Defendant.  (SOF, ¶37).

### C.  An "Automatic Dial Announcing Device" Is An "Automatic Telephone Dialing System" By Definition.

Defendant testified that it uses the Global Connect system as an "automated dial announcing device."  (SOF, ¶38).  An "automated dial announcing device" means:

> automated equipment used for telephone solicitation or collection that can:
>
> (1) store telephone numbers to be called or produce numbers to be called through use of a random or sequential number generator; and
>
> (2) convey, alone or in conjunction with other equipment, a prerecorded or synthesized voice message to the number called without the use of a live operator.

TEX. UTIL. CODE § 55.121.

Defendant applied for and was granted a permit to make calls with its "automated dial announcing device" in Texas.  (SOF, ¶55; Exhibit H).

Therefore, Defendant's equipment has the capacity to store or produce telephone numbers to be called randomly or sequentially, as well as to deliver a prerecorded or artificial

voice message without human intervention.  Defendant's system used to place telephone calls falls within the scope of the TCPA.

**D.      Defendant Used An "Automatic Telephone Dialing System" To Place Telephone Calls To Plaintiff's Cellular Telephone Number.**

Defendant used the Global Connect dialing system to place telephone calls to Plaintiff's cellular telephone number, including but not limited to on the following dates and times: March 21, 2011 at 4:07 p.m.; March 22, 2011 at 6:49 p.m.; March 23, 2011 at 12:27 p.m.; March 31, 2011 at 6:59 p.m.; April 5, 2011 at 7:43 p.m.; April 6, 2011 at 11:15 a.m.; April 8, 2011 at 2:36 p.m.; April 11, 2011 at 4:52 p.m.; twice on April 12, 2012 at 3:01 p.m.; and April 13, 2011 at 1:11 p.m.  (SOF, ¶41; Exhibit B).  No less than eleven calls were placed to Plaintiff's cellular telephone number using the dialing system.  (Exhibit A at 99:7-9).

**E.      Defendant Used An Artificial Or Prerecorded Voice To Place Telephone Calls To Plaintiff's Cellular Telephone Number.**

In addition to prohibiting the use of any automatic telephone dialing system to make telephone calls to a number associated with a cellular service, the TCPA prohibits the use of an artificial or prerecorded voice to make telephone calls to a number associated with a cellular service.  47 U.S.C. § 227(b)(1)(A)(iii); *see also Moore v. Firstsource Advantage, LLC*, 07-CV-770, 2011 WL 4345703, *10 (W.D.N.Y. Sept. 15, 2011) ("Further, even if it never used an ATDS, Defendant also could be liable under the TCPA for placing calls to Plaintiff's cell number using an artificial or prerecorded voice.").

Defendant delivered a voice message to Plaintiff's cellular telephone number using an artificial or prerecorded voice, including but not limited to on the following dates and times: March 21, 2011 at 4:07 p.m.; March 22, 2011 at 6:49 p.m.; March 23, 2011 at 12:27 p.m.; April

5, 2011 at 7:43 p.m.; April 6, 2011 at 11:15 a.m.; and twice on April 12, 2011 at 3:01 p.m. (SOF, ¶¶42-43; Exhibit B).

> **F.**    **Defendant's Telephone Calls To Plaintiff Were Not Made For Emergency Purposes.**

None of the telephone calls that Defendant placed to Plaintiff were made for emergency purposes.  (SOF, ¶47).

> **G.**    **Defendant Did Not Have Plaintiff's Prior Express Consent To Place Telephone Calls To His Cellular Telephone Number Using An Automatic Telephone Dialing System Or An Artificial Or Prerecorded Voice.**

> > **1.**    **Defendant Has Conceded That It Cannot Meet Its Burden Of Proving Plaintiff Provided Prior Express Consent To Be Contacted On His Cellular Telephone Number.**

Prior express consent, under the TCPA, "is an affirmative defense upon which the . . . Defendant, bears the burden."  *Lee v. Credit Mgmt., LP*, --- F. Supp. 2d ----, 2012 WL 113793, at *11 (S.D. Tex. Jan. 13, 2012); *see also In re Rules Implementing the Telephone Consumer Protection Act of 1991,* 23 F.C.C.R. 559, 564 (2008) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. . . . Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.").

Defendant does not assert that Plaintiff ever directly gave Defendant consent, rather it relies on an FCC interpretation holding that the provision of a cellular telephone number to a creditor at the time of the transaction creating the debt evidences consent.  *See id.*  However, Defendant cannot show that Plaintiff provided his cellular telephone number to the original creditor—Gerald Champion Regional Medical Center.

Plaintiff's cellular telephone number appears on a hospital information form, filled out by a person other than Plaintiff.  (SOF, ¶5).  Plaintiff does not recognize the handwriting and has no

recollection of how the information was obtained, due to his head injury for which he was hospitalized.  (SOF, ¶6).  The hospital information form upon which Plaintiff's cellular telephone number appears is not signed by Plaintiff and does not mention consent.  (SOF, ¶52). The only document signed by Plaintiff does not list any telephone number.  (SOF, ¶51). Defendant has no evidence or specific information as to whether Plaintiff completed the hospital information form.  (SOF, ¶53).  Defendant's affirmative defense of "prior express consent" is premised exclusively on the hospital information form.  Defendant has no other documents upon which it bases its prior express consent affirmative defense. (SOF, ¶54).  Because Defendant cannot meet its burden to show prior express consent, its reliance on this defense is unavailing.

> **2.    Even If Defendant Did Have Prior Express Consent—It Did Not— Plaintiff Revoked Any Consent Orally On March 23, 2011.**

Under the TCPA, prior express consent may be revoked orally.  (See Doc. 23 at 42-44; Doc. 36 at 4-10).  Plaintiff revoked any consent Defendant may have had when it demanded Defendant to cease and desist from calling his cellular telephone number during a telephone conversation with Defendant on March 23, 2011.  (SOF, ¶16).  Therefore, any telephone calls placed to Plaintiff's cellular telephone number using an automatic telephone dialing system or artificial or prerecorded voice subsequent to that date violate the TCPA.

> **3.    Even If Defendant Did Have Prior Express Consent—It Did Not— Plaintiff, Through His Counsel, Revoked Any Consent In Writing By Its April 4, 2011 Letter.**

On April 4, 2011, Plaintiff's counsel sent Defendant a letter instructing Defendant to "not contact our client for any reason."  (SOF, ¶17).  Defendant received this letter on April 8, 2011 at 10:44 a.m.  (SOF, ¶18).  Therefore, any telephone calls placed to Plaintiff's cellular telephone number using an automatic telephone dialing system or artificial or prerecorded voice subsequent to that date and time violate the TCPA.

**H.      Plaintiff Is Entitled To Damages In An Amount No Less Than $500.00 For Each Violative Telephone Call Placed.**

The TCPA provides that any person subject to a violation of the TCPA is entitled to "$500 in damages for each such violation."  47 U.S.C. § 227(b)(3)(B).  Each call that Defendant made to Plaintiff by using an automatic telephone dialing system, or a prerecorded or artificial voice, constitutes a separate and distinct violation of the TCPA.  *Adamcik*, --- F. Supp. 2d ----, 2011 WL 6793976 at *8; *see also Joffe v. Acacia Mortg. Corp.*, 121 P.3d 831 (Ariz. Ct. App. Div. 1 2005) (noting that it is the act of making a call, that is, of attempting to communicate to a cellular telephone number using certain equipment, that the TCPA prohibits); *Fillichio v. M.R.S. Associates, Inc.*, No. 09-61629-CIV, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010) ("The text of the TCPA, however, does not include [] a requirement . . . that the recipient of a call must answer the phone or somehow be aware of the call in order for there to be a violation of the TCPA.").

Treble damages are proper under the TCPA – three (3) times the statutory minimum[4] damage award of $500.00 per violation – where the defendant's actions were committed "willfully or knowingly."   47 U.S.C. § 227(b)(3).   Although neither the TCPA nor FCC regulations define the terms "willfully or knowingly," courts have generally interpreted willfulness to imply only that an action itself was intentional.  *Smith v. Wade,* 461 U.S. 30, 41 n. 8 (1983).  The Communications Act of 1943, of which the TCPA is a part, defines willful as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation."  *Sengenberger v. Credit Control Services, Inc.*, 2010 WL 1791270, *6 (N.D. Ill. 2010); *see also Dubsky v. Advanced Cellular Communications, Inc.,* 2004

---

[4]  The TCPA allows a plaintiff "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater."  47 U.S.C. § 227(b)(3)(B).  Plaintiff seeks an award of statutory damages, and not actual damages pursuant to this section.

WL 503757, at *2 (Ohio Com. Pl. 2004) (in the context of the TCPA, the term acting "willfully" means that "the defendant acted voluntarily, and under its own free will, regardless of whether the defendant knew that it was acting in violation of the statute").

Similarly, the United States Supreme Court has explained that " 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law. As Justice Jackson correctly observed, 'the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.' . . . . Thus, unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 192 (1998); *see also United States v. Meade*, 175 F.3d 215, 226, n. 5 (1st Cir. 1999) ("knowing," as used in a criminal statute, "normally signifies that the government needs to prove only that the defendant knew of the facts comprising the offense, and nothing more"); *United States v. Cohen*, 260 F.3d 68, 76 (2d Cir. 2001) (holding it matters only that defendant knowingly committed the deeds forbidden by statute, not that he intended to violate the statute).

Therefore, "willful or knowing" under the Telecommunications Act (of which the TCPA is a part), [does] not require[e] bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001); *see also Stewart v. Regent Asset Mgmt. Solutions*, No. 1:10-CV-2552-CC-JFK, 2011 WL 1766018, at *7 (N.D. Ga. May 4, 2011) ("to establish a *knowing* violation of the TCPA for an award of treble damages, a plaintiff must prove only that the defendant knew that it acted or failed to act in a manner that violated the statute, not that the defendant knew that the conduct itself constituted a violation of the law."); *Charvat v. Ryan*, 879 N.E.2d 765, 770 (Ohio 2007) (same).

In this case, there is no dispute that Defendant knew it was using an automatic telephone dialing system and an artificial or prerecorded voice to call Plaintiff.  (SOF, ¶¶29, 41-42, 45).  Even after Defendant had actual knowledge that Plaintiff demanded all calls to his cellular telephone number cease and desist, (SOF, ¶16), Defendant made a knowing, willful, and calculated decision to continue using its automatic telephone dialing system to place additional telephone calls to Plaintiff's cellular telephone without his consent, and leave messages using an artificial or prerecorded voice.  Because Defendant willfully and knowingly violated the TCPA, Plaintiff requests treble damages.

## XIII.   CONCLUSION.

No genuine disputes of material fact exist as to Defendant's conduct, and the Court may enter summary judgment in favor of Plaintiff on all of Plaintiff's FDCPA claims.  The Court is in position to determine the statutory damages to which Plaintiff is entitled as a result of Defendant's FDCPA violations.  *See* 15 U.S.C. § 1692k(a)(2)(A) (providing a debt collector who violates the FDCPA liable for, "in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000); 15 U.S.C. § 1692k(b)(1) (providing non-exhaustive list of factors to be considered by the court in determining the amount of liability).  The Court may enter summary judgment as to Defendant's liability for violations of the TDCA and DTPA.  The issue of Plaintiff's actual damages is suitable for trial and jury determination.

The Court may properly enter summary judgment as to Defendant's liability under the TCPA.  Defendant made no less than eleven telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or an artificial or prerecorded voice, in violation of the TCPA.  The Court may find Defendant liable to Plaintiff under the TCPA and award

damages in the amount of at least $5,500.00, based on the eleven[5] automatic calls made to Plaintiff, and may award treble damages in its discretion.

WHEREFORE, Plaintiff respectfully requests the Court to grant Plaintiff's motion for summary judgment.

Dated:  May 4, 2012.

Respectfully submitted,

WEISBERG & MEYERS, LLC

By: /s/ Noah D. Radbil
    Noah D. Radbil
    Texas Bar No. 24071015
    noah.radbil@attorneysforconsumers.com
    Weisberg & Meyers, LLC
    Two Allen Center
    1200 Smith Street, Sixteenth Floor
    Houston, Texas 77002
    Telephone:     (888) 595-9111
    Facsimile:     (866) 317-2674

    *Attorneys for Plaintiff*
    THOMAS E. WHATLEY, III

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2012, the foregoing document was electronically filed with the clerk of the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court, which will send notification of such filing to:

Robbie Malone
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231

By: /s/ Noah D. Radbil
    Noah D. Radbil

---

[5] Plaintiff is aware of the discrepancy between the number of calls Defendant's records reflect Defendant placed and the number of calls Plaintiff's testimony and evidence (Doc. 23-1) shows he received. However, the Court may find liability based on Defendant's own records, and reserve for trial the determination of any additional violative calls that were made.