**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| THOMAS E. WHATLEY III, | § | |
| *Plaintiff* | § | |
| | § | |
| *v.* | § | Civil Action No. 4:11-cv-00493-RAS-DDB |
| | § | |
| CREDITWATCH SERVICES, LTD., | § | |
| *Defendant.* | § | |

### MR. WHATLEY'S MOTION FOR ATTORNEYS' FEES

#### Issue to be Decided

The FDCPA mandates an award of reasonable attorneys' fees to a successful consumer-plaintiff based on "the product of reasonable hours times a reasonable rate"—the lodestar calculation. A jury awarded Mr. Whatley the maximum statutory damages permitted under the FDCPA after Mr. Whatley's attorneys spent 317.5 hours litigating his claims at an average hourly rate of $233.03[1]—less than the average rate charged by Texas consumer protection attorneys. Given that Mr. Whatley's attorneys present sufficient evidence to support their time entries and rates, is Mr. Whatley entitled to the lodestar amount of $78,981.00 as compensation for attorneys' fees incurred in connection with the diligent and successful prosecution of his claims?

#### Statement of Procedure

**A. Mr. Whatley filed a complaint against CreditWatch alleging violations of consumer protection laws.**

On August 8, 2011, Mr. Whatley filed his original complaint against CreditWatch, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Texas Debt

---

[1] Mr. Whatley calculated this average rate by dividing the total attorney fees billed by the total attorney hours spent in this litigation.

Collection Act ("TDCA"), and the Texas Deceptive Trade Practices Act ("DTPA").  Doc. 1.

Within 21 days after CreditWatch filed its answer, Mr. Whatley filed an amended complaint as

permitted by Rule 15, to add a claim for violations of the Telephone Consumer Protection Act

("TCPA").  Doc. 8.  CreditWatch answered the amended complaint, denying the allegations.

Doc. 10.

### B.  The parties engaged in extensive discovery and had several discovery disputes.

In October and November, 2011, the parties sent one another written discovery requests.

In December, CreditWatch took the deposition testimony of Mr. Whatley.  On March 7, 2012,

Mr. Whatley took the deposition of CreditWatch's Rule 30(b)(6) representative.

In January, 2012, CreditWatch filed a motion to compel production of notes that Mr.

Whatley took during his deposition, Doc. 14, to which Mr. Whatley responded, Doc. 15, and

CreditWatch replied.  Doc. 16.  On February 22, 2012, CreditWatch filed a "motion for sanctions

challenging sufficiency of Plaintiff's responses to requests for admission."  Doc. 25.  The same

day, CreditWatch also filed a second motion to compel discovery.  Doc. 26.  Mr. Whatley filed

responses to both motions.  Doc. 35; Doc. 37.  CreditWatch filed replies, Doc. 38, Doc. 39, and

Mr. Whatley filed sur-replies.  Doc. 41; Doc. 45.

The Court granted in part CreditWatch's second motion to compel discovery, Doc. 46,

and the Court denied CreditWatch's first motion to compel production of the deposition notes.

Doc. 49.  The Court denied CreditWatch's motion for sanctions.  Doc. 47.

On April 4, 2012, Mr. Whatley filed a motion to compel discovery responses.  Doc. 50.

CreditWatch responded in opposition, Doc. 51, and Mr. Whatley replied.  Doc. 56.  The Court

granted Mr. Whatley's motion to compel in part and denied it in part as to those issues that had

been resolved.  Doc. 66.[2]

**C. The parties filed multiple dispositive motions.**

On February 2, 2012, CreditWatch filed a motion for summary judgment on all of Mr.

Whatley's claims.  Doc. 18.  On February 3, 2012, CreditWatch filed a motion to dismiss all of

Mr. Whatley's claims for lack of subject matter jurisdiction.  Doc. 19.  Mr. Whatley filed

responses in opposition to both of these motions.  Doc. 21; Doc. 23.  CreditWatch filed briefs in

reply.  Doc. 30; Doc. 31.  Mr. Whatley filed sur-reply briefs.  Doc. 34; Doc. 36.  On May 4,

2012, Mr. Whatley filed a motion for summary judgment.  Doc. 61.  CreditWatch filed a

response, Doc. 73, and Mr. Whatley filed a reply.  Doc. 81.

On May 10, 2012, the Magistrate Judge recommended that Defendant's motion to

dismiss be denied, Doc. 63, and the Court upheld the recommendation.  Doc. 102.  On July 13,

2012, the Magistrate Judge recommended that summary judgment be granted in Mr. Whatley's

favor on two of his FDCPA claims and one of his TDCA claims.  Doc. 87.  The Magistrate Judge

---

[2]      One subject of the discovery dispute concerned the written contract between CreditWatch
and the creditor on whose behalf if was collecting, Gerald Champion Regional Medical Center.
CreditWatch's designated corporate representative, Mr. Scott Brandt, had testified during his
deposition that a written contract did exist.  However, subsequently, CreditWatch's counsel
stated on the record during a discovery hearing on May 10, 2012, that no contract between
CreditWatch and the creditor existed.  Doc. 107-4 at 4-5 of 22.  At trial Mr. Brandt again
testified that CreditWatch was collecting from Mr. Whatley pursuant to a written contract with
the creditor.  See Trial Transcript at 315: 10-12, Doc. 132-1 at 1.  In 2011, Gerald Champion
Regional Medical Center filed a petition for Chapter 11 bankruptcy in the U.S. Bankruptcy Court
for the District of New Mexico, Case No. 11-13686-j11, and included the contract in its
schedules of executory contracts.  CreditWatch never produced that contract in this litigation
despite Mr. Whatley's counsel's efforts to obtain it.  In Mr. Whatley's attorneys' statement of
services, there are several time entries devoted to preparing a motion for sanctions against
CreditWatch and its counsel for the obstruction of discovery related to this issue.  Although Mr.
Whatley ultimately chose not to file the motion, much of the time spent preparing it was relevant
to the successful prosecution of the case.  Therefore, while some time was waived, Mr. Whatley
seeks compensation for a reasonable amount of time on this issue.

further recommended summary judgment be granted for CreditWatch on one TDCA claim, and that both motions be denied as to all remaining claims.  Doc. 87.  Both parties filed certain objections to the report, Doc. 91, Doc. 94, but the Court upheld the recommendation.  Doc. 103.

### D.  The parties filed extensive pretrial materials.

The parties filed motions in limine and briefs in support and opposition.  Docs. 59, 60, 70, 71, 78, 82.  The Court granted in part and denied in part the motions.  Doc. 104.  The parties prepared and filed pretrial materials, including proposed jury instructions, witness lists, exhibit lists, proposed pretrial order, as well as certain responses or objections.  Docs. 68, 69, 79, 84, 85, 86, 89, 90, 92, 93, 95, 96, 97, 98, 99, 110, 111, 112, 113, 114, 115, 116.  Mr. Whatley served a subpoena duces tecum on Global Connect, LLC, to which CreditWatch filed a motion to quash.  Doc. 101.  Mr. Whatley filed a response in opposition to the motion, Doc. 107, and the Court denied CreditWatch's motion to quash.  Doc. 108.

### E.  A jury ruled in favor of Mr. Whatley on his FDCPA and TCPA claims.

A four-day jury trial on Mr. Whatley's claims began on May 28, 2013, after which the jury returned a verdict in favor of Mr. Whatley for $1,000.00 in statutory damages under the FDCPA—the maximum amount awardable.  Doc. 126; Doc. 127 at Question No. 16.  The jury also found that CreditWatch committed 23 separate violations of the TCPA.  Doc. 127 at Question Nos. 5, 6.

### F.  As the prevailing party, Mr. Whatley now moves this Court for an award of attorneys' fees.

Mr. Whatley recounts this lengthy tedium of procedural history in the foregoing subsections to demonstrate the extent to which CreditWatch complicated this litigation in a tenacious effort to avoid the liability that the jury ultimately found.  Because "[a] single violation of any provision of the Act is sufficient to establish civil liability under the FDCPA," *Taylor v.*

*Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997), Mr. Whatley would have been entitled to damages after he succeeded on two FDCPA claims on summary judgment. Yet, CreditWatch proceeded to trial on all remaining claims, including FDCPA claims.  At the conclusion of trial, the Court ordered Mr. Whatley to submit briefing by June 21, 2013 on the issue of damages under the TCPA, for which a separate brief is concurrently being filed, and the instant brief on attorneys' fees.

Argument

### A. The FDCPA mandates an award of attorneys' fees to a successful consumer-plaintiff.

15 U.S.C. § 1692k(a) provides in pertinent part:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person *is liable* to such person in an amount equal to the sum of—
>
> *       *       *
>
> (3) in the case of any successful action to enforce the foregoing liability, *the costs of the action, together with a reasonable attorney's fee* as determined by the court.

15 U.S.C. § 1692k(a) (emphasis added).

Every circuit court of appeals to consider the FDCPA's fee-shifting provision has held that an award of attorneys' fees to a successful consumer-plaintiff is mandatory. *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989) ("Because the FDCPA was violated, however, the statute requires the award of costs and a reasonable attorney's fee."); *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) ("Given the structure of [the FDCPA], attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general."); *Tolentino v. Friedman*, 46 F.3d 645,

5

651 (7th Cir. 1995) ("The [FDCPA's] statutory language makes an award of fees mandatory.");

*Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995) ("[T]he fee award under §

1692k is mandatory in all but the most unusual circumstances."); *French v. Corporate*

*Receivables, Inc.*, 489 F.3d 402, 403 (1st Cir. 2007) ("An award of attorney's fees to successful

plaintiffs under the FDCPA is obligatory."); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973,

978 (9th Cir. 2008) ("The FDCPA's statutory language makes an award of fees mandatory.").

Texas federal district courts have, likewise, recognized the mandatory nature of an award

of attorneys' fees award under section 1692k. *See Young v. Asset Acceptance, LLC*, No. 3:09-

CV-2477-BH, 2011 WL 618274, at *2 (N.D. Tex. Feb. 10, 2011) ("This argument, however, is

inconsistent with the purpose and policies of a fee-shifting statute such as the FDCPA, which

makes an award of attorney's fees mandatory and assumes a 'private attorney general approach'

for its enforcement."); *Toomer v. Alliance Receivables Mgmt., Inc.*, No. CIV. A. 08-CA-467-LY,

2010 WL 5071778, at *6 (W.D. Tex. Dec. 9, 2010) ("parties agree that an award of attorney's

fees is mandatory, given that the Plaintiff has been successful in her action").

## B. An award of attorneys' fees under the FDCPA is not conditioned upon, and need not be proportionate to, the amount of damages recovered.

Awards of reasonable attorneys' fees under federal statutes that include fee-shifting

provisions "are not conditioned upon and need not be proportionate to an award of money

damages." *City of Riverside v. Rivera,* 477 U.S. 561, 576 (1986); *see also Lewis v. Kendrick*, 944

F.2d 949, 957 (1st Cir. 1991) ("We believe we made it clear that we were not departing from the

recognized principle that the fee is not limited by the size of the recovery, but may, in

appropriate instances, greatly exceed it.").

Echoing the Supreme Court's directive, Texas district courts—in the context of an action

filed under the FDCPA—have held that "[t]he disparity between the final award of damages and

the attorneys' fees and expenses sought in this case is not unusual and is necessary to enable individuals wronged by debt collectors to obtain competent counsel to prosecute claims." *Turner v. Oxford Mgmt. Services, Inc.*, 552 F. Supp. 2d 648, 656 (S.D. Tex. 2008); *see, e.g.*, *Jones v. White*, No. 03-2286, 2007 WL 2427976, at *6 (S.D. Tex. Aug. 22, 2007) (awarding $265,769.15 for attorneys' fees incurred in connection with claims under the Americans with Disabilities Act, where the court awarded only $100 in statutory damages).

Indeed, a rule limiting an award of attorneys' fees to an amount proportionate to damages recovered would seriously undermine the mechanism that Congress chose to enforce the FDCPA. Congress included a mandatory fee-shifting provision in the FDCPA because it "chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Tolentino*, 46 F.3d at 651; *Camacho*, 523 F.3d at 978 ("In order to encourage private enforcement of the law . . . Congress has legislated that in certain cases prevailing parties may recover their attorneys' fees from the opposing side. . . . . The FDCPA is one such statute.") (internal citation omitted). The purpose of the FDCPA's statutory fee-shifting provision is to benefit a consumer-plaintiff by allowing her to obtain counsel in order to pursue redress for relatively small claims. Noteworthy, by providing the private bar with incentive to involve itself in consumer litigation through fee-shifting, the federal government is relieved of the costs of protecting consumers while ensuring that consumers may still avail themselves of their statutory rights.

"In order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." *Tolentino*, 46 F.3d at 653. That "commensurate" fee is best measured by "what that attorney could earn from paying clients" at a "standard hourly rate." *Id*. Paying counsel less—or, in other words, tying an award of attorneys' fees to the amount of

damages awarded—"is inconsistent with the Congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Id.*

### C. Mr. Whatley's request for $78,981.00—a product of the hours that his attorneys (and paralegals) incurred litigating his claims, multiplied by their hourly rate—reasonable.

The "lodestar amount" is "the product of reasonable hours times a reasonable rate." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 547 (1986), *supplemented*, 483 U.S. 711 (1987). The Supreme Court recently explained that it has "established a 'strong presumption' that the lodestar represents the 'reasonable' fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *see also Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672-73 (2010) (characterizing the lodestar approach as the "guiding light of our fee-shifting jurisprudence" that has "achieved dominance in the federal courts," and endorsing the approach as an alternative to the *Johnson* factors that "placed unlimited discretion in trial judges and produced disparate results").

### 1. The number of hours that Mr. Whatley's attorneys spent litigating his claims is reasonable.

"Reasonable hours" are those "reasonably necessary to perform the legal services for which compensation is sought." *Delaware Valley Citizens' Council for Clean Air*, 478 U.S. at 553; *see also Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978), *holding modified by Inmates of Allegheny County Jail v. Pierce*, 716 F.2d 177 (3d Cir. 1983).

Mr. Whatley's attorneys' expended 317.5 total billable hours performing legal services reasonably necessary to litigate his claims: Marshall Meyers—41.6 hours; Alex Weisberg—1.1 hours; Dennis Kurz—21.3 hours; Aaron Radbil—6.1 hours; Noah Radbil—144.6 hours; Joe Panvini—84.3 hours; Russ Thompson—17.1 hours; Armando Nava—1.4 hours. *See* Statement of Services, attached as Exhibit A. Mr. Whatley's attorneys' paralegals and law clerks expended

an additional 37 billable hours. *Id.*   Mr. Whatley's attorneys and their legal staff waived approximately an additional 221.6 hours of time, for which Mr. Whatley does not seek compensation.

> **i.   Mr. Whatley's attorneys attest that the time they spent litigating her claims was necessary and reasonable.**

"It is perfectly proper to award attorney's fees based solely on affidavits in the record." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citing *Mesa Petroleum Company v. Coniglio*, 629 F.2d 1022, 1030 (5th. Cir. 1980)).  "A federal district court may fix attorneys' fees on the basis of affidavits and may even do so on its own experience without any testimony." *Resolution Trust Corp. v. Tassos*, 764 F. Supp. 442, 443 (S.D. Tex. 1990).

After reviewing each itemized time entry included in Mr. Whatley's attorneys' statement of services, each of his attorneys attest that that the actual time he or she spent litigating Mr. Whatley's claims was necessary and reasonable. See Declarations of Mr. Whatley's Attorneys, attached as Exhibit B; Attorney Biographical Information, attached as Exhibit C.

> **ii.   Mr. Whatley is entitled to attorneys' fees incurred litigating his request for attorneys' fees.**

"A district court may award costs and fees for time spent litigating a cost or fee request." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 336 (5th Cir. 1995).  "In statutory fee cases, federal courts . . . have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-60 (9th Cir. 1985).

The Third Circuit aptly explained why attorneys should be compensated for time spent preparing a fee request:

> Hence, the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award. If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased. Recognizing this fact, attorneys may become wary about taking Title VII cases, civil rights cases, or other cases for which attorneys' fees are statutorily authorized. Such a result would not comport with the purpose behind most statutory fee authorizations, Viz, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies.

*Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee.").

### iii.   Mr. Whatley waived attorney time entries related to his TCPA claim and exercised billing discretion.

"[W]hile segregation of fees is necessary when the plaintiff brings some causes for which attorneys fees are not available, segregation is not necessary when the services rendered relate to multiple claims arising out of the same facts or transaction or the prosecution or defense entails proof of the same facts." *Memon v. Pinnacle Credit Servs., LLC*, No. 4:07-CV-3533, 2009 WL 6825243, at *2 (S.D. Tex. May 21, 2009) (citing *America Home Assurance Company v. United Space Alliance, LLC*, 378 F.3d 482, 494 (5th Cir. 2004)).  This case involves multiple claims arising out of the same facts or transaction.  Attorneys' fees are available for all claims except those under the TCPA.  In this case, Mr. Whatley's attorneys and legal staff spent a total of 576.1 hours on this litigation.  However, Mr. Whatley does not seek compensation for more than one-third of this time—approximately 221.6 hours of time entries are waived.  *See* Exhibit A. Although this time was reasonably spent on the litigation, Mr. Whatley has chosen to waive

these entries in the exercise of billing discretion, including where time was exclusively spent on TCPA claims.  *Id.*

### iv.    No further reduction is appropriate for unsuccessful claims.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  An award of attorneys' fees must "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id.* at 435.  Where relief is obtained, a fee award is not to be reduced even where the plaintiff failed to prevail on every contention raised in the lawsuit.  *Id.* at 435 (citing *Davis v. County of Los Angeles,* 8 E.P.D. ¶ 9444, at 5049 (C.D. Cal. 1974).  Where a plaintiff prevails on the merits, the plaintiff's attorney is entitled to an award of fees for all time reasonable spent in pursuit of the ultimate result achieved.  *Id.*  "The result is what matters."  *Id.*[3]

In other words, the Court in *Hensley v. Eckerhart* rejected the defendant's contention that "an award of attorneys' fees must be proportioned to be consistent with the extent to which a Plaintiff has prevailed and only time reasonably expended in support of successful claims should be compensated."  *Id.* at 432.  The Court explained not only that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee," but also that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide

---

[3]     In mandating a result oriented approach, the Supreme Court made clear that a mathematical approach comparing the total number of issues in the case with those actually prevailed upon is improper.  *Hensley*, 461 U.S. at 435.  In particular, the Court noted that a mathematical approach provides little aid in determining what is a reasonable fee in light of all the relevant factors, nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested.  *Id.*  "For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time."  *Id.*

the hours expended on a claim-by-claim basis.  *Id.*  "Such a lawsuit cannot be viewed as a series of discrete claims."  *Id.*; *see also Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1095 (5th Cir. 1982) ("time spent in pursuing the [unsuccessful] theory had a sufficient relationship with the successful prosecution of the case to warrant compensation for time spent in developing it.").

In this case, Mr. Whatley's FDCPA claims and his Texas state law claims are related and arise out of the same set of operative facts—namely, CreditWatch's unfair debt collection practices.  By the terms of the jury's verdict, Mr. Whatley succeeded on his FDCPA claim, receiving $1,000.00 in statutory damages—the maximum available under the FDCPA.  Doc. 127; *see also Savage v. NIC, Inc.*, No. 208-CV-01780-PHX-JAT, 2010 WL 2347028, at *3 (D. Ariz. June 9, 2010) (granting all attorneys' fees requested where the plaintiff prevailed on only two of seven asserted claims, and explaining that "Plaintiffs obtained a judgment for the maximum amount of statutory damages available under FDCPA, which qualifies as a successful result.").

### 2.  Mr. Whatley's attorneys' hourly rates are reasonable.

"Reasonable fees" are "calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). This Court explained that to determine a reasonable hourly rate, courts look to the "prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community." *Hilton v. Executive Self Storage Associates, Inc.*, No. 06-2744, 2009 WL 1750121, at *9 (S.D. Tex. June 18, 2009) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)).

Mr. Whatley's attorneys' reasonable hourly rates are: Marshall Meyers—$335; Alex Weisberg—$335; Dennis Kurz—$300; Aaron Radbil—$335; Noah Radbil—$230; Joe

12

Panvini—$175; Russ Thompson—$175; Armando Nava—$175. The reasonable hourly rate for Mr. Whatley's attorneys' paralegals and law clerks is $135.

### i. Mr. Whatley's attorneys' requested rates are supported by case law.

This Court recently found hourly rates as high as $350 to be reasonable in a case under the Fair Credit Reporting Act, which has a similar fee-shifting provision in favor of the successful consumer-plaintiff. *See Haberman v. PNC Mortgage Co.*, --- F. Supp. 2d ----, 2013 WL 55504, at *3 (E.D. Tex. Jan. 3, 2013) (finding hourly rates of $225, $300, and $350 to be reasonable in a Fair Credit Reporting Act case).   In other cases where fee-shifting is involved, courts have found hourly rates as high as $400 to be reasonable. *See McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382 (5th Cir. 2011) *cert. denied*, 132 S. Ct. 589 (2011) (Fifth Circuit upheld an hourly rate of $400 per hour for an attorney located in the Eastern District of Texas); *Coe v. Chesapeake Exploration, LLC*, No. 2:09-CV-290-TJW, 2011 WL 4356728, at *5 (E.D. Tex. Sept. 15, 2011) *aff'd sub nom. Coe v. Chesapeake Exploration, L.L.C.*, 695 F.3d 311 (5th Cir. 2012) (finding hourly rates of $400, $300, and $200 reasonable for attorneys, and $175 an appropriate rate for paralegal work).   Other district courts located in Texas have awarded hourly rates of at least $300 in FDCPA cases. *See Memon v. Pinnacle Credit Servs., LLC*, No. 4:07-CV-3533, 2009 WL 6825243, at *4 (S.D. Tex. May 21, 2009) (finding range of market rates for experienced Texas attorneys in FDCPA cases encompasses $300–$350; *Bullock v. Abbott & Ross Credit Servs., L.L.C.*, No. A-09-CV-413 LY, 2009 WL 4598330, at *5 (W.D. Tex. Dec. 3, 2009) ($350 hourly rate reasonable); *Turner v. Oxford Mgmt. Servs., Inc.*, 552 F. Supp. 2d 648,

13

654 (S.D. Tex. 2008) ($300 hourly rate reasonable).   Similarly, federal courts spanning the

country routinely find hourly rates of $300 or greater to be reasonable in FDCPA cases.[4]

### ii.   Mr. Whatley's attorneys' average hourly rate is less than the average rate charged by Texas attorneys practicing consumer protection law.

In 2010 and 2011, attorneys in every state and U.S. territory took part in a national survey

to determine the average rates charged by attorneys practicing consumer protection law. United

States Consumer Law Attorney Fee Survey Report 2010-2011, at 1 of 62, attached as Exhibit D.

The results of the survey are grouped by "years of practice, firm size, practice location, degree of

practice concentration, reputation, advertising, personal client relationships, and other factors. *Id.*

at 7 of 62. For "Texas Region Firms," the survey shows that the median rate for attorneys

practicing consumer protection law is $312 per hour, and that the average rate is $320 per hour.

---

[4]      *See Lamberson v. Bank of Am. Corp.*, No. CIV. 11-335 ADM/TNL, 2012 WL 4129807, at *3 (D. Minn. Sept. 19, 2012) (awarding reasonable hourly rate of $350 in FDPCA case); *Carter v. Medicredit, Inc.*, No. 2:11-CV-01272-WMA, 2012 WL 4329294, at *2 (N.D. Ala. Sept. 18, 2012) (finding hourly rate of $375 to be reasonable in FDCPA case); *Garcia v. Resurgent Capital Services, L.P.*, No. C-11-1253 EMC, 2012 WL 3778852, at *3-4 (N.D. Cal. Aug. 30, 2012) (finding reasonable requested hourly rates of $400 and $300 for experienced FDCPA attorneys); *Collins v. Bowman, Heintz, Boscia & Vician P.C.*, No. 1:10-CV-1629-JMS-TAB, 2012 WL 1142442, at *3 (S.D. Ind. Mar. 8, 2012) (approving hourly rate of $300 for attorney in FDCPA case); *Sclafani v. Firstsource Advantage, LLC*, No. 11-62090-CIV, 2012 WL 718647, at *2 (S.D. Fla. Mar. 6, 2012) (finding "a billing rate of $325.00 per hour is reasonable"); *Phenow v. Johnson, Rodenberg & Lauinger, PLLP*, 766 F. Supp. 2d 955, 957 (D. Minn. 2011) ($350 hourly rate reasonable for lead attorney's work in FDCPA case); *Beasley v. Sessoms & Rogers, P.A.*, 5:09-CV-43-D, 2011 WL 5402883, at *3 (E.D.N.C. Nov. 8, 2011) (finding reasonable hourly rates of up to $350.00); *Shields v. Merchants and Med. Credit Corp., Inc.*, 2011 WL 3566485, at *4 (E.D. Mich. June 30, 2011) (finding that $300 is a reasonable hourly rate for two consumer attorneys in an FDCPA action); *Kreidler v. Pixler*, No. C06-0697RSL, 2011 WL 39054, at *2 (W.D. Wash. Jan. 3, 2011) (finding hourly rate of $325 from 2008 through the present" to be reasonable in consumer protection act case); *St. Bernard v. State Collection Serv., Inc.*, 782 F. Supp. 2d 823, 827 (D. Ariz. 2010) ($350 hourly rate reasonable for experienced attorney in FDCPA case); *Dowling v. Litton Loan Servicing LP*, 320 Fed. App'x. 442, 447 (6th Cir. 2009) (affirming trial court's use of $300 as a reasonable hourly rate in calculating the proper lodestar amount to award a plaintiff's attorney in an FDCPA case); *Kelly v. Montgomery Lynch & Assoc., Inc.*, 2008 WL 4560744, at *7 (N.D. Ohio Oct. 8, 2008) (finding $300 to be a proper hourly rate for two experienced consumer attorneys in FDCPA actions).

*Id*. at 54 of 62. The survey also shows that 27.3 percent of attorneys practicing consumer protection law bill at an average rate that exceeds $350 per hour. *Id*. Mr. Whatley's attorneys' average rate—$231.87 per hour—is well below the average rate charged by Texas attorneys practicing consumer protection law.

### iii. Mr. Whatley's attorneys' hourly rates are in line with the Laffey Matrix.

The Civil Division of the United States Attorney's Office for the District of Columbia created the Laffey Matrix to track hourly rates for attorneys of varying experience levels, as well as paralegals and law clerks, to be used in cases in which "fee-shifting" provisions permit prevailing parties to recover "reasonable" attorney's fees. The Laffey Matrix is based on the hourly rates allowed by the district court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). The hourly rates approved by the district court in *Laffey* were for work done principally in 1981-82. The Laffey Matrix begins with those rates. S*ee Laffey*, 572 F. Supp. at 371 (attorney rates); *id*. at 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods are determined by adding the change in the cost of living to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The D.C. Circuit implicitly endorsed use of the Laffey Matrix in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (*en banc*). Mr. Whatley's attorneys' hourly rates are in line with the Laffey Matrix.

### iv. Mr. Whatley's fee request is similar to that requested by CreditWatch's counsel in an unrelated but similar case.

In the matter of *Timothy White v. Regional Adjustment Bureau*, Case No. 3:11-cv-01817 (N.D. Tex. 2013), counsel for CreditWatch in this case represented the defendant in that case. As in this case, the *White* case involved claims brought under the FDCPA, TDCA, DTPA, and

TCPA.  As in this case, the *White* case proceeded through discovery disputes, dispositive motions, and a jury trial.  At the conclusion of the case, defense counsel requested a total of $87,155.00 in attorneys' fees.  *See* Table of Fees, Brief in Support of Motion for Attorney Fees, at 15 of 23, attached as Exhibit E.  Mr. Whatley's request for $78,981.00 is reasonable in light of the defense counsel's request in a procedurally similar matter.

## Conclusion

Courts have repeatedly admonished that defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff in response."  *See Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc) (citing *Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir. 1977)) ("Obviously, the more stubborn the opposition, the more time would be required" by the other side).  Courts recognize that while a vigorous defense is certainly permitted, the result of such will be to increase the attorneys' fees awarded against the defendant if the plaintiff prevails:

> In this instance, the discrepancy is explained largely by what we have referred to as the "Stalingrad defense."  While this hard-nosed approach to litigation may be viewed as effective trench warfare, it must be pointed out that such tactics have a significant downside.  The defendants suffer the adverse effects of that downside here.  There is a corollary to the duty to defend to the utmost– the duty to take care to resolve litigation on terms that are, overall, the most favorable to a lawyer's client.  Although tension exists between the two duties, they apply concurrently.  When attorneys blindly pursue the former, their chosen course of action may sometimes prove to be at the expense of the latter.

*Lipsett v. Blanco*, 975 F.2d 934, 941 (1st Cir. 1992); *see also Henson v. Columbus Bank & Trust Company*, 770 F.2d 1566, 1575 (11th Cir. 1985) ("CB & T has spiritedly contested Henson's claims at every stage, including the reasonableness of his petition for attorneys' fees. While CB & T is entitled to contest vigorously Henson's claims, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less

resources and with fewer hours expended."); *McGowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir. 1981) ("And although defendants are not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.").

Here, CreditWatch vigorously contested Mr. Whatley on his claims at every stage of the litigation.  Now that Mr. Whatley has prevailed, his attorneys are entitled to a reasonable fee commensurate with the hours put in to achieve that result.

WHEREFORE, Mr. Whatley respectfully requests that this Court grant his motion for attorneys' fees in the amount of $78,981.00.[5]

Dated: June 21, 2013.                     Respectfully submitted,

                                          /s/Marshall Meyers
                                          Marshall Meyers
                                          5025 N. Central Ave., #602
                                          Phoenix, AZ 85012
                                          Phone: (888) 595-9111 ext. 111
                                          Facsimile: (866) 565-1327
                                          mmeyers@attorneysforconsumers.com
                                          Attorneys for Plaintiff

---

[5] Mr. Whatley also seeks to recover his costs incurred in the litigation, and intends to file a bill of costs after the Court enters a final judgment, consistent with Local Rule CV-54.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 21, 2013, the foregoing was filed with the Court using CM/ECF, which will send notification of such filing to:

Robbie Malone
Eugene Xerxes Martin
Robbie Malone, PLLC
8750 North Central Expressway # 1850
Dallas, TX 75231
rmalone@rmalonelaw.com
xmartin@rmalonelaw.com

<u>/s/Marshall Meyers</u>
Marshall Meyers