UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THOMAS E. WHATLEY III, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. 4:11-cv-00493-RAS-DDB |
| | § | |
| CREDITWATCH SERVICES, LTD., | § | |
| DEFENDANT. | § | |

**DEFENDANT CREDITWATCH SERVICES, LTD'S RESPONSE TO PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant Creditwatch Services, Ltd. ("Creditwatch") and files the

following Response to Plaintiff's Motion for Attorneys' Fees and would respectfully show unto

the Court as follows:

**I.
INTRODUCTION**

1.      Before considering Plaintiff's Motion for Fees and this Response, Creditwatch offers the

case of *In re Still* from the Bankruptcy Court for the Eastern District of Texas as an illustration of

what it believes is very relevant to this matter. 117 B.R. 251 (Bankr. E.D. Tex. 1990). In *Still*, the

plaintiff accused American Pipeline Company of violating his automatic bankruptcy stay by

noticing a condemnation hearing two weeks before American's motion for relief from the stay

took effect. 117 B.R. at 253. To be clear, Mr. Still simply alleged that the "notice" violated the

stay and admitted that the actual hearing was not to take place until after American's relief was

effective. *See id.* The Court, after acknowledging that the notice technically violated the stay,

heard testimony regarding Mr. Still's alleged damages. *Id.* at 254. Mr. Still testified that he had

suffered $1,400 in actual damages and $3,000 in appraisal fees. *Id.*

**DEFENDANT CREDITWATCH SERVICES, LTD'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES** –                                                                                                    **Page 1**
M:\9840000 CHUBB FILES\9840279 Thomas E. Whatley III v. Creditwatch Servcies, Ltd\Pleadings\Trial\9840279.Response to
Motion for Attorneys' Fees.docx

2.      But more importantly, and most relevant to this case, the Court took "judicial notice of the fact that [Mr. Still's] primary damages were the approximately $20,000.00 he had incurred in legal expenses." *Id.* The Court reasoned that "[t]he vast disparity between the actual damages allegedly suffered ($1400.00) and the expenses related to the recovery of said damages ($23,000) gives, in the opinion of this Court, new meaning to the phrase '***killing an ant with an elephant gun***.'" *Id.* [emphasis added]. Thus, the Court concluded that "[Mr. Still's] prosecution of a de minimis violation of the stay should not be ennobled by the award of attorney's fees." *Id.*

3.      In line with *In re Still*, Creditwatch also directs this Court to the case of *Haworth v. Nevada.* In *Haworth*, the court addressed a similar situation to the claims at hand, the fee-shifting provision of the Fair Labor Standards Act. The court stated "[j]ust because a plaintiff has [a statutory] violation in her pocket does not give her a license to…run up the attorney's fees and then recover them from the defendant. *Haworth v. State of Nevada*, 56 F.3d 1048, 1052. This Court is looking at a nearly identical situation where a plaintiff had a statutory violation in his pocket, only recovered statutory damages, and now seeks an exorbitant amount of attorneys' fees. Courts should be mindful of cases in which attorneys fees are "the engine… powering the case." *Carroll v. United Compucred Collections, Inc.*, No. 1:99-00152, 2008 WL 3001595, at *4, n.4 (M.D. Tenn. July 31, 2008). Plaintiff's attorneys seek to walk away as the primary benefactors of this litigation while Mr. Whatley recovers very little in comparison.

4.      Today, Creditwatch believes that Plaintiff's remarkable request for $78,981.00 in attorney's fees where only $1,000 was recovered in damages is equivalent to exterminating the proverbial ant with an elephant gun. As will be seen *infra* majority of this amount is excessive, unnecessary, and was incurred for the sole benefit of Plaintiff's counsel in his search for fees, rather than for Plaintiff himself. Most importantly, Plaintiff was unsuccessful on over half of his

claims allowing the recovery of attorneys' fees. For this and other reasons explained below, the Creditwatch objects to Plaintiff's Motion and requests that Plaintiff be awarded a substantially reduced amount.

## II.
## THE FIRM OF WEISBERG & MEYERS

5.      Overstaffing, overcharging and overbilling. The evidence contained within Plaintiff's own fee agreements portrays the overstaffing on a case, overcharging for services, and overbilling for a simple FDPCA case. Various courts have reviewed similar motions for attorneys' fees of Plaintiff's counsel Weisberg & Meyers and have come to those conclusions. Unfortunately, this case is more of the same.

6.      First, in the case of *Raimondi v. Zakheim & Lavrar, PA*, the court pointed out Weisberg & Meyers' excessive use of attorneys and staff by stating "Plaintiff utilized the services of *FIFTEEN* professionals, including six attorneys, three law clerks, two paralegals, and four legal assistants[.]"*Raimondi v. Zakheim & Lavrar, PA*, Case No. 6:11-cv-480-Orl-31DAB (Apr. 5, 2012) (courtesy copy, <u>Def. App.</u> at 39-44). Similarly, this case was staffed with nine (9) attorneys and twenty-seven (27) paraprofessionals who are unknown to be paralegals, law clerks, or legal assistants. The *Raimondi* court went on to state "What Plaintiff failed to submit is evidence sufficient to convince the Court that well over ten professionals were necessary to prosecute this straightforward debt collection act suit." *Id*. Also assessing the reasonableness of Plaintiff's hours, the court stated the following:

> Although the Court normally addresses the reasonable rate first in calculating the lodestar, the presence of so many counsel here requires the Court to initially determine the extent of compensable services. While Plaintiff offers argument regarding the reasonableness of the rates charged (addressed below), he presents nothing specific to support the number of hours claimed by the professionals marshaled here. **The Court is not surprised by this, as no paying client would countenance being billed for six lawyers to prosecute a claim for statutory**

**damages of $1,000.** While the Court does not find the recovery here to be nominal in view of the purpose of the Act, nor that the fees obtained by counsel must be proportional to the amount awarded, it does find that the hours spent must be warranted by the task at hand. As this Court has observed recently in a similar context, it does not require six attorneys to prosecute a one-plaintiff case under the Act, especially where, as here, only one attorney made an appearance in the case, and that attorney claims an expertise in such cases. While Plaintiff is certainly free to choose whatever staffing arrangements he desires in litigating a case, he is only entitled to reimbursement of reasonable costs from his adversary. Upon review, **the Court finds that the number of professionals used here necessarily inflated the bill, as timekeepers moved in and out of the file, and resulted in a fee claim that cannot be sustained**.

*Id.* (parentheticals and internal citations omitted) (emphasis added). In *Raimondi*, the court struck Weisberg & Meyers request for attorneys' fees in half. *Id.*

7.     In the case of *Castro v. McCarthy & Jennerich*, the court addressed similar conduct. In assessing the reasonableness of hours billed, the court stated "[p]laintiff's Counsel billed the services of thirteen attorneys and support staff to this routine file." *Castro v. McCarthy & Jennerich*, Civil Action No. 2:11-cv-01832 (CCC) (JAD) (Jan. 10, 2013) (courtesy copy, Def. App. at 45-52). "The Court agrees that much of the intramural updates between the staff and members and reviews of other employees work should be removed from the billed hours." *Id*. "'[E]nlisting more associates' work on a case in order to dribble the ball more efficaciously down the field is acceptable only when the end goal the firm shoots for is the vindication of Plaintiff's rights under the FDCPA—not the maximization of its own fee award.'" *Id.* (citing *Levy v. Global Credit and Collection Corp.*, 2011 WL 5117855 at *6. In assessing the reasonableness of hours, the court stated "[t]his Court likewise finds this to be an unreasonable number of hours in light of the amount of work performed and the relative legal simplicity of this case." *Id.*

8.     The United States District Court of New Jersey described similar facts. In *Whitt v. Receivables Performance Mgmt, LLC*, the court found "that it was unreasonable to have seven

(7) attorneys, including two senior partners, billing time in this case, which the Magistrate Judge accurately described as a "routine FDCPA litigation" that never progressed beyond the initial stages." *Whitt v. Receivables Performance Mgmt, LLC*, No. 11-06750 (JAP) (Oct. 2, 2012) (courtesy copy, <u>Def. App.</u> at 53-56) (citation omitted). "For example, Mr. Meyers – a senior partner at the firm – billed time for performing tasks such as opening a file, entering client information into a database and preparing an amicus precedent to track litigation progress and status. These tasks are clerical in nature and may not be included in Plaintiff's fee award. *Id*. (citations omitted). Thus, it was not only correct but necessary for Magistrate Judge Arpert to recommend that Plaintiff's request for attorneys' fees be reduced. *Id*.

9.      A Colorado District Court looked at the same issues. In *Youchoff v. IQ Data Intl., Inc.*, the court stated "it makes no sense to me that 10 different paralegals/legal assistants recorded time to this simple file. *Youchoff v. IQ Data Intl*., Civil Action No. 12-cv-00831-RBJ-MEH (May 30, 2013) (courtesy copy, <u>Def. App.</u> at 57-59) (parentheticals omitted). "The fees requested here include numerous entries for saving documents to the correct files, scheduling a status conference (.9 hours), and many, many emails. It is counsel's choice whether to assign essentially clerical work to paralegals and legal assistants, but it is not reasonable to expect the defendant to pay for that time at paralegal or legal assistant rates." *Id*. "By the same token, it is never appropriate to record unnecessary and unreasonable amounts of time to a case. At some point the laudable purpose of the FDCPA is left behind, and the case becomes litigation for the sake of the lawyers." *Id*. Creditwatch in this case requests that this Court take into consideration the commonality of Weisberg & Meyers constant overstaffing, overcharging and overbilling prevalent in many cases around the country in its analysis and assessment of attorneys' fees here.

# III.
## OBJECTIONS TO PLAINTIFF'S EVIDENCE

10.     Before addressing the argument and authorities against Plaintiff's Motion for Attorneys'

Fees, Creditwatch objects to Plaintiff's Exhibit A (billing records) and Exhibit B (Attorneys'

Declarations) attached to his Motion for Attorneys' Fees. Doc. 133-1; Doc. 133-2. First,

regarding Plaintiff's billing records, Plaintiff failed to supplement his billing records after April

2, 2012. A party has a duty to supplement its disclosures and discovery responses—including

those covering electronically stored information—if they are incomplete or incorrect. FRCP

26(e)(1). The duty applies whenever a party learns that an earlier disclosure or response is

incomplete or incorrect; the duty is not limited to situations where the failure to supplement

would constitute a "knowing concealment." *Reed v. Iowa Mar. & Repair Corp.*, 16 F.3d 82, 84-

85 (5th Cir. 1994). The burden to supplement is on the party responding to discovery, not the

party requesting discovery. *Harriman v. Hancock Cty.*, 627 F.3d 22, 29 (1st Cir. 2010)

(obligation to supplement is a continuing one). A party must supplement an earlier disclosure is

incomplete or incorrect in some material respect, and the additional or corrective information has

not otherwise been made known to the other parties during the discovery process or in writing.

FRCP 26(e)(1)(A); *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592,

595-96 (4th Cir. 2003). A party must also supplement an earlier response to a request for

production if the additional or corrective information has not otherwise been made known to the

other parties during the discovery process or in writing. FRCP 26(e)(1)(A); *Colón-Millín v. Sears

Roebuck*, 455 F.3d 30, 37 (1st Cir. 2006). If a party does not timely supplement or correct

disclosures, the party cannot use that information or witness to supply evidence, unless the

failure to supplement was substantially justified or is harmless. FRCP 37(c)(1); *Finley v.

Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996). The failure to timely supplement

**DEFENDANT CREDITWATCH SERVICES, LTD'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES** –                                                                                          **Page 6**
M:\9840000 CHUBB FILES\9840279 Thomas E. Whatley III v. Creditwatch Servcies, Ltd\Pleadings\Trial\9840279.Response to
Motion for Attorneys' Fees.docx

discovery responses may result in the exclusion of evidence or testimony. *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutu y Beneficiencia de P.R.*, 248 F.3d 29, 33 (1st Cir. 2001); *Holiday Inns, Inc. v. Robertshaw Controls Co.*, 560 F.2d 856, 858 (7th Cir. 1977).

11.     On April 9, 2012, Creditwatch received Plaintiff's billing entries from March 22, 2011 through April 2, 2012 to supplement discovery in light of this Court's March 29, 2012 order (Doc. 46). Def. App. at 1. This information was required to have been disclosed and supplemented under FRCP 26(a)(1)(A)(iii) as part of the evidentiary material for the computation of damages claimed by Plaintiff. FRCP 26(a)(1)(A)(iii). Plaintiff did not supplement this discovery. Due to this failure to supplement, this Court should exclude all Plaintiff's billing records after April 2, 2012 to present under FRCP 37(c)(1). FRCP 37(c)(1); *Finley*, 75 F.3d at 1230.

12.     Second, Plaintiff falls short of properly authenticating the billing records. FRE 803(6) holds business records excluded from the rule against hearsay "so long as it is made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the circumstances of preparation indicate lack of trustworthiness." FRE 803(6). The only support for admitting these documents is veil thin declarations which hardly rise to proper testimony to admit the billing records into evidence. None of Plaintiff's attorneys state they are a custodian of records, they do not state it is their firms regular practice, there is no testimony from the various non-attorneys' who may have time entries, and there is no evidence from any attorneys regarding

instructing or monitoring the paraprofessional's work or time entries. <u>Doc. 133-2</u>. Due to this, the Court should exclude Plaintiff's billing records from evidence.

13.     Last, Plaintiff failed to designate any witnesses as an expert to testify regarding attorneys' fees. If an expert is qualified, the court must determine whether the expert's opinion is (1) reliable (i.e., whether the expert's opinion has a reliable basis in knowledge of and experience in the particular field) and (2) relevant (i.e., whether the expert's opinion has a valid connection to the specific inquiry and is helpful to the jury). *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590-91 (1993); FRE 104(a).

14.     Plaintiff should be precluded from offering testimony from or about Plaintiff's experts until the Court determines their qualifications to testify under Federal Rules including designation of that witness as an expert. Plaintiff's attorneys are not properly qualified to testify as to attorney's fees in this case. Plaintiff's attorneys Marshall Meyers, Aaron Radbil, Joe Panvini, Dennis Kurz and Russell Thompson, are attorneys not licensed in Texas, either by the state or by a United States District of Texas. Mr. Meyers is admitted *pro hac vice* but has shown no factors of reliability or qualifications to testify as to attorney's fees in the State of Texas. Mr. Radbil is the only attorney licensed in the state of Texas and the Eastern District of Texas. However, he also has shown no factors of reliability or qualifications on the attorneys' fees for the local community as well. More so, every one of the attorneys gives scarce testimony on the fees and billing invoices and each simply says "the time I incurred on each entry was reasonable and necessary." <u>Doc. 133-2</u> at 2, 4, 6, 8, 10, 12, 14. They offer nothing more than this regarding the reasonableness and necessity of the work. <u>Doc. 133-2</u>. Plaintiff and his attorneys have not met their burden of proof to offer evidence of attorneys' fees and should be precluded from offering any testimony on attorneys' fees.

# IV.
## ARGUMENT AND AUTHORITIES

### A. Standard of Law

15**.**    A reasonable fee is "one that is adequate to attract competent counsel but [does] not produce windfalls to attorneys." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995). "A request for attorney fees should not result in a second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts should be mindful of cases in which attorneys fees are "the engine… powering the case." *Carroll v. United Compucred Collections, Inc*., No. 1:99-00152, 2008 WL 3001595, at *4, n.4. "[T]he fee petition tail should not be allowed to wag the dog." *Career Agents Network v. careeragentsnetwork.biz*, 722 F.Supp.2d 814, 825 (E.D. Mich. 2010). Determining a reasonable rate requires use of the prevailing market rates in the local community, i.e., the venue in which the court sits. *Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989).

### B. Degree of Success

16.    Section 1692k of the FDCPA explains that "in the case of any successful action to enforce the foregoing liability" under the statute, the debt collector is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Thus, before awarding attorney's fees, the Court must first determine whether the plaintiff brought a "successful action" or can fairly be considered a "prevailing party." *See Farrar v. Hobby*, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L. Ed. 2d 494 (1992).[1] The standard for determining whether a plaintiff can be considered a "prevailing party" for attorney's fees purposes is whether "they succeed on any significant issue in litigation which achieves some of

---

[1] *Graziano v. Harrison*, 950 F.2d 107, 113-14 (3rd Cir. 1991) (Section 1692k allows a "prevailing plaintiff" to recover attorney's fees and "in a typical case under the [FDCPA], the court should determine what constitutes a reasonable fee in accordance with the substantial Supreme Court precedent pertaining to the calculation of reasonable attorney's fees.").

**DEFENDANT CREDITWATCH SERVICES, LTD'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES –**                                                                                    **Page 9**
M:\9840000 CHUBB FILES\9840279 Thomas E. Whatley III v. Creditwatch Servcies, Ltd\Pleadings\Trial\9840279.Response to
Motion for Attorneys' Fees.docx

the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

17.     In *Texas State Teachers Association v. Garland Independent School District*, the Supreme Court stated:

> [t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.

489 U.S. 782, 792-93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). However, the Court did not stop with the black or white decision of whether a party is a prevailing party or not. Rather, the Court instructed that "[w]here such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*[.]" 489 U.S. at 793.

18.     The Supreme Court fleshed out this statement in *Farrar v. Hobby* when it clarified that while "a plaintiff who wins nominal damages is a prevailing party" entitled to a fee award, "the 'technical' nature of a nominal damages award…does bear on the propriety of fees awarded." *Farrar*, 506 U.S. at 112-114. "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Id.* at 114 (citing *Hensley*, 461 U.S. at 436). In fact, this factor is considered before conducting the usual lodestar analysis. *Farrar*, 506 U.S. at 118.

19.     In her concurring opinion, Justice O'Connor explained that "*Garland* explicitly states that an enforceable judgment alone is not always enough…a technical victory may be so insignificant…as to be insufficient to support an award of attorney's fees" and "a substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical. *Farrar*, 506 U.S. at 117 & 121 [quotations and citations omitted]. "This difference…is not the only consideration," Justice O'Connor continued, another consideration

"is the significance of the legal issue on which the plaintiff claims to have prevailed." *Id.* at 121. Justice O'Connor's final consideration is whether the plaintiff's success "accomplished some public goal other than occupying the time and energy of counsel, court, and client," such as the deterrence of future lawless conduct. *Id.* at 121-22 (citing *Chicano Police Officer's Assn. v. Stover*, 624 F.2d 127, 131 (10th Cir. 1980) (nuisance settlement that does not promote any public purpose cannot support award of attorney's fees).

20.     In the present case, Plaintiff's action can be considered anything but a "successful" suit. Plaintiff sought statutory and actual damages under five (5) provisions of the FDCPA, actual damages under four (4) provisions of the TDCA and a violation of the DTPA. Plaintiff failed to establish a violation of one FDCPA provision not ruled upon in summary judgment §1692e(3)). <u>Doc. 127</u> at 4 (Question No. 9). Plaintiff failed to establish any actual damages under his Texas claims and Creditwatch was granted directed verdict on those issues. <u>Doc. 127</u>. Additionally, as further explained below, Plaintiff's victory is "merely technical" due to the fact that he only recovered statutory damages and no actual damages for a technical requirement of the FDCPA. Ignoring these significant facts, Plaintiff's attorneys believe they are entitled to **$78,981.00** in attorney's fees for handling a matter that by all accounts was completely unsuccessful. Plaintiff failed on a majority of his claims and failed to recover any actual damages, yet Plaintiff wants to be reimbursed for all attorney's fees incurred in the constant pursuit of the unsuccessful claims. For the reasons set out below, Creditwatch asks that the attorney's fees requested be significantly reduced.

1.     <u>The Farrar Factors for Determining Whether a Victory is Technical.</u>

21.     Converting Justice O'Connor's concurrence into a three-part analysis for determining whether a victory is technical, the Seventh Circuit Court of Appeals declared that the first factor

– the difference between the judgment recovered and the recovery sought – is the most important of the three. *Cartwright v. Stamper*, 7 F.3d 106, 110 (7th Cir. 1993). The second factor – the significance of the legal issue on which the plaintiffs prevailed – "looks not at the relief obtained but to the extent the plaintiffs succeeded on their theory of liability" 7 F.3d at 110 (citing 506 U.S. at 121 (O'Connor, J., concurring)). O'Connor explained in *Farrar* that while the plaintiff "succeeded on a significant issue – liability…he cannot be said to have achieved a true victory... [but] a hollow one." 506 U.S. at 121. This is because the plaintiff only recovered $1 from the least culpable defendant and nothing from the remaining five defendants. *See id.* Thus, the plaintiff "may have won a point, but the game, set, and match all went to the defendants." *Id.* But, "[o]f the three factors…the significance of the issue on which the party prevailed tends to be the least weighty in classifying the victory." *Cartwright*, 7 F.3d at 110.

22.     Finally, the third factor – the public purpose served by the victory – principally relates to whether the victory vindicates important rights and deters future violations. *Cartwright*, 7 F.3d at 110. "The more important the right at stake and the more egregious the violation the more likely it is that the victory serves a public purpose." *Id.* Justice O'Connor recognized in *Farrar* that the district court had speculated that the plaintiff's judgment, if accompanied by a large fee award, might deter future lawless conduct, but did not identify the kind of conduct that would be prevented. *See* 506 U.S. at 122. Nor was the conduct to be deterred apparent from the verdict. *See id.* "Such a judgment," O'Connor concluded, "cannot deter misconduct any more than a bolt of lightning can; its results might be devastating, but it teaches no valuable lesson because it carries no discernable meaning." *Id.*

1.    Because Plaintiff's Case Relies on a Technical Violation of the FDCPA, His "Victory" is, Accordingly, "Technical."

23.    Three years after *Farrar*, the Fourth Circuit Court of Appeals applied the first factor – the difference between the judgment recovered and the recovery sought – in *Carroll v. Wolpoff & Abramson* when it reiterated that "[w]hen 'a plaintiff has achieved only partial or limited success,' the district court, in calculating an appropriate fee award, 'may simply reduce the award to account for the limited success.'" 53 F.3d at 629 (citing *Hensley*, 461 U.S. at 436-37). In *Carroll*, the plaintiff was awarded $50 for the defendant's violation of the FDCPA and submitted a motion for attorney's fees requesting $9,783.63. 53 F.3d at 627. The district court instead awarded $500 to the attorney's after concluding that "the fees awarded should bear some rational relationship to the nature of the defendant's violation." *Id.* at 627 & 630. The Court of Appeals affirmed this award as not being an abuse of discretion and stated that "[i]f we were to overturn this fee award, we would over-encourage litigation…aimed principally at collecting attorney's fees. We think the better course is to allow trial courts the freedom to engage in limited fee shifting when there has been limited success." *Id.* at 630-31.

24.    In the present case, Plaintiff sought to recover $1,000 in FDCPA statutory damages, and actual damages to be determined by a jury. Doc. 8 Plaintiff also sought to recover actual damages under the Texas Debt Collection Act ("TDCA"). *Id.* Plaintiff should not be rewarded the **$78,981.00** in attorney fees based on a technicality, where Plaintiff lost six (6) out of his (10) FDCPA claims[2], **recovered no actual damages**, and when it is clear that the main purpose of these suits is **for the attorneys' own benefit**. Plaintiff failed to prevail on each TDCA claim alleged which also means they failed to establish a violation of the Deceptive Trade Practices

---

[2] Multiple violations of the FDCPA can recover a max $1,000.00 per lawsuit. *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647 (6th Cir. 1994). So the only way to increase Plaintiff's award, is a finding of actual damages. The jury found none. Doc. 127.

Act ("DTPA") as well, failed to establish a violation of FDCPA § 1692e(3), and failed to obtain an award of any actual damages. Therefore, this was not a "successful" suit. Plaintiff's counsel further expended a large proportion of their fees dedicated to their Telephone Consumer Protection Act claims, which their attorneys' fees are not recoverable. Plaintiff ignores the *Farrar* opinion and the fact that "success" is not all or nothing; rather, the **degree** of success is the most critical factor in determining the reasonableness of the fees awarded. *See Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008). But before addressing this argument, it is important to understand the nature of FDCPA litigation.

25.      The Seventh Circuit Court of Appeals noted that "[t]he history of FDCPA litigation shows that most cases have resulted in limited recoveries for plaintiffs and hefty fees for their attorneys." *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) (citing *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000) (reversing approval of class settlement affording representative $2,000, $78,000 in attorney's fees and nothing for the class)). Thus, the impetus for many of these cases is not the plaintiff's share of the award.[3] *See, e.g., Sanders*, 209 F.3d at 1004. This is why, in *Lee v. Thomas & Thomas*, after plaintiff continued to increase her settlement demand despite knowing that statutory damages were fixed, defendant's counsel remarked to the plaintiff's attorney that attorney fees seemed to be "the engine which was powering the case," to which plaintiff's counsel responded, "Yes, that's right." 109 F.3d 302, 304 (6th Cir. 1997). Because of this, settlement demands allowing the court to determine attorney's fees have "spawn[ed] a second litigation of significant dimension." *See Garland Indep. School Dist.*, 489 U.S. at 791.

---

[3] "*Crawford* and similar cases illustrate 'the all-too-common abuse of the class action as a device for forcing the settlement of meritless claims and is thus a mirror image of the abusive tactics of debt collectors at which the statute is aimed.'" *Sanders*, 209 F.3d at 1004 (citing *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000)).

26. Because they are ever-increasing, defendants in FDCPA cases try to stem attorney's fees by offering to settle the case either pre-suit or very early in the litigation. This is relatively easy to do because actual damages are not often alleged and statutory damages are capped at $1,000 per proceeding. *See Wright v. Finance Service of Norwalk*, 22 F.3d 647, 650-51 (6th Cir. 1994); *Peter v. GC Services LP*, 310 F.3d 344, 352 n. 5 (5th Cir. 2002). This is seen in *Murphy v. Equifax Check Services, Inc.*, where the defendant "d[id] not acknowledge that it violated the FDCPA but, recognizing that the costs of litigation would far exceed the maximum statutory damages the plaintiff could recover, defendant [] offered to settle plaintiff's claims for $1,000 plus 'all reasonable fees and costs as determined by the Court…'" 35 F. Supp. 2d 200, 201 (D. Conn. 1999). "Defendant realized that it cannot prevail in an action of this sort" because "[i]f it takes the case to trial and obtains a jury verdict…it will have expended far more in its own attorney's fees than it was possibly liable for under the allegations of the complaint." *Id.* Thus, the recovery sought and ultimately obtained by plaintiffs settling their FDCPA cases for $1,000 is relatively minor when compared to the exorbitant attorney's fees the defendant faces.

27. While the FDCPA caps "additional damages" at $1,000, it initially permits a plaintiff to recover any **actual damages** sustained as a result of the violation.[4] *See* 15 U.S.C. § 1692k(a)(1) (emphasis added). In this case, Plaintiff alleged that he suffered any mental or emotional distress and, in sought to recover compensation for actual damages. However at trial, the jury found he suffered no actual damages awarded $0.00. <u>Doc. 127</u>. Therefore, Plaintiff did not recover the "maximum" allowed under the FDCPA, but only the maximum in "additional" damages. Again, when this amount is compared to the potential costs of litigating the matter, $1,000 becomes trivial.

---

[4] "The term 'actual damages' has been interpreted to include recovery for emotional distress and humiliation." *Johnson v. Dep't of Treasury, I.R.S.*, 700 F.2d 971, 984 (5th Cir. 1983); *see Teng v. Metropolitan Retail Recovery Inc.*, 851 F. Supp. 61, 68-69 (E.D.N.Y. 1994).

28.     In *Johnson v. Eaton*, the Fifth Circuit considered when a FDCPA plaintiff is required to be awarded attorney's fees. 80 F.3d 148, 150-52 (5th Cir. 1996). In that case, the plaintiff demonstrated that one of the defendants, White, had violated the FDCPA but failed to enforce any liability for actual or additional damages against White. *Id.* at 151. The court concluded that the plaintiff, therefore, had not brought a "successful action to enforce the foregoing liability" under 15 U.S.C. § 1692k(a)(3) in order to receive attorney's fees and costs. *Id.* The court reasoned that its reading of the statute did not frustrate the FDCPA's objectives, believing that requiring attorney's fees to be paid when the plaintiff fails to prove damages "rewards lawyers for bringing suits to stop behavior that, by definition, has caused legal injury to no one." *Id.* Thus, the court's "interpretation of the statute will require attorney's to look for more than a technical violation of the FDCPA before bringing suit and will deter suits brought only as a means of generating attorney's fees." *Id.* As a result of the plaintiff failing to prove any damages despite winning a declaration that White violated the law, the Court determined that she had not brought a successful action warranting attorney's fees. *Id.* at 151-52. But the court went one step further under the *Farrar* decision to find that, "even if Johnson's reading of the FDCPA was correct and she was entitled to receive a reasonable attorney's fee for her technical victory, *Farrar* makes it clear that a reasonable fee would be $0.00." *Id.* at 152.

29.     Accordingly, if a plaintiff's failure to prove any damages, either actual or additional, mandates a reasonable fee of $0, then only recovering maximum statutory damages and no actual damages, should, at the very least, warrant a substantial reduction of the plaintiff's attorney fee request. This idealizes a "technical" victory. Just as in *Carroll*, where the court concluded that it would reduce a fee award to account for the plaintiff's partial or limited success, so too should this Court reduce Plaintiff's request for fees due to his greatly limited success. While only

**DEFENDANT CREDITWATCH SERVICES, LTD'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES** –

                                                                        **Page 16**

M:\9840000 CHUBB FILES\9840279 Thomas E. Whatley III v. Creditwatch Servcies, Ltd\Pleadings\Trial\9840279.Response to Motion for Attorneys' Fees.docx

obtaining the maximum amount allowed in additional damages, Plaintiff failed to prove any actual damages, thus obtaining only partial success under the statute. To find conversely would encourage lawyers to sue for less and less actual or additional damages in order to lure defendants into settlement, only to claim that they were 100% "successful" in their fee petition and thereby warrant complete recovery of their attorney's fees. Such an allowance will most certainly lead, if it has not already, to the "cottage industry for the production of attorney's fees" that was never intended by the statute. *Murphy v. Equifax Check Services, Inc.*, 35 F. Supp. 2d at 204.[5]

30.     Such a reduction not only squares with the *Carroll* decision, but it is also compatible with the two concerns addressed in *Johnson*. In *Carroll*, the Fourth Circuit did not want to "over-encourage litigation…aimed principally at collecting attorney's fees." Allowing an attorney to sue over a technical violation of the FDCPA where he only requests statutory damages and then some multiple of that amount in attorney's fees most certainly encourages this type of litigation. As for *Johnson*, the Fifth Circuit court first addressed the fact that requiring fees in cases where a plaintiff fails to prove damages "rewards lawyers for bringing suits to stop behavior that, by definition, has caused legal injury to no one." 80 F.3d at 151. Here, Plaintiff suffered no actual injury. As explained above, if an award of no damages demands zero fees, then an award of only statutory damages should demand a reduced fee.

---

[5] *Murphy v. Equifax Check Services, Inc.*, 35 F. Supp. 2d at 204, n. 11 ("The January 1993 issue of the *ABA Journal* contains an article describing the practice of a solo practitioner in New Mexico, Richard J. Rubin, who handles consumer claims against abusive debt collectors under the FDCPA. The article reports that Rubin, speaking at a conference of consumer rights lawyers in Boston, "makes no apologies for his tactics, despite his own admission that he relies on technical violations of the law to bring a case, makes arbitrary settlement demands irrespective of damages and earns far more in attorneys' fees than his clients are entitled to collect." Mark Hansen, *When Rubin Sues, Defendants Settle: Unscrupulous debt collectors pay the bills for New Mexico consumer lawyer,* 79 A.B.A.J. 28 (Jan.1993)).

2. The "Significance of Legal Issue" Factor Weighs Against Plaintiff.

31.    The second factor – the significance of the legal issue on which the plaintiffs prevailed – "looks not at the relief obtained but to the extent the plaintiffs succeeded on their theory of liability" *Cartwright*, 7 F.3d at 110 (citing 506 U.S. at 121 (O'Connor, J., concurring)).  In the current case, Plaintiff sought statutory and actual damages for mental anguish and emotional distress under five (5) provisions of the FDCPA.  Plaintiff then lost one of the two remaining claims under the FDCPA at trial and further did not recovery **any** actual damages.  Thus, the second factor from *Farrar* weighs highly in favor of reducing Plaintiff's request for fees.

3. Only Plaintiff's Counsel is Served by Plaintiff's "Victory."

32.    The third factor – the public purpose served by the victory – principally relates to whether the victory vindicates important rights and deters future violations. *Cartwright*, 7 F.3d at 110. "The more important the right at stake and the more egregious the violation the more likely it is that the victory serves a public purpose." *Id.* Justice O'Connor noted that this goal **must be something "other than occupying the time and energy of counsel, court, and client.**" *Farrar*, 506 U.S. at 121-22 (emphasis added).

33.    As Justice O'Connor stated in *Cartwright*, "[t]he more important the right at stake and the more egregious the violation the more likely it is that the victory serves a public purpose." *Cartwright*, 7 F.3d at 110. Here, the jury found Creditwatch's conduct not egregious enough to warrant actual damages. This is not a case of FDCPA statutes involving threats or use of violence to harm the person, use of obscene or profane language, or causing a telephone to ring or engaging a person in telephone conversation repeatedly or continuously with intent to annoy,

abuse, or harass a person. 15 U.S.C. § 1692d(1), (2), (5). The only violations were due to technicalities and not the manner in which Creditwatch conducted itself.

34.     It is inconceivable to allow Plaintiffs to recover **$78,981.00** in attorneys' fees for a **$1,000** maximum recovery. Plaintiff is trying to proclaim that because he was victorious in obtaining a statutory violation, he is entitled to all the attorneys' fees, including those that were expended in attempting to prove actual damages or violations of the TDCA and DTPA and even fees related to his TCPA claims he failed to segregate. Plaintiff is trying to *have his cake and eat it too*. Surely, public policy is not enhanced by such a skewed result. Enforcement for such an exorbitant amount of attorney's fees would lead to a plethora of new suits. Attorneys would be encouraged to rack up any amount of attorney's fees, knowing that they would be reimbursed as long as they could meet the low threshold of a $1,000 statutory verdict. This would certainly create a "cottage industry for the production of attorney's fees." Certainly attorneys' fees of over **seventy-five** times the statutory damages awarded, where Plaintiff did not recovery actual damages cannot enhance public policy, but rather exploit it.

**C. Plaintiff's Attorney's Fees Are Not Reasonable.**

35.     In addition to the prevailing party evaluation, the court[6] must determine the reasonableness of the requesting party's attorney's fees. *See Hensley*, 461 U.S. at 433. In the present case, Plaintiff requests the following in fees:

**Attorneys:**

| Attorneys: | | | |
|---|---|---|---|
| Marshall Meyers | 41.6 | (x $335/hr) = | $13,936.00 |
| Alex Weisberg | 1.1 | (x $335/hr) = | $368.50 |
| Aaron Radbil[7] | 6.1 | (x $275/hr) = | $1,677.50 |
| Noah Radbil | 144.6 | (x $230/hr) = | $$33,258.00 |

---

[6] While *Hensley* and *Copper* considered the standard for a trial court, the same standard should be used by the Arbitrator.

[7] Attorney Aaron Radbil requests the rate of $335 an hour for work performed. However, the fee agreement entered into by Plaintiff and Weisberg and Meyers lists his billing rate for the case at $275. Def. App. at 68 (sealed). Therefore, Creditwatch uses this number for his rate.

| | | | |
|---|---|---|---|
| Dennis Kurz | 21.3 | (x $300/hr) = | $6,390.00 |
| Russ Thompson | 17.1 | (x $175/hr) = | $2,992.50 |
| Armando Nava | 1.4 | (x $175/hr) = | $759.00 |
| Joe Panvini | 84.3 | (x $175/hr) = | $14,752.50[8] |
| **Unknown Positions[9]:** | | | |
| Tremain Davis | 10.1 | (x $135/hr) = | $1,363.00 |
| Sonya Rodriguez | 2.7 | (x $135/hr) = | $364.50 |
| Simon Wilman | 14.0 | (x $135/hr) = | $1890.00 |
| Tara St. Angelo | 9.7 | (x $135/hr) = | $1,309.50 |
| Nichole Stasdakovich | 6.5 | (x $135/hr) = | $877.50 |
| | | Total | $78,615.00 |

36.    To determine the reasonableness of these fees, the court should employ a three-part analysis. *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1092 (5th Cir. 1982). First, the Court determines the nature and extent of services provided by counsel. *Id*. In other words, the court considers the time spent on the case and must determine "whether the attorneys demonstrated adequate billing judgment by '[w]riting off unproductive, excessive or redundant hours.'" *Jones v. White*, No. H-03-cv-2286, 2007 WL 2427976, at *2 (S.D. Tex. Aug. 22, 2007) (citing *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996)).

37.    The second step of this analysis requires the Court to set a value on those "services according to the customary fee and quality of the legal work[.]" *Copper Liquor*, 684 F.2d at 1092. A reasonable rate for attorney's fees awarded under the FDCPA is the prevailing market rate for attorneys of comparable experience employed in cases of similar complexity. *Cope v. Duggins*, 203 F.Supp.2d 650, 655 (E.D. La. 2002). However, hours worked by attorneys or staff may be compensated at reduced rates for "purely clerical or secretarial work" such as factual

---

[8] Mr. Panvini's declaration lists 144.6 hours were used in his lodestar calculation rather than the 84.3 billable hours, however the listed total is correct. <u>Doc. 133-2</u> at 10.

[9] Not only is it peculiar that Aaron Radbil's rate is different in the fee agreement than what is proposed in the Motion for Attorneys' Fees, but while Plaintiff does not provide any information regarding What position any of these individuals carry at Weisberg and Meyers, nor their qualifications, Plaintiff seeks $135/hr for each of them, while the fee agreement allows for $135/hr for paralegals and only $100/hr for administrative staff. <u>Def. App.</u> at 68 (sealed). Who holds what position? It is unknown to Creditwatch and the Court to make a reasonable determination on fees.

**DEFENDANT CREDITWATCH SERVICES, LTD'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES** –                                                                                          **Page 20**
M:\9840000 CHUBB FILES\9840279 Thomas E. Whatley III v. Creditwatch Servcies, Ltd\Pleadings\Trial\9840279.Response to
Motion for Attorneys' Fees.docx

investigation, document production, financial calculation, and drafting correspondence. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n. 10 (1989). Before proceeding to the third step, the Court computes the results from steps one and two into the "lodestar" amount, which is reached by multiplying the reasonable amount of hours spent on the case by the reasonable hourly rate. *Copper Liquor*, 684 F.2d at 1092-93; *Hopwood v. Texas*, 236 F.3d 256, 277 (5th Cir. 2000), *cert. denied*, 533 U.S. 929 (2001).

38.     Finally, the third step of the Court's analysis allows the Court to adjust the lodestar calculation in accordance with the enumerated factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Copper Liquor*, 684 F.2d at 1092. Those factors are:

> (1) time and labor required;
> (2) novelty and difficulty of the issues;
> (3) required skill;
> (4) whether other employment is precluded;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations;
> (8) the amount involved and the results obtained;
> (9) the attorneys' experience, reputation and ability;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

*Mid-Continent Casualty Co. v. Chevron*, 205 F.3d 222, 231 n. 1 (5th Cir. 2000) (citing *Johnson*, 488 F.2d at 717-19). Of these twelve factors, "the most critical…in determining an attorney's fee award is the 'degree of success obtained.'" *Saizon v. Delta Concrete Prods., Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (quoting *Hensley*, 461 U.S. at 436).

1. <u>The Nature and Extent of Services Provided by Counsel are Excessive and Not Properly Chargeable to Creditwatch.</u>

39.     In calculating the number of hours reasonably spent by counsel for the party seeking fees, the court must ensure that counsel has exercised proper "billing judgment." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998); *Walker v. HUD*, 99 F.3d 761, 769 (5th Cir. 1996). Billing judgment "consists of winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at 1250; *Walker*, 99 F.3d at 769 ("billing judgment…refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours."). As for a reasonable number of hours, courts have decided that "[w]here the Plaintiff's hours include repetition, unnecessary expenditure of time, and the issues are not difficult, a court may properly reduce the number of compensable hours." *Memon v. Pinnacle Credit Servs. LLC*, No. 4:07-cv-03533 (S.D. Tex. 2009) (Mem. Op.) (citing *Hensley*, 461 U.S. at 434 n. 9 (noting that many of the *Johnson* factors are subsumed in the lodestar calculation and may appropriately be considered during its calculation)).

40.     An analysis of whether counsel has exercised proper "billing judgment" requires a two-step inquiry. *See Case*, 157 F.3d at 1250. First, the court examines whether the specific tasks are properly chargeable at all. *Id.* ("Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable."); *Fajer v. Kaufman, Burns & Assocs.*, No. 09-CV-716S (W.D.N.Y. Jan. 28, 2011) (citing *Arbor Hill Concerned Citizens v. County of Albany*, 493 F.3d 110, 112 & 118 (2d Cir. 2007) ("the presumptively reasonable fee is 'what a reasonable, paying client would be willing to pay,' given that a client 'wishes to spend the minimum necessary to litigate the case effectively.'")). Second, after examining the specific tasks and whether they are properly chargeable, the court examines the hours expended on each task to determine if they are

reasonable. *Id.* At all times, counsel for the party seeking fees has the burden to prove that their hours were reasonable. *See, e.g., Case*, 157 F.3d at 1259.

a. *Plaintiff's Entries are Not Properly Chargeable to Creditwatch.*

(1) **Plaintiff's Block Billing Impedes the Court's Analysis.**

41.     In conducting the above analysis, "if the time entries contain multiple tasks per entry, the court may be unable to evaluate the reasonableness of the fees." *Memon v. Pinnacle Credit Servs. LLC,*, No. 4:07-cv-03533. "Lumped" time is problematic when it prevents a court from evaluating whether an entry is reasonable. *See Hollowell v. Orleans Regional Hosp., LLC*, 217 F.3d 379, 392 n. 18 (5th Cir. 2000); *see, e.g., In re NRG Resources, Inc.*, 64 B.R. 643, 654 (W.D. La. 1986). Another problem is "block billing," which "'refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Barrow v. Greenville Indep. Sch. Dist.,* 2005 U.S. Dist. LEXIS 34557, at *10 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.) (quoting *Robinson v. City of Edmond,* 160 F.3d 1275, 1284 n.9 (10th Cir. 1998)), *aff'd,* 2007 WL 3085028 (5th Cir. Oct. 23, 2007) (unpublished opinion). When attorneys impermissibly engage in block billing or fail to exercise billing judgment, percentage reductions are appropriate. *Barrow,* 2005 U.S. Dist. LEXIS 34557, at *17 ("[M]ost courts reviewing block-billed time entries have performed a percentage reduction either in the number of hours or in the lodestar figure.") (citing *Paris v. Dallas Airmotive, Inc.,* 2004 WL 2100227, at *9-*11 (N.D. Tex. Sept. 21, 2004) (Lindsay, J.)).

42.     A reduction for block billing is not automatic. *Fralick v. Plumbers and Pipefitters Nat'l Pension Fund*, No. 3:09-cv-0752-D (N.D. Tex. Feb. 11, 2011). "Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation. When time records are

block billed, the court cannot accurately determine the number of hours spent on any particular task, and the court is thus hindered in determining whether the hours billed are reasonable." *See id.* (citing *Barrow,* 2005 U.S. Dist. LEXIS 34557, at *11). But "even a failure to provide contemporaneous billing statements does not preclude an award of fees *per se*, as long as the evidence produced is adequate to determine reasonable hours." *Id.* (citing *Hollowell v. Orleans Reg'l Hosp. LLC,* 217 F.3d 379, 392 n.18 (5th Cir. 2000)). Therefore, before reducing the fee request based on block billing, the court must evaluate whether the applicant's evidence is adequate to enable it to determine the reasonableness of the hours expended. *Fralick*, No. 3:09-cv-0752-D.

43.    Recently, in *Fralick*, Judge Fitzwater found that the plaintiff's practice of block billing impeded his ability to determine the reasonableness of the fee. He determined that the attorney had engaged in block billing, finding that while "[h]e may have itemized his *tasks* to a certain extent, providing some detail as to the various types of work performed on a particular day,…he did not itemize his time entries on a per-task basis." On some days the plaintiff's billing practice was sufficient because he only performed one task on that day, but many other entries contained several tasks reported on a particular day and the time reported for the day reflected the total time for all work performed. "Although some block-billed entries contain sufficient information to enable the court to assess the reasonableness of the time expended, too many entries lump together tasks in such a way that it is impossible to tell whether, for any particular task, the number of hours spent and claimed was reasonable." As a result, Judge Fitzwater reduced the fee request by 10%.

44.     In the present case, from the outset of this litigation, Plaintiff's counsel knew of that attorneys' fees were not recoverable under the TCPA[10], yet failed to segregate various tasks solely regarding the TCPA that were not inexplicably intertwined. Plaintiff's billing similar to the billing found in *Fralick* provides detail as to the various types of work performed on particular days or entries, but he did not itemize his entries on a per task basis splitting TCPA claims from the FDCPA claims.  Furthermore, Plaintiff's counsel lumps together attorney time with tasks more properly performed by paralegals and secretaries. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 717 (when an attorney performs clerical work it is not recoverable at an attorney's rate). When combined, it becomes very difficult to determine the reasonableness of Plaintiff's counsel's fees. The following is a table of various work entries by Plaintiff's counsel involving sections with both TCPA and FDCPA claims that are not properly segregated, but rather blocked together impeding the Court's ability to properly award a correct amount of fees:

| Date | Attorney | Entry | Rate | Time |
|------|----------|-------|------|------|
| 7/27 | NR | Prepare Final Pretrial Order and Final Witness and Exhibits Lists (5.4); prepare exhibit and disclose them to opposing counsel (1.2) | $230 | 6.6 |
| 7/23/12 | NR | Review trial materials and conference with Robbie Malone regarding pretrial order (.3); memo to file (.1) | $230 | .4 |
| 6/12/12 | NR | Prepare supplemental discovery responses (.7); prepare supplemental pretrial disclosures (.2); prepare supplemental rule 26 disclosures (.9); prepare formal request for verified interrogatory answers (.2); email to Sonya Rodriguez and Russ Thompson regarding protective order issue in related case (.2); memo to file (.1); review GlobalConnect Customer Manual (1.5); memo to file. | $230 | 4.0 (waived 1.9)[11] |
| 5/17/12 | JP | Prepare response to defendant's motion in limine and send to Noah Radbil. | $175 | .4 |
| 5/17/12 | JP | Discuss filing response to defendant's motion in limine with | $175 | .3 |

---

[10] For example, a comparison of Plaintiff's original Complaint and First Amended Complaint reveals the only change is an addition for the TCPA claim. *See* Doc. 1 v. Doc. 8.

[11] For time in entries such as this one, the 4.0 time is the time remaining after subtracting the waived time from the total of the entry. Therefore, 5.9 hours were actually listed as billed, 1.9 were waived, and four hours are requested.

| | | | | |
|---|---|---|---|---|
| | | Noah Radbil (.1) prepare proposed order (.1); file documents and note to file (.1). | | |
| 5/15/12 | JP | Review pretrial disclosures prepared by Noah Radbil and provide comments per request. | $175 | .4 |
| 5/3/12 | NR | Prepare Plaintiff's Motions in Limine (2.1); memo to file (.1). | $230 | 2.2 |
| 5/3/12 | NR | Review draft of motion in limine and suggest comments to Noah Radbil. | $230 | .5 |
| 4/4/12 | JP | Review defendant's second supplemental responses to discovery (.3); discuss with Dennis Kurz (.2); prepare motion to compel discovery and forward to Noah Radbil for Comment (2.1); receive and review comments on motion and edit per NR comments (.5); discuss with Noah Radbil (.1) prepare proposed order (.1) attach exhibits, proofread motion, and file (.3); note to file (.1). | $175 | 3.7 |
| 3/23/12 | DK | Review Defendant's First Supplemental 26 Disclosure and Supplemental Discovery Responses; note to file. | $300 | .4 |
| 3/23/12 | DK | Review Creditwatch's Objections to Request for Production of Documents pertaining to Oral Deposition; note to file. | $300 | .4 |
| 3/23/12 | JP | Prepares second rule 37 letter for better discovery answers after review of supplemental responses. | $175 | .5 |
| 3/16/12 | JP | Prepare reply to response to Motion for Leave to file excess pages and forward to Noah Radbil (.8); discuss with Noah Radbil (.1); edit motion and file per Noah Radbil (.5); note to file (.1). | $175 | 1.5 |
| 3/13/12 | NR | Conference with opposing counsel regarding confidentiality agreement and modifications thereto (.2); email executed copy of agreement to opposing counsel (.1). | $230 | .3 |
| 3/8/12 | DK | Review Defendant's Supplemental Disclosure, note to file. | $300 | .4 |
| 3/8/12 | DK | Review Reply to Response to Motion re Motion to Dismiss, prepared note to file. | $300 | .4 |
| 3/8/12 | JP | Receive and review documents on response to motion for sanctions (.1); draft procedural history section (.1); draft introduction (.3); edit response brief and forward to Radbil (.5); note to file (.1). | $175 | 1.1 |
| 3/5/12 | DK | Confer with Managing attorneys and draft email to OC re: attorney availability for mediation, telephonic depositions, and balance of discovery due. | $300 | .3 |
| 3/5/12 | DK | Participate in court ordered mediation; conference with client. | $300 | 3.1 |
| 3/1/12 | JP | Review defendant's reply to response to summary judgment motion. | $175 | .6 |
| 3/1/12 | JP | Review Defendant's Proposed Motion Challenging Discovery Responses, for Sanctions, and to Compel – motions have been filed, ensure events for response diaried; advise Radbil. | $175 | .2 |
| 2/29/12 | DK | Review Reply to Response to Motion for Summary Judgment | $300 | .5 |
| 2/29/12 | DK | Review Reply to Response to Motion to Dismiss. | $300 | .4 |

| 2/18/12 | JP | Review defendant's motion for summary judgment and outline response (1.4); review file re dates and times called, review recording of phone calls and voicemails, review photographs showing calls made, and draft affidavit of client (1.1); phone call with client to discuss affidavit (.2); email to client with affidavit (.1); daft procedural history (.3); legal research re FDCPA standard and background, updating with 5th circuit law, and draft sections of response brief re same (1.5); review client's deposition testimony (.7); note to file (.1). | $175 | 5.4 |
| 4/5/11 | DK | Review file for allegations and listen to voice mails from client; (.3); amend FDCPA violations to include e(11), as voice mails provided contain no e(11) language (.1). | $300 | .4 |
| | | **TOTAL: $$7,578** | | |

45.     In addition to the entries above, Plaintiff also failed to segregate time at trial regarding actual damages, TDCA, DTPA and TCPA claims. Looking at the trial transcript, it turns out majority of the time actually spent was in regards to Plaintiff's TCPA claims[12]. Plaintiff seeks compensation for time spent at trial for Marshal Meyers in the amount of 21.2 hours (3.9+9.3+8) and Noah Radbil for 24.7 hours (9.1+10.1+5.5)[13].

| Page:line | Times | Topic | Total Time |
|---|---|---|---|
| 139:9-143:14 | 2:25-2:31 | Opening on TCPA, TDCA and DTPA | .1[14] |
| 165:10-173:2 | 3:02-3:13 | TCPA | .2 |
| 212:3-233:21 | 4:29-5:00 | Actual damages | .5 |
| 236:1-249:14 | 5:04-5:21 | TCPA, automatic dialing systems | .3 |
| 286:22-294:16 | 8:42-8:59 | TCPA, issue of consent | .3 |
| 295:3-311:24 | 9:00-9:29 | TCPA, ADAD report, automatic dialing systems, exhibits related to TCPA claims | .5 |
| 341:8-350:13 | 10:12-10:29 | TCPA, cellular phone, dialing system, artificial or prerecorded voice mail, how the system works, | .3 |
| 358:4-376:21 | 10:41-11:42 | TCPA, consent, revocation | 1 |
| 426:1-440:5 | 2:10-2:35 | TCPA, Adamcik and Starkey case, prior express consent, revocation of consent | .3 |

[12] Much of the testimony also arguably covered both TDCA and TCPA. To be fair, Creditwatch's counsel focused in those sections clearly shown to be on the TCPA or actual damages.

[13] Plaintiff's counsel did not bill the 10.1 entry as attendance at trial but rather disguised it as "prepare and edit trial exhibit binders including truncated audio recordings, conduct legal research in preparation for trial regarding FDCPA and TCPA violations and analogue state statutes proscribing analogous conduct (10.1); review all discovery and Rule 26 disclosures in file, review transcript of discovery hearings (4.3). 14.4 waived 4.1. Doc. 133-1 at 3.

[14] Times are rounded to nearest tenths of an hour.

| 479:4-533:6 | 3:51-6:45 | Creditwatch's FRCP 50 Motion on DTPA, TDCA, actual damages and TCPA | 2.9 |
|---|---|---|---|
| 573:22-598:19 | 9:15-10:37 | TCPA, predictive dialer, *Mais* case, consent | 1.4 |
| 605:22-624:25 | 10:50-11:38 | Actual damages, TCPA, revocation of consent | .8 |
| 641:3-645:25 | 1:52-2:00 | TCPA, revocation of consent | .1 |
| 655:2-668:16 | 5:17-3:38 | Actual damages, pre-existing conditions, mitigation of damages, TCPA, automatic dialing system, pre-recorded voices | .4 |
| 687:2-701:25 | 6:25-6:50 | TCPA, dialer, artificial voice messages, consent | .4 |
| 767:3-772:7 | 9:16-9:26 | Closing argument regarding TCPA | .2 |
| | | **TOTAL: 9.4 hours** | |

46. Generally, this 9.4 hours is sought for both Mr. Meyers' and Mr. Radbil's time attending trial. This breaks down to **$3,149** for Mr. Meyers and **$2,162** for Mr. Radbil, time and fees dedicated primarily to the TCPA claims which attorneys' fees are not recoverable for, and partially for claims under the TDCA and DTPA which were lost, and last claims for actual damages under the FDCPA for which Plaintiff did not prevail. As a result, the Court should not award Plaintiff fees for the above billing entries and further reduce Plaintiff's recovery at least 10%.

> (2) **Plaintiff Counsel has Presented No Evidence that He Exercised Proper "Billing Judgment."**

47. A fee applicant must prove that he exercised billing judgment. *Walker,* 99 F.3d at 770. "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 799 (5th Cir. 2006); *see Walker,* 99 F.3d at 769 n.9 (quoting *Alberti v. Klevenhagen,* 896 F.2d 927, 930 (5th Cir. 1990)) (recommending that fee applications document "not only hours claimed, but also hours written off"); *Leroy v. City of Houston,* 831 F.2d 576, 585 & n.15 (5th Cir. 1987) (holding that district court erred in accepting faulty records with no reduction of hours and

disapproving billing records that were "completely devoid of any hours written off"). The Fifth Circuit has repeatedly determined that bald assertions regarding the exercise of billing judgment are insufficient. *Saizan,* 448 F.3d at 800 (concluding that fee applicant's arguments for neglecting to list unbilled time were "unconvincing[]" and upholding reductions for lack of billing judgment); *Hopwood,* 236 F.3d at 279 (upholding reductions after finding eleven different instances of lack of billing judgment and finding that, without more, lead attorney's affidavit insisting that he exercised billing judgment did not demonstrate that the court abused its discretion).

48.     Again, in *Fralick*, Judge Fitzwater found that a percentage reduction was necessary to reflect the plaintiff's lack of evidence of the exercise of billing judgment. *Fralick*, No. 3:09-cv-0752-D. In that case, the plaintiff's attorney's declaration said nothing about exercising billing judgment, he did not explain what efforts were undertaken to exclude redundant, unproductive, or excessive time, and he did not record unproductive or excessive time to compare to productive time, instead only recording hours he intended to bill. *Id.* In other words, plaintiff's counsel maintained that he exercised billing judgment contemporaneously, before recording his hours, reporting only time that he determined was productive, necessary and not redundant. *Id.* Because "[s]tatements by counsel in briefs are not evidence," the Court held that plaintiff failed to produce sufficient evidence of billing judgment and reduced his overall fee request by 10%. *Id.* (quoting *Skyline Corp. v. NLRB*, 613 F.2d 1328, 1337 (5th Cir. 1980)).

49.     Plaintiff's request for attorney's fees in this case is similar to that in *Fralick*. First, Plaintiff states that regarding billing entries on the TCPA "[a]lthough this time was reasonably spent on the litigation, Mr. Whatley has chosen to waive these entries in the exercise of billing discretion, including where time was exclusively spent on TCPA claims." Doc. 133 at 10-11. At

least Plaintiff points out that he exercised this "billing discretion" because as he previously states "[a]ttorneys' fees are available for all claims except those under the TCPA." Doc. 133 at 10.

50.     Next, Plaintiff's counsels' declarations do not explain what efforts were undertaken to exclude redundant, unproductive or excessive time, and the attorneys do not record unproductive or excessive time to compare to productive time.  Instead, the declaration of Marshall Meyers simply states "each time entry was entered contemporaneously to the task being completed in our computer database, Amicus Attorney", "[i]n the exercise of billing discretion, other time entries have been waived", and "My contemporaneously kept records reflecting our services in this litigation are attached to Plaintiff's Motion for Attorneys' Fees as Exhibit A." Doc. 133-2 at 2. Plaintiff further provides declarations from Alex Weisberg, Noah Radbil, Dennis Kurz, Joe Panvini, Aaron Radbil and Russell Thompson, all substantially similar. Just as in *Fralick*, these representations do not demonstrate that Plaintiff's counsel exercised billing judgment.

51.     In addition, the motion should be supported by the affidavit of a disinterested attorney specifically stating the prevailing local rate for the type of work for which the movant seeks an award. *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984); *Schwarz v. Secretary of H&HS*, 73 F.3d 895, 908 (9th Cir. 1995); *Wheeler v. MHMR Auth.*, 752 F.2d 1063, 1073 (5th Cir. 1985). Plaintiff provides no such affidavits in support of their requested attorney fee rates.

52.     One glaring deficiency in Plaintiff's Motion for Attorneys' fees is the lack of any affidavit or declaration by the various support staff that worked on this file. Plaintiff provides no affidavit or declaration for Tremain Davis, Sonya Rodriguez, Simon Willman, Tara St. Angelo, or Nichole Stasdakovich, all persons who billed time on this case that Plaintiff seeks to recover from Creditwatch. None of Plaintiff's attorneys' testify as to what jobs they performed on the case, what their work was, or whether or not it was actually performed. These people are the only

ones with the true personal knowledge of whether or not the entries were made at or near the time the work was completed, if the work was actually performed, *et cetera*. It is unknown whether these people are paralegals, law clerks, legal secretaries or other typical positions at a law firm. It is further unknown what their qualifications are, experience, job history, or other relevant aspects to determine the reasonableness, especially when asking for $135 per hour for their work.

53.     What is more glaring is that while Plaintiff states that he has waived attorney time entries related to his TCPA claim in an exercise of billing discretion, but it is overwhelmingly clear that the plaintiff failed to adequately do so. Below is a table compiled of each invoice entry Plaintiff seeks compensation for directly related to work performed on the TCPA, and no other claims. In particular, a large portion was dedicated to a Rule 45 subpoena issue in this case involving Global Connect, LLC, the dialing service utilized by Defendant. As each of these entries is in regard to the dialing system, they are solely performed for Plaintiff's TCPA claims, and are unrelated to his FDCPA claims. Therefore, Plaintiff failed to exercise proper billing judgment and this Court must reduce the amount sought by Plaintiff for both these entries, and the lack of billing judgment.

| Date | Attorney | Entry | Rate | Time |
|------|----------|-------|------|------|
| 5/16/13 | NR | Prepare email to Andrew Schwartz attaching Rule 45 subpoena duces tecum and discussing how to avoid moving compel documents. | 230 | .3 |
| 8/21/13 | MM | Review Order Denying Defendant's Motion to Quash Rule 45 Subpoena Duces Tecum, | 335 | .1 |
| 8/15/12 | TD | Filed Plaintiff's Response to Defendant's Motion to Quash Rule 45 Subpoena via the Court's ECF system. | ??? (135) | .1 |
| 8/15/12 | NR | Prepare Plaintiff's Response to Defendant's Motion to Quash Rule 45 Subpoena Duces Tecum to Global Connect, LLC (1.2); email to Tremain Davis with instructions to file (.1). | 230 | 1.3 |
| 8/14/12 | NR | Review and edit Plaintiff's Response to Defendant's Motion to Quash Rule 45 Subpoena Duces Tecum of Global Connect, LLC. | 230 | .2 |

| Date | Atty | Description | Rate | Hours |
|---|---|---|---|---|
| 8/7/13 | AR | Review updated draft response to Defendant's motion to quash Rule 45 subpoena, and suggest additional edits and revisions thereto. | 275 | .3 |
| 8/6 | SW | Researched issue into whether Rule 45 Subpoena is appropriate if served after close of discovery (.5); revised response to Defendant's motion to quash Plaintiff's Rule 45 Motion (2.3). | ??? (135) | .5[15] |
| 8/6 | AR | Review second motion to quash rule 45 subpoena and note to file necessary events | 230 | .1 |
| 8/3 | SW | Drafted Plaintiff's Response to Defendant's Motion to Quash Rule 45 Subpoena (5.4); Researched case law into issues of whether defendant had standing, TX court had jurisdiction, discovery misconduct allows Rule 45 subpoena post discovery deadline (1.1). | ??? (135) | 3 |
| 8/3 | SW | Reviewed current status of response to Defendant's motion to quash Plaintiff's rule 45 motion with colleague (.2); revised motion per discussion (1.9). | ??? (135) | 1 |
| 8/3 | AR | Review and note draft response to motion to quash subpoena (.3); discuss with SWillman necessary edits and revisions (.2). | 275 | .5 |
| 8/2/12 | AR | Review Defendant's motion to quash subpoena (.1); note to file necessary events (.1); prepare email to all responsible attorneys with question, comments, and examples to work from (.1). | 275 | .1 |
| 8/2/12 | NR | Review emails form EM/ECF system providing notice of Defendant's Motion to Quash Rule 45 Subpoena Duces Tecum and Global Connect, LLC's similar motion (.1); email to Aaron Radbil regarding suggested course of procedure and calendar of related event (.1). | 230 | .2 |
| 8/2/12 | NR | Conference with Simon Willman concerning Plaintiff's Motion to Hold Global Connect, LLC, in contempt of Court (.2), and Plaintiff's Response to Defendant's Motion to Quash Rule 45 Subpoena Duces Tecum (.1). | 230 | .1 |
| 7/18/12 | NR | Review Rule 45 notice and travel fee requirements to determine applicability to Subpoenas Duces Tecum not requiring personal appearance or testimony at deposition or trial (.2)' confer with Sonya Rodriguez and answer logistical questions regarding issuing attorneys and federal Courts, and Rule 45 procedures generally (.1). | 230 | .3 |
| 7/18/12 | NR | Review and finalize Rule 45 subpoena and notice. | 230 | .5 |
| 7/18/12 | SR | Updated drafted subpoena and notice as requested by NR. | ??? | .2 |
| 7/17/12 | NR | Conference with Sonya Rodriguez and provide instructions and direction for preparing Rule 45 subpoena duces tecum. | 230 | .3 |
| 7/17/12 | SR | Consulted with NR re how to draft Subpoena Duces Tecum, drafted Notice and the actual subpoenas for two not parties as requested did SOS searches, contacted the medical center for the one I was unable to locate. Saved draft documents to client subpoena file. Email correspondence with NR re unable to | ??? (135) | .5 |

[15] Here Plaintiff documents 2.8 hours total in time, but invoice reflects 2.5 hours as billed and 2 hours waived.

| | | | | |
|---|---|---|---|---|
| | | locate sos for one. | | |
| 5/24/12 | NR | Prepare Rule 45 Subpoena Duces Tecum to Gerald Champion Hospital – Defense Counsel represented on the record at the May 10, 2012 discovery hearing that no written contract between Creditwatch Services, LLC, and Gerald Champion Hospital existed. | 230 | .1 |
| 4/27/12 | JP | Prepare Reply to Defendant's Response to Plaintiff's Motion to Compel Discovery – legal research re discrete subparts (.4); legal research re requests for admission, propositions of law (.4); legal research re rule 26(d) and sequence of discovery (.3); legal research re possession, custody or control (.3); prepare reply brief and forward to Noah Radbil (3.3); receive and review comments from Noah Radbil (.2); edit brief and forward to Radbil for approval for filing (.4); file brief and note to file (.1). | 175 | 5.4 |
| 4/12/20 12 | DK | Receive and review OC email re: continuing discovery dispute and the parties' respective motions to compel; confer with participating attorney, JP; draft response to OC with formal position with respect to Plaintiff's Motion to Compel Discovery with a discussion as to the specific items sought as they relate to our existing, timely requests. We are moving forward with a MTC on this TCPA claim. | 300 | .5 |
| 3/15/12 | NR | Prepare Plaintiff's Second Set of Requests for Production of Documents and email Sonya Rodriguez with instructions to serve and email courtesy copies (.8). | 230 | .8 |
| 2/21/12 | JP | Legal research re TCPA and federal jurisdiction (.7); draft section of brief re Mims (.4); legal research re charged for call (.1); draft section of brief re same (.1); legal research re oral revocation of prior express consent, Adamcik (1.2); draft section of brief re same (.8); edit facts re TCPA (.2); pull Adamcik case and attach (.1). | 175 | .1 (3.5 waive d) |
| 2/20/12 | RT | Drafted Section related to failure to provide complete relief under TCPA (.8); legal research related to TCPA (.3) | 175 | 1.1 |
| 2/17/12 | RT | Began drafting section related to TCPA (.4) | 175 | .4 |
| 9/20/11 | DK | Receive and diary to return to OC phone call, wants to discuss TCPA case | 300 | .1 |
| 9/19/11 | DK | Exchange multiple emails with opposing counsel re: defendant's opposition to Plaintiff's proposed Amended Complaint to include TCPA allegations | 300 | .2 |
| 9/16/11 | DK | Receive and respond to OC email re: need a response to motion to strike amended complaint by the end of the day. | 300 | .1 |
| 9/16/11 | DK | Respond to OC re: Motion to Strike Amended Complaint for certificate of conference. | 300 | .1 |
| 9/15/11 | DK | Receive and respond to OC email, wants to strike first amended complaint; sent any case or citation and we will review. | 300 | .1 |
| 9/15/11 | DK | Review and approve for filing Plaintiff's Amended Complaint | 300 | .2 |

| 9/9/11 | RT | Amend complaint as of right to add TCPA claim per DK, etc, - added facts re: TCPA claims (.4); reviewed client documents (.4); revised facts in initial complaint (.2); filed (.1). | 175 | 1.1 |
|--------|----|----|-----|-----|
| | | **TOTAL: $3,770** | | |

As can be seen, there has been a complete breakdown of billing judgment in relation to Plaintiff attempting to segregate out billing entries on his TCPA claims. More importantly, Plaintiff attempts to improperly shift the bill of these fees to Creditwatch and to the tune of nearly $4,000. With many of these entries it would have been impossible for Plaintiff to not notice they were only related to his TCPA claims. This Court should prevent Plaintiff from recovering this $3,770.00 he seeks and further penalize Plaintiff for the poor billing judgment and reduce his fee request by at least 20%.

54.     Plaintiff also fails to provide an affidavit Armando Nava who has made time entries for work on this case that Plaintiff seeks to recover.  Because this attorney performed work on this case and would be the only proper party to have personal knowledge regarding his work performed, whether the work was reasonable or necessary, and whether the times spent are reasonable and accurate, his sworn testimony is required to verify these amounts.  It would be unjust to ever shift any unverified and unreasonable fees to an opposing party without the proper authentication, evidence, and testimony to support the award to these fees.  Because Plaintiff has failed to provide an affidavit from Mr. Nava, his requested fees should be excluded by this Court in its final determination of attorney's fees to be awarded, if any. That amount totals **$245.00**. Doc.133-2 at 3.  Plaintiff has failed to provide any evidence of these fees, and failure to meet his burden of establishing the reasonableness of them, required by the FDCPA to award fees.  As a result, the Court should exercise its discretion by eliminating these attorneys' fees.

55.     On a side note, Plaintiff seeks recovery of fees dedicated to a claimed issue regarding an alleged contract between Creditwatch and Gerald Champion Regional Medical Center. Plaintiff dedicates a lengthy footnote to this issue within his Motion for Attorneys' Fees. <u>Doc. 133</u> at 3 fn. 2. Plaintiff states that he "ultimately chose not to file the motion, much of the time spent preparing it was relevant to the successful prosecution of the case." *Id*. Plaintiff has failed to show how this was remotely relevant to the successful prosecution of his case, failed to show any relevancy of a contract whatsoever, and seeks recovery for a document never seen by this Court or Creditwatch. *Id*. The table below details these entries that Plaintiff cannot recover:

| Date | Attorney | Entry | Rate | Time |
|------|----------|-------|------|------|
| 7/24/12 | NR | Review and edit Plaintiff's Motion to Compel Contract and for Sanctions against Defendant and Robbie Malone, PLLC (3.6); email to Simon Willman with instructions to prepare and compile exhibits and exhibit citations for filing (.2) | $230 | 1.9 (waived 1.9) |
| 7/23/12 | SW | Revised Plaintiff's motion for sanctions (4.2); researched additional supporting case law (.8); sent to colleague for review | $??? | 1.0 (waived 4.0) |
| 7/20/12 | SW | Revised motion for sanctions (.4); reviewed draft with colleague (.5). | $??? | .4 (waived .5) |
| 7/19/12 | SW | Continued drafting motion for sanctions (5.1); Researched Eastern District of Texas case law regarding sanctions for discovery misconduct (1.9) | $??? | 1.5 (waived 5.5) |
| 7/18/12 | SW | Conferred with colleague about new bankruptcy issue re: motion for sanctions (.5); pre-drafted motion for sanctions (.8.4). | $??? | 1.5 (waived 7.5) |
| 7/18/12 | NR | Conference with Simon Willman regarding outline for motion for sanctions and to compel collection contract (.7); answer questions and explain Gerald Champion Bankruptcy, Rule 362 automatic stay provisions (.2); Creditwatch, Ltd., acquisition of Collectrite (.1); David Thomason's duties as officer of Collectrite and CreditWatch (.1); Credit Watch's dba: Collectrite (.2); Gerald Champion Regional Medical Center's monthly operating reports and Third Amended Chapter 11 Plan of reorganization (.2). | $230 | .6 (waived .9) |
| 9/18/12 | NR | Review draft of Motion to Compel and for Sanctions and provide comments and guidance to Simon Willman | $230 | .2 (waived .5) |
| 9/17/12 | SW | Reviewed file (.9); conferred with colleague about status | $??? | 1 |

| | | of case (.4); outlined pre-draft of motion for sanctions (3.9). | | (waived 4.2) |
|---|---|---|---|---|
| 9/19/12 | NR | Review Gerald Champion Regional Medical Center bankruptcy filings and assumption schedule for non-rejected executor contracts, including Creditwatch Contract | $230 | 1.2 |
| | | **TOTAL: $1,626** | | |

Plaintiff cannot recover for any of the fee entries detailed above and has failed to exercise proper billing discretion. As a result, the Court should exercise its discretion by eliminating these attorneys' fees and reduce Plaintiff's recovery by at least 10%.

(3)     <strong>Plaintiff Should Not be Rewarded for the Inefficient Use of and Overstaffing of Multiple Attorneys and Support Staff.</strong>

56.     "'[C]ases may be overstaffed' and it is a plaintiff's burden to document 'the appropriate hours expended' so that '[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly.'" *Cogle v. Weber & Olcese, PLC*, Civ. No. 12-CV-13545 (citing *Hensley*, 461 U.S. at 437). "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Walker v. U.S. Dept. of Housing*, 761, 768 (5th Cir. 1996) (citing *Johnson*, 488 F.2d at 717). In *Schlacher v. Law Offices of Phillip J. Rotche*, the plaintiffs sued a debt-collection law firm for violations of the FDCPA. 574 F.3d 852 (7th Cir. 2009). Within three (3) months of filing the complaint, the plaintiffs accepted offers of judgment totaling $6,500. *Id.* at 854. The plaintiffs, represented by four (4) attorneys from three (3) different law firms, sought $12,495 in fees and $437.70 in costs. *Id.* Instead, the district court awarded $6,500 in fees and costs, explaining that the unnecessary use of multiple attorneys had led to excessive billing in a straightforward, short-lived case.[16] *Id.* at

---

[16] The plaintiffs argued that the district court abused its discretion when it concluded that "a figure that roughly equates to what the plaintiffs themselves recovered seems reasonable," pointing out that the Seventh Circuit had previously cautioned that fee awards "should not be linked mechanically to a plaintiff's award." 574 F.3d at 857 (quoting *Eddleman v. Switcharaft, Inc.*, 927 F.2d 316, 318 (7th Cir. 1991)). However, the Court of Appeals

854-55. Specifically, the court stated that the involvement of multiple attorneys here necessarily created "a substantial amount of overlap," and the court warned that in determining "the measure of what reasonable is in terms of time," it would ask "[w]hat kind of time would have been spent" by one competent lawyer. *Id.* at 855. "[T]he multiplication of time that was involved by the fact of the multiplication of counsel just does not justify the kind of request that's involved here." *Id.* at 856 ("[I]t doesn't make a lot of sense for a $500-an-hour lawyer to do work that might be performed by a $200-an-hour lawyer.").

57.     In reviewing the lower court's decision, the Seventh Circuit Court opined that "[t]hough efficiency can sometimes be increased through collaboration…overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." 574 F.3d at 858; *see Lipsett v. Blanco,* 975 F.2d 934, 938 (1st Cir. 1992) ("A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism.").

58.     In the present case, Plaintiff utilized ten (10) different attorneys, and twenty-seven (27) people either law clerks, paralegals, or secretarial staff, which Plaintiff provides no job titles, job duties, and no experience or qualifications for their work. <u>Doc. 132-1</u>.  The following table summarizes the amount of time and fees due to Plaintiff's inefficient use for many attorneys and staff (based on the detailed table attached at <u>Def. App.</u> 2-6), and should be excluded from the fee award:

explained that the district court "did not settle on a $6,500 fee award simply because it mirrored the plaintiffs' damages;" instead, the court reduced the fee due to duplicative work and excessive billing and that "the figures were only 'coincidentally' equivalent." *Id.* at 857.

**DEFENDANT CREDITWATCH SERVICES, LTD'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES –**                                                                                                          **Page 37**
M:\9840000 CHUBB FILES\9840279 Thomas E. Whatley III v. Creditwatch Servcies, Ltd\Pleadings\Trial\9840279.Response to Motion for Attorneys' Fees.docx

| Person | Rate | Time Spent from Overstaffing and Inefficient Use | Fee Requested for this work |
|--------|------|--------------------------------------------------|------------------------------|
| Marshall Meyers | $335 | .5 | $167.50 |
| Aaron Radbil | $275 | 3.7 | $1,017.50 |
| Noah Radbil | $230 | 48.3 | $11,109.00 |
| Dennis Kurz | $300 | 5.5 | $1,650.00 |
| Tremain Davis | $135 | .3 | $40.50 |
| Joe Panvini | $175 | 21.1 | $3,692.50 |
| Russ Thompson | $175 | 2.4 | $420.00 |
| Simon Willman | $135 | .6 | $81.00 |
| | | **TOTAL** | **$18,178** |

None of this time would have been spent by a *single* competent lawyer, much less four lawyers. Furthermore, as demonstrated *supra* this is not the first instance, but is rather one of many where Plaintiff's firm of Weisberg & Meyers overstaffed a case. Plaintiff's firm had been cited for the inefficient use of multiple attorneys. *See* Section II, *supra*. As a result and evidenced by the overwhelming examples from the billing invoices, the Court should exercise its discretion and reduce the requested attorneys' fees by at least 20%.

(4) <b>Plaintiff Improperly Billed for Clerical Work.</b>

59.     "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 288 n. 10 (1989). Paralegal fees can be recovered "only to the extent that the paralegal performs work traditionally done by an attorney." *Allen v. U.S. Steel Corp.,* 665 F.2d 689, 697 (5th Cir. 1982). Likewise, when an attorney performs clerical work it is not recoverable at an attorney's rate. *See Johnson,* 488 F.2d

at 717. Tasks such as "serving and filing proofs of service, organizing files, faxing drafts, telephone conferences with an assistant, organizing research, telephone conferences with chambers regarding status, and emailing comments to co-counsel about the court's opinion" have all been considered clerical work. *Fralick*, No. 3:09-cv-0752-D.

60.     In general, secretarial work is not recoverable since "the salaries and benefits paid to support staff are 'a part of the usual and ordinary expenses of an attorney in his practice,' and are properly classified as overhead." *Eiden v. Thrifty Payless, Inc.*, 407 F. Supp. 2d 1165, 1171 (E.D. Cal. 2005) (quoting *In re Pac. Exp., Inc.*, 56 B.R. 859, 865 (Bankr. E.D. Cal. 1985)). Similarly, in *Rafanan v. Focus Receivables Management, LLC*, the court concluded that paralegal time entries for "filing proofs of service; serving a complaint; preparing a civil case cover sheet; etc." were secretarial in nature and were not allowed. No. 09-cv-02715 (E.D. Cal. July 7, 2010). The District Court for the Eastern District of Texas agreed with this notion in *Lewallen v. City of Beaumont*, when it held that tasks such as basic communications and case organization were "largely clerical or housekeeping matters and not legal work." No. 1:05-cv-733 (E.D. Tex. July 20, 2009) (quoting *Speaks v. Kruse*, No. 04-1952, 2006 U.S. Dist. LEXIS 84595, at *19-20, 2006 WL 3388480 (E.D. La. Nov. 20, 2006). Thus, fees were not awarded for such work. *See Lewallen*, No. 1:05-cv-733.

61.     In the present case, Plaintiff's counsel attempts to bill their opponents for purely clerical or secretarial work.  Below is a summation of the total number of hours that the firm billed that are purely clerical in nature and should not be recoverable (based on the detailed table attached at Def. App. 7-14):

| Attorney | Rate | Time on Clerical Tasks | Fee Requested for clerical work |
|---|---|---|---|
| Marshall Meyers | $335 | .5 | $167.50 |
| Aaron Radbil | $275 | 1.6 | $440.00 |
| Noah Radbil | $230 | 19.0 | $4,370.00 |
| Dennis Kurz | $300 | 4.7 | $1,410.00 |
| Armando Nava | $175 | 1.4 | $245.00 |
| Tremain Davis | $135 | 7.5 | $1,012.50 |
| Joe Panvini | $175 | 3.9 | $682.50 |
| Alex Weisberg | $335 | 1.1 | $368.50 |
| Nichole Stasdakovich | $135 | 4.6 | $621.00 |
| Tara St. Angelo | $135 | 7.7 | $1039.50 |
| Russ Thompson | $175 | .9 | $157.50 |
| Sonya Rodriguez | $135 | 1 | $135.00 |
| | | **TOTAL** | **$10,949.00** |

The table above demonstrates that Plaintiff's counsel is attempting to improperly shift nearly $11,000 in fees to Creditwatch. Each of the tasks detailed in this appendix is clearly clerical such as memos to files, electronically filing, telephone calls to the Court and more secretarial or clerical tasks that cannot be billed at an attorney's rate and are simply overhead that should not be charged to Creditwatch. The Court should reduce Plaintiff's request for fees by $10,949.00 and further reduce Plaintiff's fees by at least 10%.

**(5)**     **Plaintiff's Counsel's Hourly Rates are Not Reasonable or Customary**.

a. The Consumer Law Attorney Fee Survey is Unreliable.

62.     The second step of the Court's analysis requires the Court to set a value on the attorney's "services according to the customary fee and quality of the legal work[.]" *Copper Liquor*, 684 F.2d at 1092. A reasonable rate for attorney's fees awarded under the FDCPA is the prevailing market rate for attorneys of comparable experience employed in cases of similar complexity. *See Cope v. Duggins*, 203 F. Supp. 2d 650, 655 (E.D. La. 2002).

63.     Plaintiff offers a 2010-2011 Consumer Law Attorney Fee Survey to support the reasonableness in his requested rates. However, many courts have found that the Consumer Law Attorney Fee Survey is quite unreliable. The Eastern District of California looked to the Report that the report failed to help determine the prevailing rates for the Eastern District of California, Fresno Division as it provided the median attorney billing rates for California as a whole. *Fitzgerald v. The Law Office of Curtis O. Barnes*, No. 1:12-cv-00071-LJO-GSA (E.D. Cal. Apr. 15, 2013). The Report does the exact same for the entire state of Texas. Doc. 133-4 at 33. Another court in evaluating the Report pointed out "Mr. Burdge's survey indicates that it 'does not take into consideration the factors of the degree of concentration or years of practice, among other things, all of which will have a large impact on any particular person's hourly rate.'" *Howard v. Midland Cred. Mgmt., Inc.*, Civ. No. 11-cv-03123-PAB-BNB (D. Col. Sept. 24, 2012). The *Howard* court went on to state "[g]iven that plaintiff's argument for an attorney fee of $300.00 per hour rests on [his attorney's] years of experience and degree of concentration in FDCPA cases, two factors not taken into account by the survey, the Court finds that Mr. Burdge's survey provides very little support in establishing the prevailing market rate. *Id*. (citation omitted).

**DEFENDANT CREDITWATCH SERVICES, LTD'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES** –                                                                                                      **Page 41**
M:\9840000 CHUBB FILES\9840279 Thomas E. Whatley III v. Creditwatch Servcies, Ltd\Pleadings\Trial\9840279.Response to
Motion for Attorneys' Fees.docx

64.     Even from a practical standpoint, the survey is extremely unreliable. Not only is it unknown as to what the prevailing market rates are for this community, it also does not incorporate all *Johnson* factors, but the survey is fundamentally flawed by the sample of attorneys being surveyed. The Survey states that "consumer law" "typically includes the legal fields of bankruptcy, credit discrimination, consumer banking, warranty law, unfair and deceptive acts and practices…Fair Credit Reporting Act, the Uniform Consumer Sales Practices Act, state and federal lemon laws, and many others." Doc. 133-4 at 7. The fundamental flaw here is that nearly all of these legal fields, the attorney, not a client, is the one dictating his own rate to recover from a source other than a plaintiff or their client, and majority of the time, it is directed towards a defendant[17]. Just as the court in *Raimondi* said, "no paying client would countenance being billed for six lawyers to prosecute a claim for statutory damages of $1,000." *Raimondi*, Case No. 6:11-cv-480-Orl-31DAB (Apr. 5, 2012). An attorney's hourly rate can be any number when there is no client that ever agrees to it. The same can be argued for whatever rate any of the attorneys who answered the Survey who practice within any fee shifting statutes or bodies of law, which is arguably all of them. It is clear that fundamentally and practically, the survey is flawed and should be wholly disregarded by this Court.

65.     Plaintiff also cites to the "Laffey" Matrix to argue that his attorneys' rates are reasonable. However, this matrix is frequently used to determine presumptively reasonable fees in Washington, D.C., and, even when adjusted for different regions, has been held to be not "more helpful than the rates actually used by other courts or the rates of law firms." *Flitton v. Primary Residential Mortg., Inc.*, No. 2:03-cv-481-DAK, 2009 WL 1357206, at *2 (D. Utah May 7,

---

[17] FCRA shifts fees under 15 U.S.C. §§ 1681n(a)(1)(3) and 1681o(a)(2), Magnuson Moss Warranty Act a/k/a Lemon Laws under 15 U.S.C. § 2310(d)(2), §11(d)(3)(e) of the Uniform Consumer Sales Practices Act possibly adopted by various states, the Texas DTPA (which also covers warranties) under Tex. Bus. & Com. Code § 17.50(d), suit for certain services and contracts in Texas under Tex. Civ. Prac. & Rem. Code § 38.001, and the section at issue here, FDCPA § 1692k(a)(3).

2009); *see also, e.g.*, *Fitzgerald v. City of Los Angeles*, No. CV03-01876 DDP, 2009 WL 960825, at *11 (C.D. Cal. Apr. 7, 2009). Courts have also said "just because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). As such, any reliance on the *Laffey* matrix is unreliable and should not be used to determine the reasonableness of rates.

66.     On the other hand, the State Bar of Texas conducted its own survey regarding attorneys' fees across the state in 2009. <u>Def. App.</u> at 15-35. This survey provides a matrix that determines what the going rates are for attorneys with a certain level of experience, depending upon where in Texas they practice.[18]   Because the case was filed in the United States Court for the Eastern District of Texas, and litigated in the Plano Division the rates associated with either the Dallas-Fort Worth-Arlington area or East & North East Texas area are more applicable to this case.

### Median Hourly Rates by Years of Experience and Region

| Region by Years of Experience | 2 or less years | 3 to 6 years | 7 to 10 years | 11 to 15 years | 16 to 20 years | 21 to 25 years | Over 25 years |
|---|---|---|---|---|---|---|---|
| Dallas-Fort Worth-Arlington | $202 | $214 | $231 | $236 | $295 | $287 | $286 |
| East & Northeast | $ ~ | $188 | $ ~ | $191 | $ ~ | $ ~ | $213 |
| **Average** | | $201 | | $213.5 | | | $249.5 |

<u>Def. App.</u> at 25.

### Median Hourly Rates of Consumer Law Practice by Region

| Practice Area by Region | Dallas-Fort Worth-Arlington | East & Northeast |
|---|---|---|
| Consumer Law | $238 | $ ~ |

<u>Def. App.</u> at 24.

---

[18].http://www.texasbar.com/AM/Template.cfm?Section=Research_and_Analysis&Template=/CM/ContentDisplay.cfm&ContentID=11240.  The most current matrix was created in 2009.

67.     Clearly, Plaintiff's attorney's rates are not reasonable when compared to the rates in the Plano area with attorneys who are similarly experienced.  Using the rates that more accurately reflect this case, the Court should find that Plaintiff's attorney's hourly rates (and attorney's fees) should be reduced.  Below is what a more accurate representation should be (without any other deductions based on lack of billing judgment, inefficient use of multiple attorneys, etc.):

**Attorneys:**

| | | | |
|---|---|---|---|
| Marshall Meyers | 41.6 | (x $213.5/hr) = | $8,881.60 |
| Alex Weisberg | 1.1 | (x $213.5/hr) = | $234.85 |
| Aaron Radbil | 6.1 | (x $201/hr) = | $1,226.10 |
| Noah Radbil | 144.6 | (x $201/hr) = | $29,064.60 |
| Dennis Kurz | 21.3 | (x $201/hr) = | $4,281.30 |
| Russ Thompson | 17.1 | (x $160/hr) = | $2,992.50 |
| Armando Nava | 1.4 | (x $160/hr) = | $2,736.00 |
| Joe Panvini | 84.3 | (x $160/hr) = | $13,488.00 |

**Unknown Positions:**

| | | | |
|---|---|---|---|
| Tremain Davis | 10.1 | (x $80/hr) = | $808.00 |
| Sonya Rodriguez | 2.7 | (x $80/hr) = | $216.00 |
| Simon Wilman | 14.0 | (x $80/hr) = | $1,120.00 |
| Tara St. Angelo | 9.7 | (x $80/hr) = | $776.00 |
| Nichole Stasdakovich | 6.5 | (x $80/hr) = | $520.00 |
| | | Total   $ | $ 66,344.95 |

68.     If the Court seeks guidance regarding the reasonable hourly rates for attorneys in the community, the best place is to look at the Texas Bar's survey rather than the Consumer Law Attorney Fee Survey. Other than the unreliable Consumer Law Attorney Fee Survey Plaintiff relies upon to establish that his rates are reasonable, he fails to also provide a single shred of evidence to support sufficient information regarding the skills, experience and reputation for nearly all attorneys and staff who performed work on this case to which he seeks recovery for.

*b. Plaintiff Provides No Evidence Regarding skills, experience, and reputation of attorneys and staff.*

69.     In a recent order issued by the United States District Court for the Middle District of Florida, in assessing the reasonable hourly rates for Plaintiff's firm of Weisberg & Meyers, the court found that Plaintiff failed to provide sufficient evidence to support their requested hourly rates. *Sharke v. Midnight Velvet, Inc.*, Case No. 8:12-cv-589-T-24-AEP (M.D. Fla. June 7, 2013) (courtesy copy, <u>Def. App.</u> at 60-67). The court stated the following:

> Here, Plaintiff fails to meet its burden of providing satisfactory evidence. Satisfactory evidence "necessarily must speak to rates actually billed and paid in similar lawsuits" and requires more than affidavits from Plaintiff's attorneys attesting that the requested fee is reasonable. For this reason, the provided declarations of Plaintiff's attorneys—conclusively stating that their respective fees are reasonable—do not constitute satisfactory evidence. Likewise, the provided declarations of two consumer rights attorneys—also conclusively stating that the claimed rates for Plaintiff's attorneys, "paralegals, law clerks, and legal assistants" are reasonable—are not satisfactory evidence.
> The declarations of the two consumer rights attorneys are insufficient for another reason: both are out-of-state attorneys but neither indicates familiarity with the hourly rates in the relevant legal community, the Middle District of Florida. Plaintiff cannot substantiate the reasonableness of requested rates in the Middle District of Florida based on market rates in jurisdictions elsewhere. Thus, the out-of-state cases—applying the market rates for the Southern District of Ohio, Eastern District of New York, Eastern District of Louisiana, Northern District of Texas, and Southern District of Texas—are also not helpful here.
> […]
> Plaintiff fails to provide sufficient information regarding the skills experience, and reputation of the remaining six attorneys seeking fees in this case. Although Plaintiff provides a firm biography for associates Matthew Sullivan and Robert Lamb, the biographies merely state that Sullivan graduated from law school in 2008 and Lamb joined the firm in 2011. The Court cannot determine how long each practiced law or focused on consumer law and thus finds these biographies unsatisfactory evidence for analyzing the reasonableness of the requested rates of $225.00 for Sullivan and $175.00 for Lamb. As for local counsel Ted Green and associates Jose Gill, Andrew High, and Christopher Fagan—all requesting a $175.00 rate – Plaintiff provides no information regarding their skills, experience, and reputation.

*Id.*

70.     Just as in *Sharke*, Plaintiff provides scant biographies of each attorney who performed work on this case. Out of all of the attorneys, only one, N. Radbil, is licensed to practice in the state of Texas. <u>Doc. 133-3</u> at 1-15. The only biographies which say how long the attorney has been practicing in consumer law are the ones for A. Weisberg, M. Meyers, and C. Ehrlich. *Id*. It is unable to determine how long the other attorneys have been practicing solely in consumer law, and more so how long many of them have even been practicing attorneys. *Id*. Then, Plaintiff does not provide any biographies, much less job titles for Tremain Davis, Sonya Rodriguez, David McDevitt, Simon Willman, Tara St. Angelo, and Nichole Stasdakovich, or any of the twenty-two (22) other staff members who performed work on this case.

## D. Plaintiff Compares Apples to Oranges in His Last Argument Regarding *White v. Regional Adjustment Bureau, Inc.*

71.     Plaintiff's last argument is that Creditwatch's counsel recently requested a total of $87,155.00 in attorneys' fees and that their fee request is "reasonable in light of the defense counsel's request in a procedurally similar matter." <u>Doc. 133</u> at 16. In the case of *White v. Regional Adjustment Bureau, Inc.*, litigated against Plaintiff's counsel, the Jury awarded $0.00 in actual and statutory damages and the Court entered judgment in favor of Regional Adjustment Bureau, Inc. at Plaintiff's cost. <u>Def. App.</u>at 36. As such, Regional Adjustment Bureau, Inc.'s request for attorneys' fees did not require segregation of any unsuccessful claims, any claims where attorneys' fees could not be shifted, and where fees were driven up by the plaintiff's counsel's inability to file pleadings and documents designated by the court along with conduct warranting an evidentiary hearing under FRCP 37 and 28 U.S.C. § 1927. <u>Def. App.</u> at 37. It is hardly reasonable to compare the two, and even more so when Creditwatch's counsel's billing rates were $175 for a partner practicing over twenty-five (25) years, $140 for associates, and $80

for paralegals and law clerks. <u>Doc. 133-5</u> at 2. Those numbers may put the reasonableness of Plaintiff's requested hourly rates in perspective.

**E. Creditwatch's Proposals for Fee Awards.**

72.     Plaintiff seeks $78,981.00 in attorneys' fees, which should first be adjusted to reflect Aaron Radbil's proper contracted rate to $275, therefore totaling the fee request to $78,615.00. Taking this total, Creditwatch makes the following four (4) proposals for the Court for reductions and adjustments to Plaintiff's request due to his failure to properly segregate recoverable fees from non-recoverable fees, failure to use billing judgment, billing for numerous clerical tasks, and lack of reasonableness of hourly rates. While a few of Plaintiff's billing entries are listed under multiple justifications for reduction of the fee, it is nearly impossible to list every single one and make adjustments for them.   Because it is Plaintiff's burden to establish the reasonableness and necessity of fees and have made so many unreasonable requests for fees attributed to overstaffing, overbilling and clerical work, the overlap should be held against Plaintiff.

**(1) Subtraction of Fees for Unreasonable Fees With Percentage Reduction.**

73.     Creditwatch's first proposal is to take Plaintiff's adjusted fee total, subtract the totals for improperly billed work discussed *supra*, and reduce by a percentage for these faults:

| | |
|---|---|
| Plaintiff's Adjusted Fee Total | $78,615.00 |
| Block Billed entries | $7,578 |
| Trial Time for TCPA, TDCA, DTPA and Actual Damages | $5,311 |
| Unrecoverable Entries/Lack of Billing Judgment | $3,070.00 |
| Entries Due to Overstaffing | $18,178.00 |
| Improperly Billed Clerical Work | $10,949.00 |

| | | |
|---|---|---|
| Total reduction for Fees | = | $45,086.00 |
| | | - |
| Total fees after adjustments | | $33,529.00 |

50% Reduction for lack of
billing judgment, overstaffing,
clerical work and failures
to segregate unrecoverable fees.   X   .5

Total:   $ 16,764.50

**(2) Subtraction of Fees for Unreasonable Fees With Percentage Reduction of Overall Success of Claims.**

74. Creditwatch' second proposal is for the Court to reduce all of Plaintiff's attorneys' and staff's hourly rates to a more reasonable rate for the proper community, and reduce the total by a percentage for the improperly billed work discussed *supra*.

**Attorneys:**

| Name | Hours | Rate | Total |
|---|---|---|---|
| Marshall Meyers | 41.6 | (x $213.5/hr) = | $8,881.60 |
| Alex Weisberg | 1.1 | (x $213.5/hr) = | $234.85 |
| Aaron Radbil | 6.1 | (x $201/hr) = | $1,226.10 |
| Noah Radbil | 144.6 | (x $201/hr) = | $29,064.60 |
| Dennis Kurz | 21.3 | (x $201/hr) = | $4,281.30 |
| Russ Thompson | 17.1 | (x $160/hr) = | $2,736.00 |
| Armando Nava | 1.4 | (x $160/hr) = | $224.00 |
| Joe Panvini | 84.3 | (x $160/hr) = | $13,488.00 |
| | | Total: | $60,392.95 |

**Unknown Positions:**

| Name | Hours | Rate | Total |
|---|---|---|---|
| Tremain Davis | 10.1 | (x $80/hr) = | $808.00 |
| Sonya Rodriguez | 2.7 | (x $80/hr) = | $216.00 |
| Simon Wilman | 14.0 | (x $80/hr) = | $1,120.00 |
| Tara St. Angelo | 9.7 | (x $80/hr) = | $776.00 |
| Nichole Stasdakovich | 6.5 | (x $80/hr) = | $520.00 |
| | | Total $ | $ 60,136.45 |

80% reduction from fees due
to Plaintiff prevailing on only
only four of his ten claims, then
recovering only half of available

**DEFENDANT CREDITWATCH SERVICES, LTD'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS'**
**FEES –**    **Page 48**
M:\9840000 CHUBB FILES\9840279 Thomas E. Whatley III v. Creditwatch Servcies, Ltd\Pleadings\Trial\9840279.Response to
Motion for Attorneys' Fees.docx

damages[19].                                                        X    .2

                                            Total:         $ 12,027.29


**(3) Reduction of Hourly Rates and Subtraction of Unsegregated Entries, TCPA Entries, Entries Due to Overstaffing, and Clerical Entries with Percentage Reduction.**

75.    Creditwatch's third proposal is for the Court to take the adjusted totals with the more reasonable and accurate rates for the community and reduce the total by 70% for the improperly billed work discussed *supra*.

**Attorneys:**

| | | | |
|---|---|---|---|
| Marshall Meyers | 41.6 | (x $213.5/hr) = | $8,881.60 |
| Alex Weisberg | 1.1 | (x $213.5/hr) = | $234.85 |
| Aaron Radbil | 6.1 | (x $201/hr) = | $1,226.10 |
| Noah Radbil | 144.6 | (x $201/hr) = | $29,064.60 |
| Dennis Kurz | 21.3 | (x $201/hr) = | $4,281.30 |
| Russ Thompson | 17.1 | (x $160/hr) = | $2,736.00 |
| Armando Nava | 1.4 | (x $160/hr) = | $224.00 |
| Joe Panvini | 84.3 | (x $160/hr) = | $13,488.00 |
| | | Total: | $60,392.95 |

**Unknown Positions:**

| | | | |
|---|---|---|---|
| Tremain Davis | 10.1 | (x $80/hr) = | $808.00 |
| Sonya Rodriguez | 2.7 | (x $80/hr) = | $216.00 |
| Simon Wilman | 14.0 | (x $80/hr) = | $1,120.00 |
| Tara St. Angelo | 9.7 | (x $80/hr) = | $776.00 |
| Nichole Stasdakovich | 6.5 | (x $80/hr) = | $520.00 |
| | | Total $ | $60,136.45 |

70% Reduction for lack of
billing judgment, overstaffing,
clerical work and failures
to segregate unrecoverable fees.          X    .3

                                            Total:         $ 18,040.94

---

[19] Plaintiff sought recovery on FDCPA §§ 1692d(6), e(10) and (11), c(3) and c(a)(2), TDCA §§ 392.304(a)(4), (a)(5)(B), (a)(17) and (a)(19) and the DTPA. Plaintiff only prevailed on his FDCPA §§ 1692d(6), e(10), e(11), and c(a)(2) claims. Further, Plaintiff only recovered half of the available damages, the statutory damages, and recovered no actual damages. <u>Doc. 127</u>.Therefore, recoverable fees should be reduced for success on 40% of his actual claims, and reduced by half for only recovering half of available damages, leaving 20% for recovery.

**(4) Removal of Unknown Position Entries for Failure to Present Evidence or Affidavits to Work, Experience and Qualifications and Removal of Time After April 2, 2012.**

76.     Last, Creditwatch proposes that this Court take the total requested by Plaintiff and subtract all billing entries after April 2, 2012 for Plaintiff's failure to properly supplement his discovery responses under FRCP 26 and also not award any time for Plaintiff's firm's staff which did not provide any affidavits, biographies, experience, *et cetera* for the Court to determine their reasonable rates, positions, and further for the suspect nature of the fee agreement allowing $100/hr for administrative staff, yet no identified as administrative staff or billing at that rate.

|  |  |  |  |
|---|---|---|---|
| Plaintiff's Adjusted Fee Total Request | | | $78,615.00 |

**Attorneys:**

| | | | |
|---|---|---|---|
| Marshall Meyers | 35.8 | (x $335/hr) = | $11,993.00 |
| Aaron Radbil | 3.1 | (x $275/hr) = | $852.50 |
| Noah Radbil | 125.5 | (x $230/hr) = | $28,865.00 |
| Dennis Kurz | 3.0 | (x $300/hr) = | $900.00 |
| Joe Panvini | 82.6 | (x $175/hr) = | $14,455.00 |
| | | Total | $57,065.50 |

**Unknown Positions or No Affidavit:**

| | | | |
|---|---|---|---|
| Armando Nava | 1.4 | (x $160/hr) = | $224.00 |
| Tremain Davis | 10.1 | (x $135/hr) = | $1,363.00 |
| Sonya Rodriguez | 2.7 | (x $135/hr) = | $364.50 |
| Simon Wilman | 14.0 | (x $135/hr) = | $1890.00 |
| Tara St. Angelo | 9.7 | (x $135/hr) = | $1,309.50 |
| Nichole Stasdakovich | 6.5 | (x $135/hr) = | $877.50 |
| | | Total | $6,028.50 |

Total fees to be excluded: $63,094.00

Total Fee Award: $15,521.00

# IV.
## CONCLUSION

77.    This Court should exercise its discretion and drastically reduce the amount of attorneys' fees that Plaintiff is requesting.  Plaintiff's counsel has clearly overstaffed, overcharged, and overbilled in all aspects of this litigation.  The arguments *supra* detail the vast failure of Plaintiff's "billing judgment".  Plaintiff has failed to omit various entries dedicated to unrecoverable and unsuccessful claims. Plaintiff requests hourly rates no client would pay for a $1,000 recovery. Plaintiff further provides no evidence to support the requested rates nor any information, affidavits, or the like regarding the paraprofessionals for which Plaintiff is seeking fees for.  Nearly $30,000 of Plaintiff's requested fees were even due to the overstaffing of nine (9) attorneys and twenty-seven (27) paraprofessionals on one non-complex case. Plaintiff's fee request perverts the FDCPA, which was created to protect consumers, not to become a "cottage-industry for the production of attorney's fees." Creditwatch prays that this Court adjust Plaintiff's attorneys' fee request to one of the four (4) options presented *supra* and prevent the obvious cottage-industry seen here.

WHEREFORE, PREMISES CONSIDERED, Creditwatch Services, Ltd. respectfully requests this Court to significantly reduce the requested amount of attorneys' fees that Plaintiff demands to what was actually reasonable and necessary for this litigation, and in line with Plaintiff's overall success on his claims.

Respectfully submitted,

[SIGNATURE BLOCK ON FOLLOWING PAGE]

**ROBBIE MALONE, PLLC**

/s/ Robbie Malone
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@rmalonelaw.com
XERXES MARTIN
State Bar No. 24078928
Email: xmartin@rmalonelaw.com
ROBBIE MALONE, P.L.L.C.
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
TEL: (214) 346-2630
FAX: (214) 346-2631

*COUNSEL FOR DEFENDANT*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded via electronic filing on this 15th day of July, 2013 to:

Marshall Meyers
Noah D. Radbil
Weisberg & Meyers, LLC
Two Allen Center
1200 Smith Street, 16th Floor
Houston, TX 77002

/s/Robbie Malone