**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| THOMAS E. WHATLEY III, | § | |
| *Plaintiff* | § | |
| | § | |
| *v.* | § | Civil Action No. 4:11-cv-00493-RAS-DDB |
| | § | |
| CREDITWATCH SERVICES, LTD., | § | |
| *Defendant*. | § | |

## MR. WHATLEY'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

### A.   Mr. Whatley brought a successful action against CreditWatch and is the prevailing party in this matter.

Mr. Whatley prevailed on four of his five FDCPA claims and the jury awarded Mr. Whatley $1,000.00 in statutory damages under the FDCPA—the maximum amount awardable. Doc. 126; Doc. 127 at Question No. 16. Nevertheless, CreditWatch contends this maximum statutory award constitutes a nominal damages award. Doc. 135-1 at 10, 15 (stating that a $1,000 award is "trivial"). The cases to which CreditWatch attempts to compare this matter show that the statutory maximum awarded is not a nominal award. Doc. 135-1 at 12 (citing *Farrar v. Hobby*, 506 U.S. 103, 121, 113 S.Ct. 566, 121 L. Ed. 2d 494 (1992) (the plaintiff only recovered $1 from the least culpable defendant and nothing from the remaining five defendants)); Doc. 135-1 at 13 (citing *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 627 (4th Cir. 1995) (the plaintiff was awarded $50 for the defendant's violation of the FDCPA)); Doc. 135-1 at 16 (citing *Johnson v. Eaton*, 80 F.3d 148, 151 (5th Cir. 1996) (one of the defendants violated the FDCPA but no liability for actual or statutory damages)).

CreditWatch further contends that despite the maximum statutory damage award, its violations were merely technical. Doc. 135-1 at 13. But the Fifth Circuit has held that a violation is not technical and attorneys' fees are "available where the plaintiff has succeeded in

establishing that the defendant is liable for actual and/or additional damages." *Johnson v. Eaton*, 80 F.3d 148, 151 (5th Cir. 1996). By receiving the maximum award of additional damages under the FDCPA, when the jury had to base its finding of damages on "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional," 15 U.S.C. § 1692k(b)(1), the jury necessarily found CreditWatch liable for more than a mere technical violation of the Act. Notably, Mr. Whatley also prevailed on his claims under the TCPA, and will recover no less than $8,000 for CreditWatch's violations of that law.[1]

**B.     The FDCPA affords aggrieved parties relief that cannot be valued solely in monetary terms.**

CreditWatch agrees that "[t]he more important the right at stake and the more egregious the violation the more likely it is that the victory serves a public purpose." *Cartwright v. Stamper*, 7 F.3d 106, 110 (7th Cir. 1993); Doc. 135-1 at 18. Without explanation or any support, CreditWatch jumps to the conclusion that "the jury found Creditwatch's conduct not egregious enough to warrant actual damages." Doc. 135-1 at 18. On the contrary, the jury found that Mr. Whatley did not suffer actual damages. This finding has nothing to do with the level of egregiousness of CreditWatch's conduct. On the other hand, the amount of statutory damages awarded takes into account the egregiousness of the violation. *See* 15 U.S.C. § 1692k(b)(1). By awarding the maximum amount in statutory damages, the jury found CreditWatch's conduct egregious. Doc. 127.

Even without an award of statutory damages, a finding against a debt collector under the FDCPA serves a public purpose. Financial compensation is not the "be all and end all." *Chestnut*

---

[1] This Court has not yet decided the amount of damages to award under the TCPA, but the law mandates at least $500 per violation. See Doc. 134. The jury found twenty three (23) violations of the TCPA, but Plaintiff conceded there were actually only sixteen (16) violations.

*Hill Gulf, Inc. v. Cumberland Farms, Inc.*, 749 F. Supp. 331, 333 (D. Mass. 1990). "'Unlike most private tort litigants, [a plaintiff who brings an FDCPA action] seeks to vindicate important * * * rights that cannot be valued solely in monetary terms', *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), and Congress has determined that the public as a whole has an interest in the vindication of the statutory rights." *Tolentino v. Friedman*, 46 F. 3d 645, 652 (7th Cir. 1995). "Once the judicial machinery has been set in train, the proceeding takes on a public character in which remedies are devised to vindicate the policies of the Act, not merely to afford private relief." *Hutchings v. United States Industries, Inc.*, 428 F. 2d 303, 311 (5th Cir. 1970). Thus, contrary to CreditWatch's assertions, Mr. Whatley's victory serves public interest by vindicating important rights and deterring future violations.

### C.     CreditWatch misplaces its reliance on *Hensley*.

CreditWatch relies on *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), and cases citing it to argue that Mr. Whatley's attorney fees should be reduced because he did not prevail on all of his claims. However, this argument lacks context. The Court reasoned that fees may require a reduction where the unsuccessful claim was wholly separate and distinct from the successful claim. *Id.* at 440. The Court's theory of limited success occurs where "the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims," rather than where "a lawsuit consists of related claims." *Id.*

But "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. The Court *rejected* the contention that "an award of attorneys' fees must be proportioned to be consistent with the extent to which a Plaintiff has prevailed and only time reasonably expended in support of successful claims should be compensated." *Id.* at 432. Instead, it stated that "[l]itigants in good faith may raise alternative legal grounds for a

desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee," and that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. *Id*. "Such a lawsuit cannot be viewed as a series of discrete claims." *Id.*; *see also Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1095 (5th Cir. 1982).[2]

Here, Mr. Whatley brought claims against CreditWatch for unfair debt collection and automated telephone harassment, all of which arose out the same set of operative facts. Mr. Whatley succeeded in proving that CreditWatch committed unfair debt collection and automated telephone harassment.

**D.    Mr. Whatley's attorneys are entitled to an award of attorneys' fees based on their current rates.**

As the Supreme Court has acknowledged, courts in fee-shifting cases courts "regularly recognize[] the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 282 (1989). The Court explained that upward adjustments are necessary to account for the delay in payment:

> [C]ompensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute.

*Id.* at 283; *see also Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1674 (2010).

---

[2] In mandating a result oriented approach, the Court made clear that a mathematical approach comparing the total number of issues in the case with those actually prevailed upon, as CreditWatch argues, Doc. 135-1 at 48 (requesting an "80% reduction from fees due to Plaintiff prevailing on only only [sic] four of his ten claims"), is improper. *Hensley v. Eckerhart*, 461 U.S. at 435. In particular, the Court noted that a mathematical approach provides little aid in determining what is a reasonable fee in light of all the relevant factors, nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. *Id.* "For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Id.*

Mr. Whatley filed his original complaint in August of 2011. Doc. 1. Two years later, the jury entered a verdict in Mr. Whatley's favor. Doc. 127. Mr. Whatley is, in line with the Supreme Court's analysis in *Jenkins by Agyei* and *Perdue*, entitled to an award of attorneys' fees at his attorneys' current hourly rates.

> **i.** **The Southern District of Texas, the Western District of Texas, the District of Arizona, and the District of Colorado held that Mr. Meyers's current hourly rate of $335 is reasonable.**

In June 2012, the District of Arizona found Mr. Meyers's hourly rate of $335 to be reasonable. *Elight Sanders v. Vohwinkel Sullo & Associates, LLC, et al.*, No. 10-cv-01739 (D. Ariz. 2012), attached as Exhibit A. The District of Colorado similarly found Mr. Meyers's hourly rate of $335 to be reasonable. *Jacob Jones v. Auto Warehouse, Inc.*, No. 12-cv-00 (D. Colo. 2013), attached as Exhibit B. More recently, the Western District of Texas found Mr. Meyers's hourly rate of $335 to be reasonable. *Miguel Rivera v. Love, Beal & Nixon, P.C. et al.*, No. 5:12-cv-00506-PMA (W.D. Tex. Oct. 25, 2013), attached as Exhibit C. Finally, just several days ago, the Southern District of Texas held that Mr. Meyers's hourly rate of $335 is reasonable given his experience and reputation. *Robert Szijarto et al. v. Kyle McCarrell et al.*, No. 4:11-cv-04226 (S.D. Tex. Feb. 12, 2014), attached as Exhibit D.

> **ii.** **The Southern District of Florida held that Mr. Weisberg's current hourly rate of $335 is reasonable.**

In September 2012, the District Court for the Southern District of Florida found Mr. Radbil's hourly rate of $335 to be reasonable. *David Sparks v. H&P Capital, Inc.*, No. 11-cv-62145-WPD, Document 39 at 5 of 7 (S.D. Fla. 2012) ("The undersigned finds that the rates requested by the Plaintiff for the named lawyers ($335.00 per hour for Mr. Weisberg and Mr. Radbil, and $175.00 per hour for Mr. Sullivan) and the paralegal ($135.00 per hour) are within

the range of prevailing market rates charged in this District for similar services by lawyers and paralegals of reasonably comparable skills, experience and reputation."), attached as Exhibit E.

### iii. The Southern District of Texas, the Southern District of Florida and the District of Colorado held that Aaron Radbil's current hourly rate of $335 is reasonable.

In September 2012, the District Court for the Southern District of Florida also found Mr. Radbil's hourly rate of $335 to be reasonable. *David Sparks v. H&P Capital, Inc.*, No. 11-cv-62145-WPD, Document 39 at 5 of 7 (S.D. Fla. 2012) ("The undersigned finds that the rates requested by the Plaintiff for the named lawyers ($335.00 per hour for Mr. Weisberg and Mr. Radbil, and $175.00 per hour for Mr. Sullivan) and the paralegal ($135.00 per hour) are within the range of prevailing market rates charged in this District for similar services by lawyers and paralegals of reasonably comparable skills, experience and reputation."), attached as Exhibit E. Just last year, the District of Colorado also found Mr. Radbil's hourly rate of $335 to be reasonable. *Jacob Jones v. Auto Warehouse, Inc.*, No. 12-cv-00712 (D. Colo. 2013), attached as Exhibit B. Finally, just several days ago, the Southern District of Texas held that Mr. Radbil's hourly rate of $335 is reasonable given his experience and reputation. *Robert Szijarto et al. v. Kyle McCarrell et al.*, No. 4:11-cv-04226 (S.D. Tex. Feb. 12, 2014), attached as Exhibit D.

While CreditWatch notes that the fee agreement identifies Mr. Radbil's hourly rate of $275 in 2011, Doc. 135-1 at 20 n.7, the Supreme Court's analysis in *Jenkins by Agyei* and *Perdue* support an award of fees at his current hourly rate of $335. The fee agreement also supports his current hourly rate because it states that the rates identified "may rise by as much as $50 a year." Doc. 136.

iv. **The Southern District of Texas, the Northern District of Texas and the District of Colorado held that hourly rates of $300 and $250 for Noah Radbil—higher rates than the $230 hourly rate sought here—are reasonable.**

In July 2012, the Northern District of Texas found Mr. Radbil's hourly rate of $300 to be reasonable. *Tammy Powell, et al. v. Procollect, Inc., et al.*, No. 11-cv-00846 (N.D. Tex. 2012), attached as Exhibit F. The District of Colorado found Mr. Radbil's hourly rate of $250 to be reasonable. *Jacob Jones v. Auto Warehouse, Inc.*, No. 12-cv-00712 (D. Colo. 2013), attached as Exhibit B. Finally, just several days ago, the Southern District of Texas held that Mr. Radbil's hourly rate of $250 is reasonable. *Robert Szijarto et al. v. Kyle McCarrell et al.*, No. 4:11-cv-04226 (S.D. Tex. Feb. 12, 2014), attached as Exhibit D. Here, Mr. Whatley only seeks an hourly rate of $230 for Mr. Radbil. Doc. 133.

v. **The Northern District of Texas recently held that Mr. Kurz's hourly rate of $350, an amount greater than the $300 hourly rate sought here, is reasonable.**

In July 2012, the Northern District of Texas found that Mr. Kurz's hourly rate of $350 to be reasonable. *Tammy Powell, et al. v. Procollect, Inc., et al.*, No. 11-cv-00846 (N.D. Tex. 2012), attached as Exhibit F. Here, Mr. Whatley only seeks an hourly rate of $300 for Mr. Kurz. Doc. 133.

vi. **The District of Arizona has held that Mr. Panvini's' hourly rate of $175 was reasonable, and the Western District of Texas recently held that Mr. Panvini's hourly rate of $200 is reasonable.**

In May 2010, the District of Arizona found Mr. Panvini's hourly rate of $175 to be reasonable. *Eric Smith v. National Credit Systems, Inc.*, No. 10-cv-01026, Document 53 (D. Ariz. 2010), attached as Exhibit G; *see also Elight Sanders v. Vohwinkel Sullo & Associates, LLC, et al.*, No. 10-cv-01739 (D. Ariz. 2012) (finding Mr. Panvini's hourly rate of $175 to be reasonable), attached as Exhibit A. In October, 2013, the Western District of Texas held that Mr.

Panvini's hourly rate of $200 is reasonable. *Miguel Rivera v. Love, Beal & Nixon, P.C. et al.*, No. 5:12-cv-00506-PMA (W.D. Tex. Oct. 25, 2013), attached as Exhibit C. Here, Mr. Whatley only seeks an hourly rate of $175 for Mr. Panvini. Doc. 133.

> **vii.** **The District of Colorado, on two separate occasions, held that Mr. Thompson's hourly rate of $175 is reasonable.**

In June 2012, the District of Colorado found Mr. Thompson's hourly rate of $175 to be reasonable. *Deja Franks v. North American Asset Services, LLC, et al*, No.1:110cv-02323, Document 52 at 1 of 2 (D. Colo. 2012), attached as Exhibit H. The District of Colorado also found Mr. Thompson's hourly rate of $175 to be reasonable. *Jacob Jones v. Auto Warehouse, Inc.*, No. 12-cv-00712 (D. Colo. 2013), attached as Exhibit B.

> **viii.** **The Western District of Texas, the District of Colorado, the District of Arizona and the Southern District of Florida recently held that Mr. Whatley's attorneys' paralegals' hourly rates of $135 is reasonable.**

In May 2010, the District of Arizona found Mr. Whatley's attorneys' paralegal's hourly rate of $135 to be reasonable. *Eric Smith v. National Credit Systems, Inc.*, No. 10-cv-01026, Document 53 (D. Ariz. 2010), attached as Exhibit G. In June 2012, the District of Colorado similarly found Mr. Whatley's attorneys' paralegal's hourly rate of $135 to be reasonable. *Deja Franks v. North American Asset Services, LLC, et al*, No.1:110cv-02323, Document 52 at 1 of 2 (D. Colo. 2012), attached as Exhibit H. In September 2012, the District Court for the Southern District of Florida also found Mr. Whatley's attorneys' paralegal's hourly rate of $135 to be reasonable. *David Sparks v. H&P Capital, Inc.*, No. 11-cv-62145-WPD, Document 39 at 5 of 7 (S.D. Fla. 2012) ("The undersigned finds that the rates requested by the Plaintiff for the named lawyers ($335.00 per hour for Mr. Weisberg and Mr. Radbil, and $175.00 per hour for Mr. Sullivan) and the paralegal ($135.00 per hour) are within the range of prevailing market rates charged in this District for similar services by lawyers and paralegals of reasonably comparable

skills, experience and reputation."), attached as Exhibit E. The District of Colorado similarly found Mr. Whatley's attorneys' paralegal's hourly rate of $135 to be reasonable. *Jacob Jones v. Auto Warehouse, Inc.*, No. 12-cv-00712 (D. Colo. 2013), attached as Exhibit B. Quite recently, the Western District of Texas found Mr. Whatley's attorneys' paralegal's hourly rate of $135 to be reasonable. *Miguel Rivera v. Love, Beal & Nixon, P.C. et al.*, No. 5:12-cv-00506-PMA (W.D. Tex. Oct. 25, 2013), attached as Exhibit C. Although the Southern District of Texas found a paralegal rate of $110, it did note a range of paralegal rates in Texas, and based its finding on "the specific nature of this case, the fact of settlement," and other opinions within the Southern District of Texas. *Robert Szijarto et al. v. Kyle McCarrell et al.*, No. 4:11-cv-04226 (S.D. Tex. Feb. 12, 2014), attached as Exhibit D.

      **ix.**     **The District of Colorado, the District of Arizona and the Southern District of Florida held that Mr. Whatley's attorneys' law clerks' hourly rate of $135 is reasonable.**

In May 2010, the District of Arizona found Mr. Whatley's attorneys' law clerks' hourly rate of $135 to be reasonable. *Eric Smith v. National Credit Systems, Inc.*, No. 10-cv-01026, Document 53 (D. Ariz. 2010), attached as Exhibit G. In September 2012, the District Court for the Southern District of Florida also found Mr. Whatley's attorneys' law clerks' hourly rate of $135 to be reasonable. *David Sparks v. H&P Capital, Inc.*, No. 11-cv-62145-WPD, Document 39 at 5 of 7 (S.D. Fla. 2012) ("The undersigned finds that the rates requested by the Plaintiff for the named lawyers ($335.00 per hour for Mr. Weisberg and Mr. Radbil, and $175.00 per hour for Mr. Sullivan) and the paralegal ($135.00 per hour) are within the range of prevailing market rates charged in this District for similar services by lawyers and paralegals of reasonably comparable skills, experience and reputation."), attached as Exhibit E. The District of Colorado

similarly found Whatley's attorneys' law clerks' hourly rate of $135 to be reasonable. *Jacob Jones v. Auto Warehouse, Inc.*, No. 12-cv-00712 (D. Colo. 2013), attached as Exhibit B.

      **x.      Contrary to CreditWatch's unsupported assertions, Dennis Kurz is licensed in Texas, and Dennis Kurz, Russell Thompson, and Joe Panvini are each licensed in each Texas Federal District Court.**

Without any factual basis, CreditWatch asserts that Dennis Kurz is not licensed in Texas, and that Dennis Kurz, Russell Thompson, and Joe Panvini are not licensed in any Texas Federal District Court. On the contrary, Dennis Kurz is licensed in the State of Texas (State Bar No. 24068183). *See* Doc. 133-3. And Dennis Kurz (S.D. No. 1045205), Russell Thompson (S.D. No. 1572841), and Joe Panvini (S.D. No. 1572837) are each licensed in each Texas Federal District Court. *See* Doc. 133-3.

      **xi.     The outdated State Bar of Texas 2009 Hourly Rate Fact Sheet lacks reliability and the Court should not consider the survey's findings.**

In support of its request for a reduction in the hourly rates requested for Mr. Whatley's attorneys, CreditWatch submitted the State Bar of Texas 2009 Hourly Rate Fact Sheet. Doc. 135-2 at 15-35. First, the Court should not consider the survey given its outdated status. The survey confirms that the bar takes a new survey "[e]very other year." Doc. 135-2 at 32. Because CreditWatch failed to submit a current Hourly Rate Fact Sheet, the Court should not consider the outdated and unreliable results.

This unreliability also results from the low response rate. The survey resulted in "an overall response rate of 12 percent." Doc. 135-2 at 29. The response rates for "Dallas-Fort Worth-Arlington" and "East & Northeast"—the two regions CreditWatch relies on in arguing for a reduction—had response rates of five and six percent, respectively. Doc. 135-2 at 29. The survey also fails to identify how many of those who responded practice consumer law. The

results lack reliability and the Court should not consider them in determining the reasonable amount of attorneys' fees incurred by Mr. Whatley in this matter.

Contrary to CreditWatch's contention that the survey Mr. Whatley submitted has fallen out of favor in recent times, just several days ago, the Southern District of Texas based its finding that Weisberg & Meyers's hourly rates were reasonable, in part, on that survey. *Robert Szijarto et al. v. Kyle McCarrell et al.*, No. 4:11-cv-04226 (S.D. Tex. Feb. 12, 2014), attached as Exhibit D.

**E.      Mr. Whatley's attorneys are entitled to an award of attorneys' fees for the reasonable amount of hours requested.**

**i.      Mr. Whatley's FDCPA and Texas state law claims are inextricably intertwined. And Mr. Whatley already waived fees incurred solely on his TCPA claims.**

CreditWatch argues that Mr. Whatley's fees warrant a reduction because he seeks an amount which includes fees "that were expended in attempting to prove actual damages or violations of the TDCA and DTPA and even fees related to his TCPA claims he failed to segregate." Doc. 135-1 at 19. But a brief glance at the Statement of Services provided by Mr. Whatley confirms that many time entries spent solely on his TCPA claims have been waived and not included in the fee request. Doc. 133-1.

And segregation of fees for time spent on Mr. Whatley's state law claims is not required. "[W]hile segregation of fees is necessary when the plaintiff brings some causes for which attorneys fees are not available, segregation is **not** necessary when the services rendered relate to multiple claims arising out of the same facts or transaction or the prosecution or defense entails proof of the same facts." *Memon, v. Pinnacle Credit Services, LLC*, 2009 WL 6825243, at *2 (S.D. Tex. 2009) (emphasis added) (citing *America Home Assurance Company v. United Space Alliance, LLC*, 378 F.3d 482, 494 (5th Cir. 2004)); *see also supra*, Section C. Mr. Whatley's

state law claims are all inextricably intertwined in that they arise out of the same course of unlawful debt-collection efforts and involved proof of the same facts; namely, the manner, number, and nature of the subject debt-collection communications. Here, Mr. Whatley has already waived approximately 226 hours of time.

ii.     The *Johnson* **Factors do not warrant any downward reduction of the lodestar calculation.**

"The Supreme Court has held that there is a 'strong presumption' that the lodestar figure, without adjustment, is the reasonable fee award." *Memon*, *v. Pinnacle Credit Services, LLC*, 2009 WL 6825243, at *2 (S.D. Tex. 2009) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, (1986)). And the Supreme Court again confirmed that the lodestar calculation should only be adjusted in "those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010). But this case does not present any rare circumstances that merit a downward adjustment of the lodestar calculation—even should this Court consider the *Johnson* factors. *See Johnson v. Ga. Highway Express*, 488 F.2d 714 (5th Cir. 1974).

The time and labor required represent a factor that is "subsumed in the lodestar calculation" and which "does not alter the fee analysis." *Turner*, 552 F. Supp. 2d at 654 (citing *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir.1990)). The novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation are also presumed to be fully reflected in the lodestar amount. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993); *see Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986). The "preclusion of other employment factor" is also subsumed in the lodestar calculation, as is the factor that considers the customary fee for similar

work in the community. *See Heidtman v. County of El Paso*, 171 F. 3d 1038, 1040 (5th Cir. 1999); *Memon*, 2009 WL 6825243 at *6 (citing *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990) (finding that the "lodestar" is, in part, the product of the value of the services according to the customary fee and the quality of the legal work). Time limitations imposed by the client or circumstances are subsumed in the lodestar calculation – similar to the way in which the "preclusion of other employment factor" is likewise subsumed. *Gilbert v. City of Little Rock, Ark.*, 867 F. 2d 1063, 1067 (8th Cir. 1989). The same is true of the factor that weighs the amount involved and the results obtained. *Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 565.

As for whether the fee is fixed or contingent, if this factor were to warrant any adjustment to the lodestar calculation, an upward adjustment is justified. *See Bowers v. Transamerica Title Ins. Co.*, 675 P. 2d 193, 204 (Wash. 1983) (explaining that in cases where counsel bear the risk that they will not be compensated at all for their time and effort, such as the instant case, the lodestar amount may be adjusted upward to account for this risk factor). The "undesirability" of a given case, and the nature and length of the relationship with the client, are reflected in the initial determination of reasonable hourly rate and number of compensable hours. *Gilbert v. City of Little Rock, Ark.*, 867 F. 2d at 1067.

The Supreme Court itself characterized the lodestar method as "the guiding light of our fee-shifting jurisprudence" and expressed a distinct preference to the lodestar method over the *Johnson* factors, finding they "gave very little actual guidance to district courts." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551, 130 S. Ct. 1662, 1672, 176 L. Ed. 2d 494 (2010).

### iii.    The use of multiple attorneys is permissible.

CreditWatch argues Mr. Whatley's fee request warrants an $18,178.00 reduction due to overstaffing and "the inefficient use of multiple attorneys." Doc. 135-1 at 38. But "[u]se of one

or more lawyer is a common practice, primarily because it often results in a more efficient distribution of work." *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007) (citing *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988)). "Time spent by two attorneys on the same general task is not, however, per se duplicative. Careful preparation often requires collaboration and rehearsal." *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998) (going on to hold that "the court should not reward defendants for their vehement 'Stalingrad defense,'" and that "a litigant's staffing needs and preparation time will often vary in direct proportion to the ferocity of her adversaries' handling of the case"); *see also Jean v. Nelson*, 863 F.2d 759, 772 (11th Cir. 1988) (noting the use of multiple attorneys is "understandable and not a ground for reducing the hours claimed" because "the use in involved litigation of a team of attorneys who divide up the work is common for both plaintiff and defense work"); *Afro-American Patrolmen's League v. City of Atlanta*, 817 F.2d 719 (11th Cir. 1987) (pointing out that an award for time spent by multiple attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the "customary practice of multiple–lawyer litigation").

"Modeling law firm economics drifts far afield of the *Hensley* calculus and the statutory goal of sufficiently compensating counsel in order to attract qualified attorneys to do [Congressionally desired] work." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114-15 (9th Cir. 2008) ("the district court may not set the fee based on speculation as to how other firms would have staffed the case"). "Some systematic perusal of the actual billing entries will often confirm that the reason for the seemingly high fee was not inefficiency, but careful compliance with the attorneys' responsibilities." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1150-51 (9th Cir. 2001).

### 1. Joe Panvini's entries identified were neither the result of overstaffing nor inefficient use of attorneys.

CreditWatch identifies multiple time entries made by Mr. Panvini, an attorney licensed in this Court. *See* Doc. 135-2 at 3-6. CreditWatch challenges Mr. Panvini's time spent reviewing CreditWatch's initial disclosures, reviewing and revising Plaintiff's discovery requests, reviewing CreditWatch's discovery responses to prepare a Rule 37 letter addressing the deficiencies, reviewing documents and preparing an outline for Mr. Whatley's response to CreditWatch's summary judgment motion (including reviewing the magistrate's report and recommendation), preparing a response and sur-reply to CreditWatch's motion challenging the sufficiency of Plaintiff's responses to requests for admission and motion for sanctions, preparing a response to CreditWatch's motion for leave to file excess pages, and multiple entries related to discovery disputes between the parties. Doc. 135-2 at 3-6. Mr. Panvini spent a considerable amount of time working on this matter and actively participated in all stages of litigation. *See* Docs. 133-1; 133-2 at 10-11. Because Mr. Panvini bills at a lower hourly rate than Marshall Meyers, Aaron Radbil, or Dennis Kurz, his participation and assistance in the matter helped *reduce* the amount of potential attorneys' fees incurred by Mr. Whatley—as the same work performed by a more senior attorney would have been billed at a higher rate.

### 2. Noah Radbil's entries identified were neither the result of overstaffing nor inefficient use of attorneys.

CreditWatch also identifies multiple time entries for Mr. Radbil, a majority which describe his preparation for and attendance at trial. *See* Doc. 135-2 at 2-6. But courts regularly award fees for more than one attorney attending trial. *See Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, 2005 WL 1244923, at *11 (E.D. Pa. May 24, 2005) ("The Court believes that two partners and one associate were adequate to try this case . . . ."); *May v. Cooperman*, 582 F.

Supp. 1458, 1460 (D.N.J. 1984) ("I think in a case of this nature it was reasonable to have two attorneys present and active at the trial. Therefore, McHugh's and Altman's trial time will be allowed."); *see also Lewallen v. City of Beaumont*, 2009 WL 2175637 (E.D. Tex. July 20, 2009) aff'd, 394 F. App'x 38 (5th Cir. 2010) (awarding attorneys' fees for two trial attorneys).

### 3. Aaron Radbil's entries identified were neither the result of overstaffing nor inefficient use of attorneys.

CreditWatch further challenges certain entries by Mr. Radbil consisting of reviewing drafts of pleadings and motions prepared by associates billing at a lower hourly rate, and corresponding with the attorneys primarily responsible for this case. *See, e.g.,* Doc. 135-2 at 3 (Mr. Panvini prepared a sur-reply and Mr. Radbil reviewed it and corresponded with Mr. Panvini about the brief).[3] Mr. Radbil's involvement here—in reviewing and corresponding with associates billing at a lower hourly rate—actually resulted in Mr. Whatley incurring lesser fees than if Mr. Radbil prepared such filings himself and billed at his higher hourly rate.

### 4. Dennis Kurz's entries identified were neither the result of overstaffing nor inefficient use of attorneys.

Additionally, CreditWatch identifies Mr. Kurz's time entries consisting of reviewing documents to be filed in his name. Doc. 135-2 at 3-5. And entries for conferring with associates preparing such documents who, as discussed above, perform such work at a lower hourly rate. Quite contrary to being redundant, Mr. Kurz's review of the work product of associate attorneys working at his direction is necessary to comply with his professional responsibilities, and therefore compensable.

---

[3] In an effort to provide high quality legal work, Mr. Whatley's attorneys regularly review each other's briefs to provide comments, feedback, and substantive edits. *See generally,* Doc. 133-1. Bryan Garner, editor-in-chief of all current versions of Black's Law Dictionary, endorses such collaboration, finding "the work product is much better for the effort." Bryan A. Garner, *Garner on Language and Writing* 416 (Am. Bar Assoc. ed. 2009).

iv.     **Mr. Whatley agrees to waive additional hours that may be considered duplicative.**

Mr. Whatley agrees to waive the time billed by multiple attorneys reviewing the same orders issued by this Court. Mr. Whatley waives $167.50 for potential duplicative time consisting of: .3 hours ($100.50) for Aaron Radbil (8/2/12 entry reviewing orders (.1), 7/16/12 partial entry reviewing order (.1), and 5/10/12 entry reviewing report and recommendation (.1)) and .2 hours ($67) for Marshall Meyers (7/18/12 entry reviewing report and recommendation).[4]

v.      **CreditWatch incorrectly classifies numerous compensable time entries as clerical.**

CreditWatch identifies $10,949 in attorneys' fees that it identifies as "clerical billing entries." Doc. 135-2 at 7-14. Mr. Whatley agrees to waive some of the time Creditwatch contends is clerical in nature in an effort to exercise additional billing discretion. But many of the entries unquestionably constitute legally compensable time.

CreditWatch lists multiple entries consisting of "memo to file" as clerical work. Doc. 135-2 at 7-14. But it provides no explanation as to what makes such entries clerical. Each identified entry follows or contains additional entries identifying time that CreditWatch does not contest. These "memo to file" entries establish that after completing the compensable work, the attorney entered a note or a "memo" into the case file to summarize any finding or important information. Rather than duplicating the work, any other attorney, or the same attorney, can view the memo to get up to speed on the case or quickly pick up working on the file where he left off.

Making a memo in the file also limits the number of communications between attorneys, which CreditWatch also objects to. But fees for time spent by attorneys discussing the case are recoverable. *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007) ("The district

---

[4] CreditWatch also identifies Mr. Meyers's August 6, 2012 entry reviewing the Court's order on CreditWatch's motion in limine, but no other attorney reviewed the order and the entry is not duplicative. *See* Doc. 133-1.

court also did not abuse its discretion in concluding that the time spent on intra-team communications was compensable."). And time spent communicating with opposing counsel and witnesses is also recoverable. *See Fox v. The Marquis Corp.*, 2010 WL 1010871, at \*7 (S.D. Fla. Mar. 15, 2010) ("[P]hone calls to clients, opposing counsel, and experts are typically not considered clerical in nature."); *see also Reino ex rel Reino v. Sec'y of Dept. of Health and Human Servs.,* No. 06-170-V, 2007 WL 5171596, at \*2 (Fed. Cl. Feb. 14, 2007) (rejecting argument that paralegal's phone calls were "ministerial tasks" that were not compensable).

**vi. Mr. Whatley agrees to waive additional hours that may be considered clerical.**

In an effort to exercise additional billing discretion, Mr. Whatley agrees to some of the entries CreditWatch contends are clerical. He waives an additional $1,017 in requested fees, consisting of: .4 hours ($134) for Marshall Meyers (8/31/11, 8/6/12, 8/7/12 and 12/5/12), .1 hour ($33.50) for Aaron Radbil (9/6/12), .2 hours ($46) for Noah Radbil (3/13/12 and 8/15/12), .2 hours ($60) for Dennis Kurz (12/6/11 and 12/13/11[5]), .7 hours ($122.50) for Joe Panvini (3/1/12, 3/12/12, 4/3/12 and 6/1/12), 2.5 hours ($337.50) for paralegal Tremain Davis (8/29/11, 10/27/11, 11/10/11, 11/14/11, 1/30/12, 2/3/12, 2/20/1, 2/22/12, 4/17/12, 4/19/12, 4/27/12, 5/3/12, 5/10/12, 5/29/12, 5/30/12[6], 8/28/12 and 6/7/13), 1.4 hours ($189) for paralegal Nichole Stasdakovich (5/14/13 and 5/24/13), and .7 hours ($94.50) for paralegal Sonya Rodriguez (9/4/12 and 10/3/12[7]).

**vii. CreditWatch's vigorous defense caused Mr. Whatley to incur fees in response thereto.**

CreditWatch criticizes the time Mr. Whatley's counsel spent litigating this matter. But it ignores that its "Stalingrad" defense tactics forced Mr. Whatley's attorneys to invest substantial

---

[5] Mr. Whatley waives .1 hour of this entry for calendaring events. *See* Doc. 135-2 at 12.
[6] Two entries.
[7] Mr. Whatley agrees this entry appears to have been entered in the wrong file.

time at every stage of the litigation. (See Doc. 133 at 16-17). For a most recent example, while the local rules permit a fifteen page response to a motion for attorneys' fees, CreditWatch submitted a response of over 50 pages. And this is not the first excessive pleading submitted by CreditWatch in this matter. No less than three of its filings have been rejected for failing to comply with this Court's page limits. (See Doc. 28; Doc. 29; Doc. 74). This filing forced Mr. Whatley to incur additional fees in responding to CreditWatch's accompanying motion to exceed page limits. And he has incurred additional fees in preparing a reply to CreditWatch's "kitchen-sink" response. To the very end, CreditWatch persists in fighting tooth and nail. At trial, the Court spent hours hearing the parties' arguments and doing its own research on the issue of revocation of consent under the TCPA, and finally decided that one can revoke consent. Yet, in the briefing the Court requested—only on the issue of damages—CreditWatch devoted more than half of its 15 page brief to re-litigate the consent issue. The net effect—perhaps exactly what CreditWatch intended—is to cause Mr. Whatley's attorneys to spend more, uncompensated, time in response.

**F.   Mr. Whatley's billing records must be properly considered in determining the reasonable fee award.**

**i.   The Federal Rules do not require Mr. Whatley to provide supplemental billing records throughout litigation.**

The billing records and costs are prepared in anticipation of litigation and indicate Plaintiff's theory and strategy in litigating this matter, and as such are protected by the work product doctrine. *S.E.C. v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006). ("[P]rotection extends to documents . . . including a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements."). Courts deciding matters filed under the statutes on which Mr. Whatley bases his claims have held that attorneys' fee agreements and

time records are not reasonably calculated to lead to the discovery of admissible evidence, and are not discoverable. *Abels v. JBC Legal Group, P.C.*, 233 F.R.D. at 647; *Bank v. Pentagroup Fin., LLC*, 2009 WL 1606420, at *5 n.6 (E.D.N.Y. June 9, 2009) (denying the defendant's request for an order permitting discovery relating to the plaintiff's attorneys' fee claim, and noting that "[s]ince fees are available only if the plaintiff prevails, and the defendant contests liability, such procedures would be premature."); *see also Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 126 (D. Conn. 1974) (motion to compel fee agreement denied); *Stahler v. Jamesway Corp.*, 85 F.R.D. 85, 86 (E.D. Pa. 1979) (fee agreement not discoverable); *In re Nissan Motor Corp Antitrust Litigation*, 1975 WL 166141, at *2 (S.D. Fla. June 4, 1975).

> ii. **Attorneys' fees incurred by Mr. Whatley did not become an issue until he prevailed under the FDCPA.**

Under the statutes upon which Mr. Whatley based his claims, attorneys' fees did not become an issue until he prevailed under the FDCPA. 15 U.S.C. § 1692k; Tex. Fin. Code § 392.403(b); Tex. Bus. & Com. Code § 17.50(d); *see also Husain v. General Motors*, 715 N.Y.S. 2d 394 (N.Y. App. Div. 2000). Accordingly, documents sought bearing solely upon the issue of attorneys' fees – Plaintiff's counsel's billing records – were neither material nor necessary at an earlier stage of litigation. *Id.* That documents may prove helpful or even necessary in settlement considerations or negotiations does not render those documents material and necessary to other aspects of litigation. *Id.*; *Pizel v. Monaco Coach Corp.*, 224 F.R.D. 642, 644 (N.D. Ind. 2004) ("Simply stating that the agreement might aid in settlement discussions does not persuade this Court that the information sought is in fact relevant."); *see Abels*, 233 F.R.D. at 647 (denying a party's motion to compel the production of attorneys' fee records and a retainer agreement because the case had not progressed to the point at which attorneys' fees were an issue). Thus, Plaintiff's billing records did not become relevant until Plaintiff succeeded under the FDCPA,

and Mr. Whatley had no obligation to produce them. Even if Mr. Whatley were somehow required to produce the records, clearly CreditWatch was not prejudiced by this omission, as evidenced by its 52 page response brief in opposition to Mr. Whatley's fee motion.

      **iii.    The billing records have been properly authenticated.**

In another example of CreditWatch's "kitchen sink" response, it objects to Plaintiff's billing records as hearsay, stating Plaintiff fails to satisfy the hearsay exceptions of Fed. R. Evid. 803(6). Doc. 135-1 at 7-8. Documents meet the business record hearsay exception where the record was made at or near the time by someone with knowledge, the record was kept in the course of a regularly conducted activity of the business, making the record was a regular practice of that activity, all conditions are shown by the custodian or another qualified witness, and neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6). CreditWatch states that that Plaintiff's attorneys do not "state they are a custodian of records," Doc. 135-1 at 7, but it ignores the fact that Mr. Whatley's attorneys are qualified witnesses to attest to the time that each entered contemporaneously to the task being completed into the firm's computer database, Amicus Attorney. (See Doc. 133-2). Plaintiff's attorneys each provided declarations conforming to the requirements of Fed. R. Evid. 803(6). As such, Plaintiff's counsel properly authenticated the billing records.

Should the Court find that Mr. Whatley has not properly authenticated the billing records, he attaches a declaration of Marshall Meyers to further authenticate the records. Mr. Whatley attaches Mr. Meyers's declaration as Exhibit I.

**G. CreditWatch's references to other cases involving Mr. Whatley's attorneys bear little relevance to this case.**

CreditWatch quotes decisions from other jurisdictions that fail to indicate how any of the cases reflect what happened in this matter. In *Whitt v. Receivables Performance Mgmt, LLC*, the

court acknowledged that the case "never progressed beyond the initial stages." *Whitt v. Receivables Performance Mgmt, LLC*, No. 11-06750 (D. N.J. Oct. 2, 2012); Doc. 135-2 at 55. In *Youchoff v. IQ Data Intl.*, the case never progressed to the point of providing discovery requests. No. 12-cv-00831 (D. Co. May 30, 2013); Doc. 135-2 at 57. And *Raimondi v. Zakheim & Lavrar, PA* similarly settled shortly after the start of discovery and prior to depositions, summary judgment motions, or any trial. No. 6:11-cv-480-Orl-31DAB (M.D. Fla. Apr. 5, 2012); Doc. 135-2 at 39. *Castro v. McCarthy & Jennerich* considered a fee request following limited discovery and summary judgment for the consumer after the debt collector conceded all the facts when failing to file a response. No. 2:11-cv-01832 (D.N.J. Jan. 10, 2013); Doc. 135-2 at 45. *Sharke v. Midnight Velvet, Inc.* similarly settled at mediation following the filing of the consumer's motion for summary judgment. No. 8:12-cv-589-T-24-AEP (M.D. Fla. June 7, 2013). But this matter progressed all the way to trial, where a jury awarded Mr. Whatley the maximum amount in statutory damages under the FDCPA and found 23 violations of the TCPA. Doc. 127.

It is also worth noting how self-serving the above cases are for CreditWatch, and how it conveniently omits the majority of court opinions that have granted Weisberg & Meyers's clients attorneys' fees, often either near or in full. See Exhibit J (prepared as of October 1, 2013).

CreditWatch also implies that Mr. Whatley's counsel requests the same fees denied in these other cases. But Weisberg & Meyers continually revises and refines its procedures to conform to court rulings on its fees. The Statement of Services reflects that the time entries identified as unrecoverable have been waived in this matter. (See Doc. 131-1). Weisberg & Meyers always strives to meet and exceed expectations in all aspects of its business, not only with courts, but with its clients and anyone else with whom it interacts, as evidenced by its A+

rating with the Better Business Bureau, and the over 700 thank you letters received from clients over the years.  See Exhibit K; Exhibit L.

In fact, the District of Colorado recently recognized that Mr. Whatley's attorneys in that matter exercised billing discretion greater than that necessary. *Jacob Jones v. Auto Warehouse, Inc.*, No. 12-cv-00712 (D. Colo. 2013), attached as Exhibit B. In determining the reasonable attorneys' fees under the similar fee shifting provision of the Truth in Lending Act, the court noted that the fee request was "more than $5,000 below the value of the time I have determined was reasonably and necessarily expended on the case, and is reasonable." Exhibit B.

## Conclusion

CreditWatch had every opportunity to curtail the attorney's fees that it now claims are excessive. It could have responded to Mr. Whatley's demand letter sent before filing suit. It did not. It could have admitted the allegations that Mr. Whatley proved at summary judgment and trial. It did not. Instead it filed both a motion to dismiss and a motion for summary judgment against Mr. Whatley on all of his claims. CreditWatch could have offered judgment against itself on Plaintiff's FDCPA claims once this Court granted summary judgment as to liability in favor of Mr. Whatley on those claims. It did not. Instead it proceeded to trial, where a jury found Mr. Whatley entitled to the maximum amount of additional damages under the FDCPA, and further found that Defendant committed 23 distinct violations of the TCPA. Notably, Mr. Whatley has already voluntarily waived fees for almost half of the hours spent litigating this matter.

At the end of the day, CreditWatch violated the law and did everything in its power to avoid liability.  CreditWatch did offer $1000 in damages to Mr. Whatley early in the litigation, for all of his claims, and Mr. Whatley exceeded that result at least nine fold. Now, CreditWatch cannot complain about the fees it forced Mr. Whatley to incur to obtain the recovery he was due.

After two and a half years of vigorously contested litigation, Mr. Whatley is entitled to be compensated for the time his attorneys expended to achieve that result.

WHEREFORE, Mr. Whatley respectfully requests that this Court grant his motion for attorneys' fees.

Dated: February 18, 2014.        Respectfully submitted,

/s/Marshall Meyers
Marshall Meyers
5025 N. Central Ave., #602
Phoenix, AZ 85012
Phone: (888) 595-9111 ext. 111
Facsimile: (866) 565-1327
mmeyers@attorneysforconsumers.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on February 18, 2014, the foregoing was filed with the Court using CM/ECF, which will send notification of such filing to:

Robbie Malone
Eugene Xerxes Martin
Robbie Malone, PLLC
8750 North Central Expressway # 1850
Dallas, TX 75231
rmalone@rmalonelaw.com
xmartin@rmalonelaw.com

/s/Marshall Meyers
Marshall Meyers